1  Michael Jay Berger (SBN 100291)
2  Sofya Davtyan (SBN 259544)
   Angela N. Gill (SBN 260928)
3  LAW OFFICES OF MICHAEL JAY BERGER
   9454 Wilshire Blvd., 6th Floor
4  Beverly Hills, CA 90212
5  Tel.:    (310) 271-6223
   Fax:     (310) 271-9805
6  E-mail: Michael.berger@bankrutpcypower.com
7  Sofya.davtyan@bankruptcypower.com
   Angela.gill@bankruptcypower.com
8
   Attorney for Defendant,
9  Brian Dennis Martin

10              UNITED STATES BANKRUPTCY COURT

11      CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

12

13  In re:                              Case No. 6:25-bk-10944-RB

                                        Adv. Case No. 6:25-ap-01055-RB
14  Brian Dennis Martin,
                                        Chapter 7
15       Debtor.
                                        **DEFENDANT BRIAN DENNIS**
16                                      **MARTIN'S MOTION TO DISMISS**
                                        **PLAINTIFFS' COMPLAINT FOR**
17  _____         **FAILURE TO STATE A CLAIM UPON**
                                        **WHICH RELIEF CAN BE GRANTED**
18  David Tyler Moss and Fidelissimus, LLC,  **PURSUANT TO FED. R.CIV. P. RULE**
                                        **12(b)(6) AND FRBP 7012(b)**
19       Plaintiffs,

20       v.                             Hearing To Be Set By Court

21
    Brian Dennis Martin,
22
         Defendant.
23

24

25      **TO THE HONORABLE MAGDALENA REYES BORDEAUX, JUDGE OF**

26  **THE UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF**

27  **CALIFORNIA, TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

28      Brian Dennis Martin ("Debtor" and "Defendant") hereby moves this court to

1  dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as

2  incorporated by Federal Rule of Bankruptcy Procedure 7012(b).

3  ## MEMORANDUM OF POINTS AND AUTHORITIES

4  ### I.    INTRODUCTION

5  Brian Dennis Martin ("Debtor" and "Defendant") filed a voluntary petition for

6  relief under chapter 7 of the bankruptcy code on February 20, 2025, case number 6:25-bk-

7  10944-RB. On April 30, 2025, David Tyler Moss and Fidelissimus ("Plaintiffs") initiated

8  this adversary proceeding by filing a Complaint for Determination of Nondischargeability

9  and Objection to Discharge Pursuant to 11 U.S.C. §523 and §727. The Complaint pleads

10  no facts to state a claim for relief under 11 U.S.C. §727. With respect to the claims for

11  relief under 11 U.S.C. §523, Plaintiffs have not plead facts sufficient to support their

12  claims that they have obtained judgments for actual fraud, fraud while acting in a fiduciary

13  capacity, or willful and malicious injury. Instead, Plaintiffs rely on conclusory statements

14  to support their claims and misrepresent the status of the judgments they rely on, which

15  have been reversed or are on appeal. As such, the Complaint should be dismissed with

16  prejudice pursuant to Fed.R.Civ.P. Rule 12(b)(6).

17  ### II. LEGAL STANDARD

18  Federal Rule of Civil Procedure ("FRCP") 12(b)(6) applies in adversary

19  proceedings by way of Federal Rule of Bankruptcy Procedure ("FRBP") 7012(b). *In re*

20  *Kvassay*, 2014 WL 2446181, at *9 (B.A.P. 9th Cir. 2014). A motion to dismiss under

21  FRCP 12(b)(6) challenges the sufficiency of the allegations in the complaint. *Lee v. City of*

22  *L.A.*, 250 F.3d 668, 688 (9th Cir. 2001); *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D.

23  629, 634 (S.D. Cal. 1998). "A [FRCP] 12(b)(6) dismissal may be based on either a 'lack of

24  a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable

25  legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir.

26  2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

27  In resolving a Rule 12(b)(6) motion to dismiss, courts must construe the complaint

28

1   in the light most favorable to the plaintiff, and accept all well-pleaded factual allegations

2   as true. *Johnson*, 534 F.3d at 1122; *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001).

3   The Court, however, is not bound by conclusory statements, statements of law, and

4   unwarranted inferences cast as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S.

5   544, 555-57 (2007); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

6   1994).

7        "While a complaint attacked by a [FRCP] 12(b)(6) motion to dismiss does not need

8   detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

9   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

10  recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555

11  (citations omitted). "'[I]n practice, a complaint . . . must contain either direct or inferential

12  allegations respecting all the material elements necessary to sustain recovery under some

13  viable legal theory." *Id.* at 562 (emphasis in original) (quoting *Car Carriers, Inc. v. Ford

14  Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

15       The allegations of a complaint, along with other materials properly before the court

16  on a motion to dismiss, can establish an absolute bar to recovery. *See Weisbuch v. Cnty. of

17  L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("If the pleadings establish facts compelling a

18  decision one way, that is as good as if depositions and other expensively obtained evidence

19  on summary judgment establishes the identical facts."). While courts generally must not

20  consider materials outside the complaint, they may consider such materials if "their

21  authenticity . . . is not contested and the plaintiff's complaint necessarily relies on them."

22  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

23       The party seeking dismissal under FRCP 12(b)(6) has the burden of proof. *In re

24  Reed*, 532 B.R. 82, 88 (Bankr. C.D. Ill. 2015) ("A party seeking dismissal under [FRCP]

25  12(b)(6) 'bears a weighty burden' [which] requires that the movant establish 'the legal

26  insufficiency of the complaint.'"); *In re Enron Corp.*, 316 B.R. 434, 449 (Bankr. S.D.N.Y.

27  2004) (stating that an "unsupported assertion is insufficient to meet [the] burden under a

28

1   [FRCP] 12(b)(6) motion."). Defendant consents to entry of final judgment by this court.

2

3                              IV. **LEGAL ARGUMENT**

4      **A. PLAINTIFFS HAVE PLEAD NO FACTS FOR RELIEF UNDER 11 U.S.C.
       §727 AND THEREFORE THE COMPLAINT SHOULD BE DISMISSED.**
5

6      Plaintiff's complaint to deny Debtor's discharge under 11 U.S.C. §727 is

7   unsupported because Plaintiff has plead no facts in support of a claim under 11 U.S.C.

8   §727. Consequently, the Complaint should be dismissed with prejudice.

9

10     **B. PLAINTIFFS HAVE NOT ESTABLISHED THE EXISTENCE OF A
       DEBT BASED ON STATE LAW CLAIMS OF FRAUDULENT
11     TRANSFER, ACTUAL FRAUD, FRAUD WHILE ACTING IN A
       FIDUCIARY CAPACITY OR WILLFUL AND MALICIOUS INJURY.**
12

13     Plaintiffs' Complaint states that "[I]n a subsequent state court proceeding, Cause

14  No. DC-20-09893, Plaintiffs obtained another judgment against Debtor for an additional

15  $9,127,960.08, based on findings that Debtor engaged in fraudulent transfers, common law

16  fraud, civil conspiracy, and conversion. (Complaint, ¶ 8). The Complaint alleges that the

17  findings of fact from the state court include "detailed evidence of Debtor's post-judgment

18  schemes to avoid collection." (Complaint, ¶ 9). The Complaint also states that the state

19  court found that Debtor's conduct was willful, malicious and fraudulent. (Complaint, ¶

20  10).  What is alarming, is that Plaintiffs completely fail to inform the Court that on

21  February 13, 2025, the state court judgment referenced in the complaint, Cause No. DC-

22  20-09893, was largely reversed by the Court of Appeals of the Fifth District of Texas at

23  Dallas.[1] Specifically, the Court held that the judgment of the trial court is REVERSED,

24

25     [1] It is well-established that courts may take judicial notice of court filings and other

26  matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746

27  (9th Cir. 2006) (*citing Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136

28

and David Tyler Moss and Fidelissimus Inc., "take nothing on their claims for civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction" and remanded for further proceedings. (Attached hereto is a true and correct copy of the judgment of the Court of Appeals as Exhibit 1). Notably, the Court of Appeals stated that "there was no evidence of damages to support an award based upon the state law claims." (Exhibit 1).

Plaintiffs have failed to allege sufficient facts to establish the existence of a $9,127,960.08 debt. Further, they fail to allege sufficient facts to establish that any purported debt is non-dischargeable. They point only to a state court judgment, which has been reversed on appeal, to support their claims under 11 U.S.C. §523. There are insufficient facts to establish the existence of the debt, the amount of the debt, or the basis for denying discharge. Therefore, the Complaint should be dismissed with prejudice.

### C. PLAINTIFFS HAVE NOT PLED SUFFICIENT FACTS TO STATE A CLAIM FOR RELIEF UNDER 11 U.S.C. §523 FOR A PURPORTED DEBT OF $18,600,000.

Plaintiffs Complaint states that they obtained a judgment against Debtor in the amount of $18,600,000 on April 15, 2016 for fraud, breach of fiduciary duty, and conspiracy and that the judgment was affirmed by the United States Court of Appeals for the Fifth Circuit. (Complaint, ¶ 7). Again, Plaintiffs failed to inform this Court that Defendant filed a motion to set aside the judgment under Rule 60(d)(3) and filed an

---

F.3d 1360, 1364 (9th Cir. 1998). The Court may also properly take judicial notice of "documents referenced in a complaint" and "documents on which allegations in the [complaint] necessarily rely, even if not expressly referenced in the [complaint]" where the authenticity of the documents are not in dispute. *In re Calpine Corp. Sec. Litig.*, 288 F.Supp.2d 1054, 1076-77 (N.D. Cal. 2003).

1  appellant brief on January 20, 2025. (Attached hereto is a true and correct copy of the

2  Appellant Brief filed on January 20, 2025 as Exhibit 2).

3      Even if the District Court judgment from 2016 is considered a final judgment for

4  purposes of this adversary proceeding, Plaintiffs have not pled sufficient facts to support a

5  claim for relief under 11 U.S.C. § 523. First, there is insufficient support for the

6  $18,600,000 amount of the purported debt set forth in the Complaint. The 2016 judgment

7  in favor of Plaintiff David Tyler Moss and against Defendant Brian Martin (which is on

8  appeal) is for the amount of $6,300,000, a difference of $12.3 million from what is stated

9  in Plaintiffs' Complaint. Notably, Fidelissimus, LLC, *does not* have a judgment against

10  Defendant Brian Martin. (Attached hereto is a true and correct copy of the 2016 judgment

11  entered in the U.S. District Court for the Northern District of Texas as Exhibit 3).

12      Second, even if the amount of the purported judgment against Defendant Brian

13  Martin could be determined from the 2016 judgment, Plaintiffs have not plead facts

14  sufficient to state a claim for non-dischargeability under 11 U.S.C. § 523. The 2016

15  judgment does not specify that any part of the judgment was for actual fraud or willful and

16  malicious injury.

### IV.    CONCLUSION

17

18      Based on the forgoing, Defendant respectfully request that this Court grant

19  Defendant's Motion and dismiss Plaintiff's Complaint with prejudice.

20

21  Dated:  May 28, 2025             LAW OFFICES OF MICHAEL JAY BERGER

22                    By: /s/

23                       Michael Jay Berger

24                       Sofya Davtyan

                         Angela N. Gill

25                       Attorneys for Defendant, Brian Dennis Martin

26

27

28

# EXHIBIT 1

**Reversed and Rendered in part; Remanded in part and Opinion Filed
February 13, 2025**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00439-CV

## HOLLY BONE-MARTIN AND BRIAN MARTIN, Appellants
### V.
## DAVID TYLER MOSS, ET AL., Appellees

**On Appeal from the 68th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-20-09893**

## MEMORANDUM OPINION
Before Justices Goldstein and Breedlove[1]
Opinion by Justice Goldstein

Holly Bone-Martin and Brian Martin appeal the trial court's judgment awarding David Tyler Moss and Fidelissimus, Inc. monetary awards, permanent injunctive relief, and legal and equitable ownership of certain YouTube channels and the videos contained on those channels. In four issues, Holly and Brian argue the trial court's judgment and permanent injunction must be vacated because appellees' claims are barred by the statute of repose, the trial court lacked

---

[1] The Honorable Justice Carlyle was originally a member of this panel but did not participate in this opinion because his term expired on December 31, 2024.

jurisdiction to divest Holly and Brian of their federal copyrights, the trial court lacked jurisdiction to assign ownership of the YouTube channels, and the evidence is legally insufficient to support the damages awarded to appellees. We conclude appellees' claims are not barred by the statute of repose, the trial court was preempted to the extent it transferred ownership of the copyrighted videos, and there was no evidence of damages on appellees' claims for civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction. We reverse and render judgment that appellees take nothing on those claims and remand for further proceedings consistent with this opinion.

## BACKGROUND[2]

On April 15, 2016, the United States District Court for the Northern District of Texas entered judgment against Brian and awarded appellees $18,600,000. On June 4, 2019, Holly and Brian were married in Collin County, Texas.

The record indicates that appellees filed the underlying case in July 2020, in what we discern is essentially a debt collection case.[3] On October 15, 2020, the trial

---

[2] The following facts are drawn from the second amended petition.

[3] This is not the first proceeding emanating from the underlying dispute. The Original Petition filed July 21, 2020, is the domesticated federal final judgment, and the docket sheet reflects consolidation of Judgment Creditors' filing of their Original Petition for Fraudulent Transfer, Application for Temporary Restraining Order, and Temporary and Permanent Injunction and Motion to Consolidate Cases on September 15, 2020. *See Bone v. Moss*, No. 05-21-00436-CV, 2022 WL 484312 *1 (Tex. App.—Dallas, February 17, 2022) (appeal and mandamus related to interlocutory orders in collection action of domesticated federal judgment).

court entered a temporary injunction restraining Holly and Brian from "withdrawing, receiving, disbursing, transferring, or otherwise disposing of any funds generated by the following YouTube Channels and their associated Google AdSense accounts:" FuturisticHub, CreamWorks Animations, Top Trends, and Blocktastic. Brian had previously created approximately eighty Minecraft videos and uploaded them to the FuturisticHub YouTube channel between June 2018 and December 2020.

Holly and Brian were also enjoined from selling certain real property in Frisco, Texas, but Holly conveyed the property to JMC Property Group in November 2020. In December 2020, Holly and/or Brian redirected the approximately eighty videos on the FuturisticHub YouTube channel to the WildCraft channel, which "'looks and feels' identical to the FuturisticHub channel." Holly "appear[ed] to be the alleged owner of the WildCraft channel," but Holly and/or Brian "took the content which was on the FuturisticHub channel and redirected it to the WildCraft channel."

Also in December 2020, appellees served Google, the owner of YouTube, with a writ of garnishment seeking to "execute on all the monetization revenue from the videos which were on the FuturisticHub channel." The garnishment, "to aid in the collection of the Judgment," resulted in Google depositing $290,947.46 into the registry of the court during February and March 2021.

In March 2022, appellees filed their second amended petition for fraudulent transfer and application for temporary restraining order and temporary and

permanent injunctions.  Appellees' petition alleged Brian "developed a scheme by placing his videos on the WildCraft channel which was not contained in the first Temporary Injunction Order."  The petition described the "scheme" as follows:

> on or about September 23, 2020, Holly Bone-Martin created Wild MC Limited, which is an United Kingdom company.  Ms. Bone-Martin is the sole officer, director, and shareholder of this company.  The purpose of this new company is to transfer the videos/WildCraft channel from Holly Bone-Martin's name to Wild MC Limited.  Allegedly, all the monetization revenue of the videos on the WildCraft channel is received by Google and then paid to Elite Alliance, which is a multichannel network for Wild MC Limited. Then, the revenue is paid to Wild MC Limited.  This is another attempt by Brian D. Martin and Holly Bone-Martin to transfer the videos and the revenue therefrom to another entity in the event a judgment is awarded against her.

The petition alleged multiple fraudulent transfers: (1) transfers of videos from FuturisticHub to Wild MC Limited, (2) $710,863.80 transferred to Brian and FuturisticHub from Paypal and then "fraudulently diverted" from appellees in an unspecified manner, (3) the purchase of a home in Frisco by Holly using $339,984.98 transferred to Holly by Brian's mother and the subsequent sale of the home by Holly for $250,000, and (4) the creation of an August 2021 post-marital agreement between Holly and Brian that provided no community estate would arise during the remainder of their marriage.

In addition to the fraudulent transfer claims, the petition alleged claims of civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction.  The petition also sought declaratory judgment that:

all the property standing in the name of, claimed or possessed by Holly Bone-Martin as her separate property, or property acquired with community credit, including all the property described herein, is either the separate property of Brian D. Martin or the joint management, disposition, and control community property of Brian D. Martin and is subject to execution, turnover, and other remedies in aid of execution of the Judgment held by Judgment Creditors.

Following a three-day bench trial in April 2022, the trial court signed a judgment providing that appellee "shall recover and have a judgment entered against" Brian and Holly on appellees' claims for fraudulent transfers, civil conspiracy, aiding and abetting, conversion, common law fraud, and statutory fraud in a real estate transaction. The judgment awarded appellees each $4,563,980.04 from Brian and $2,808,662.87 from Holly. The judgment also ordered that the FuturisticHub, WildCraft Animations, CreamWorks Animations, Top Trends, and Blocktastic YouTube channels, the videos they contained, the content management system, content id, and Google AdSense accounts for all of the videos were immediately transferred to appellees, and appellees were given "legal and equitable ownership and title to" these channels, videos, systems, and accounts. The judgment further ordered that Holly's purported transfer of videos and assets to Wild MC Ltd. was void because it was a fraudulent transfer. Holly and Brian were also ordered to refrain from removing any videos from the named YouTube channels and to refrain from filing any copyright strikes, "BOT attacks," or "artificial BOT views" in an attempt to remove videos from the named YouTube accounts. This appeal followed.

**ANALYSIS**

## A. Issue 1: Statute of Repose: TUFTA

In their first issue, Holly and Brian argue the trial court's judgment and permanent injunction must be vacated because appellees' claim is barred by the statute of repose.

The trial court entered judgment in favor of appellees on all their claims.[4] The damages awarded on appellees claims for fraudulent transfers, civil conspiracy, aiding and abetting, conversion. common law fraud, and statutory fraud in a real estate transaction consisted of more than $14 million[5] and legal and equitable title to, and control of, the YouTube channels controlled by Holly and Brian, along with all the videos contained on those channels.

The purpose of the Texas Uniform Fraudulent Transfer Act (TUFTA) is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015). Under TUFTA,

---

[4] With the exception of the claimed fraudulent transfer of the Frisco home, appellees' claims were primarily based on the alleged fraudulent transfers surrounding the YouTube channels and video content. Appellees' civil conspiracy claim was based on an alleged conspiracy involving the YouTube channels and the revenue they generated. The aiding and abetting claim alleged Holly assisted Brian in making unspecified "fraudulent transfers described herein." The money had and received claim alleged it was "unjust and inequitable" for Holly and Brian to profit from their YouTube channels and to purchase and hold a property worth more than $300,000 when the underlying judgment remained unsatisfied. The conversion claim alleged appellees had the right to possession of the funds earned from the YouTube channels at issue. The common law fraud claim alleged fraud associated with the transfers of the YouTube channels. Finally, appellees' claim of fraud in a real estate transaction related to the purchase and sale of the Frisco home, resulting in unspecified "injuries and damages" to appellees.

[5] It appears from the record that the 14 million awarded is over and above, separate and apart from, the original federal judgment debt of 18 million.

a transfer made with actual or constructive intent to defraud any creditor may be

avoided to the extent necessary to satisfy the creditor's claims:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as
> to a creditor . . . if the debtor made the transfer or incurred the
> obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the
> debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the
> transfer or obligation, and the debtor:
>
> (A) was engaged or was about to engage in a business or a transaction
> for which the remaining assets of the debtor were unreasonably small
> in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed
> that the debtor would incur, debts beyond the debtor's ability to pay as
> they became due.

TEX. BUS. & COM. CODE § 24.005(a); *accord id.* § 24.006(a) (transfer is fraudulent

as to present creditor if debtor is insolvent or made insolvent by a transfer and debtor

did not receive reasonably equivalent value); *see also id.* § 24.008 (creditor remedies

for fraudulent transfer).

TUFTA provides that an asset transferred with "actual intent to hinder, delay,

or defraud" a creditor may be reclaimed for the benefit of the transferor's creditors

unless the transferee "took [the asset] in good faith and for a reasonably equivalent

value." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562 (Tex. 2016) (quoting

TEX. BUS. & COM. CODE §§ 24.005(a)(1), .009(a)).

In TUFTA section 24.010, entitled "Extinguishment Of Cause Of Action," the

Legislature has provided that:

−7−

> a cause of action with respect to a fraudulent transfer or obligation
> under this chapter is extinguished unless action is brought . . . within
> four years after the transfer was made or the obligation was incurred or,
> if later, within one year after the transfer or obligation was or could
> reasonably have been discovered by the claimant.

*Id.* § 24.010(a)(1); *Nathan v. Whittington*, 408 S.W.3d 870, 872–73 (Tex. 2013).

Section 24.010 is a statute of repose, rather than a statute of limitations. *Nathan*,

408 S.W.3d at 874. "[W]hile statutes of limitations operate procedurally to bar the

enforcement of a right, a statute of repose takes away the right altogether, creating a

substantive right to be free of liability after a specified time." *Id.* (citing *Methodist*

*Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 287 (Tex. 2010)

(quoting *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex.

2009)). Statutes of repose are of an "absolute nature," and their "key purpose . . . is

to eliminate uncertainties under the related statute of limitations and to create a final

deadline for filing suit that is not subject to any exceptions, except perhaps those

clear exceptions in the statute itself." *Id.* (quoting *Rankin*, 307 S.W.3d at 286–87).

Unlike statutes of limitations, which are intended primarily to encourage diligence

on the part of plaintiffs, statutes of repose may serve other purposes and may run

from some event other than when the cause of action accrued. *Id.*; *see Nelson v.*

*Krusen*, 678 S.W.2d 918, 926 (Tex. 1984) (Robertson, J., concurring).

Holly and Brian had the burden to prove all elements of their affirmative

defense of the statute of repose. *Walker v. Anderson*, 232 S.W.3d 899, 910 (Tex.

App.—Dallas 2007, no pet.). Whether a fraudulent-transfer claim is extinguished

by the statute of repose ordinarily presents a question of fact for the fact-finder to resolve. *Id.* at 909. The issue can be resolved as a matter of law, however, if reasonable minds could not differ on the conclusion to be drawn from the facts in the record. *Id.*

Here, under the heading "Fraudulent Transfer 1," appellees' second amended petition alleged that Brian formed an entity called FuturisticHub, L.L.C. with the Texas Secretary of State on June 7, 2016. The petition also averred that the formation of this entity occurred "two months after" the $18 million federal court judgment and that Brian had already created a FuturisticHub YouTube channel in 2012. The petition alleged that, after Brian created the FuturisticHub, L.L.C. entity, he "continued posting videos, gained a significant following, and began earning significant revenue." In opening argument at trial, appellees' counsel stated that the June 7, 2016 date was "important" because it was "the beginning of Brian Martin attempting to protect his assets through videos." Significantly, the petition did not allege that a first fraudulent transfer occurred on June 7, 2016 when Brian formed the new legal entity, FuturisticHub, L.L.C. Instead, the petition alleged that the "animation style, voice acting, and subject matter of the videos posted on the FuturisticHub YouTube channel were the same or substantially similar to the videos which were later fraudulently redirected to the WildCraft channel on or about December, 2020." Although Holly and Brian argue that appellees' petition constituted a judicial admission that June 7, 2016 was the date of the "first transfer"

–9–

from which we calculate the four-year statute of repose, we conclude the record does not support this characterization. Moreover, to the extent Holly and Brian suggest a first fraudulent transfer was the creation of FuturisticHub LLC, we know of no authority, and the parties have cited us to none, that supports the conclusion that the statute of repose as to Holly ran from that date. Under these circumstances, we conclude the record does not reflect that Holly and Brian met their burden to prove all elements of their affirmative defense of the statute of repose. *See id.* We overrule Holly and Brian's first issue.

## B. Issue 2: Federal Copyright

In their second issue, Holly and Brian argue the trial court lacked jurisdiction to divest them of their federal copyrights. Specifically, they complain of the trial court's award "divesting [Holly and Brian] of their federal copyrights of the Minecraft Videos [because they] fall within the scope of the exclusive rights set out in the Federal Copyright Act, thereby voiding the transfer in the final judgment." Holly and Brian seek to void transfer of the copyright ownership as a matter of preemption but do not otherwise challenge the asserted causes of action as claims under copyright law.[6] Appellees argue, and the trial court concluded, that the asserted state law claims do not arise under the Copyright Act. There is no dispute, and we assume without deciding, that the videos are material subject to copyright

---

[6] In fact, Holly and Brian concede that the "Copyright Act does not preempt state law tort claims"; rather, they aver that the rights granted "fall within the exclusive rights of the scope of the Copyright Act."

protections. We discern that the crux of the argument is whether the trial court had

jurisdiction to determine the ownership of, and thereafter transfer exclusive rights

to, the copyrighted material. We conclude that the trial court lacked jurisdiction to

divest Holly and Brian of ownership of the copyrighted material and transfer

ownership to appellees. We note that this is distinct from the trial court's ability to

address monetization of the copyrighted asset for purposes of satisfying a judgment.

### Applicability of Federal Copyright Act to Ownership and Transfer Rights

The Copyright Act provides in pertinent part that:

> (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.

28 U.S.C.A. § 1338. The United States Constitution vests Congress with the

exclusive authority to regulate copyrights and patents. U.S. CONST. Art. I, § 8, cl. 8.

Congress amended the Copyright Act in 1976 to clarify the relationship between the

Act and state law:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).  "Thus, § 301(a) preempts state law claims if the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Advance Mag. Publishers, Inc. v. Leach,* 466 F. Supp. 2d 628, 635 (D. Md. 2006) (quoting *Rosciszewski v. Arete Assocs.,* Inc., 1 F.3d 225, 229 (4th Cir.1993)).

The purpose of this statute is to prevent piecemeal litigation. *Rockwell Mfg. Co. v. Evans Enters.,* 95 F. Supp. 431, 433 (W.D.N.Y. 1950), *adhered to on reconsideration sub nom. Rockwell Mfg. Co. v. Evans Enters., Inc.*, No. 4592, 1951 WL 81537 (W.D.N.Y. Jan. 9, 1951)   The Fifth Circuit Court of Appeals has established a two-part test to determine if a state law claim is preempted: (1) whether the claim falls within the subject matter of copyright; and (2) whether the claim protects rights equivalent to any of the exclusive rights of a federal copyright. *Daboub v. Gibbons*, 42 F.3d 285, 288–89 (5th Cir. 1995).  This inquiry requires a comparison of the nature of the rights protected under the Copyright Act with the nature of the state law rights being asserted. *Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772, 787 (5th Cir. 1999).  A state law cause of action is equivalent to the rights granted by the Copyright Act if "the mere act of reproduction, distribution, or display infringes it." *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990).  In other words, a state law claim is equivalent to federal copyright law rights if the elements of the state law cause of action would not establish

qualitatively different conduct by the defendant than the elements for an action under the Copyright Act. *Alcatel*, 166 F.3d at 787; *Daboub*, 42 F.3d at 290.

The core of almost all of appellees' claims against Holly and Brian were not equivalent to the enumerated rights set out in section 106 of the Copyright Act.[7] Specifically, the nature of appellees' state law claims,[8] without detailing the specific elements of each claim, do not involve the wrongful copying, distribution, or performance of Holly and Brian's videos. *See generally Butler v. Continental Airlines, Inc.*, 31 S.W.3d 642, 651 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (preemption of claims for conversion and misappropriation of macro computer programs). Section 301(a)'s express preemption of any state law granting equivalent rights to those set forth in section 106 does not apply to appellees' state law claims. *Daboub*, 42 F.3d at 289–90 (preempting state law claims for conversion and misappropriation of trade secrets); *see also Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 501, 505 (D. Mass. 1992), *aff'd*, 36 F.3d 1147 (1st Cir. 1994) (conversion claim was preempted); *Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 295 (E.D. Tex. 1988) (claims for conversion and tortious interference with contract are preempted).

---

[7] Section 106 grants the holder of a copyright the exclusive right to reproduce, distribute, perform, and display the copyrighted work. 17 U.S.C. § 106 (1994 & Supp. IV 1998).

[8] Appellees' state law claims, aside from fraudulent transfer, include claims of civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction. We note without further discussion that, although a state law claim of conversion may implicate the Copyright Act, on the record before us the conversion claim relates to the real estate transaction and not the videos and, therefore, the conversion claim is not preempted.

This does not exhaust our inquiry. As previously stated, section 301(a) preempts state-law claims if "the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Rosciszewski*, 1 F.3d at 229 (emphasis added) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985), cert. denied, 479 U.S. 820 (1986). Here, the ownership rights transferred as a remedy under state law, the termination of Holly and Brian's interests in the videos, and the award of the videos to appellees were "exclusive rights within the scope of federal copyright" and were therefore preempted. *See id.*

Section 201(e) of the federal copyright act, "which prohibits involuntary transfer of copyrights," provides:

> When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11.

17 U.S.C. § 201(e). The legislative history of section 201(e) explains that "[t]he purpose of this subsection is to reaffirm the basic principle that the United States copyright of an individual author shall be secured to that author, and cannot be taken away by any involuntary transfer." H.R. Rep. 94–1476, at 123 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5739.

The trial court in this case found that Holly and Brian had previously transferred the copyrighted videos to YouTube and/or Google:

The Court has heard evidence that the "individual author" of these videos transferred the videos in violation of the underlying judgment and to others who are not Brian D. Martin. Accordingly, §201(e) does not apply where the videos have previously been transferred voluntarily by Brian D. Martin. The Court ordering that Google take certain actions pertaining to "videos" on a YouTube channel solely pertain to property that is presently vested in Google and not the "individual author." Defendants Brian D. Martin and Holly Bone have already voluntarily transferred such exclusive rights to YouTube and have transferred related rights to other entities. Because some of these exclusive rights have been transferred by agreement, this Court may order the transfer of these rights.

The trial court determined section 201(e) was inapplicable to protect the copyrighted materials based upon the voluntary transfer. In their brief, appellees reassert that Brian and Holly previously transferred their "rights to the copyrighted material to YouTube." We conclude that the trial court lacked subject matter jurisdiction, as do we, to determine whether a voluntary transfer occurred in this case. To the extent the parties invite us to determine what might constitute a transfer in the context of uploading of videos to a virtual platform for purposes of copyright protection, we decline to do so based upon the exclusive jurisdiction of the federal courts. As this issue is not raised on appeal, we do not address the trial court's right to redirect monies generated from the channels pursuant to court order (garnishment) and to freeze or unfreeze the channels for purposes of restricting the exercise of control by Holly or the other defendants.

Based upon applicable authority, we conclude the trial court had no jurisdiction to determine the ownership of the videos and whether the purported transfer of videos to Google or another virtual platform was a "voluntary transfer"

under the Copyright Act.  Such determinations belong to the exclusive jurisdiction of federal courts.

Moreover, we find no authority to support the trial court's jurisdiction to permanently transfer legal and equitable title and ownership of the copyrighted videos from Holly and Brian to appellees.  We sustain Holly and Brian's second issue to the extent they argue that the trial court's award transferring legal and equitable title and ownership of the videos at issue was preempted by federal copyright law.[9]

## C. **Issue Three: Ownership of the YouTube Channels**

In their third issue, Holly and Brian assert that the trial court lacked subject matter jurisdiction to assign ownership of the YouTube channels because Holly and Brian never had ownership of the channels.   Holly and Brian do not assert copyright pre-emption for the channels; therefore, we conclude this is not a matter of subject matter jurisdiction.   Rather we discern from the argument that Holly and Brian challenge the trial court's ability to assign "ownership" of the identified channels. Holly and Brian argue that, under the YouTube terms of service, using the YouTube platform does not grant ownership rights to the channels themselves.  Specifically,

---

[9] To the extent the judgment and permanent injunction order that Brian and Holly desist and refrain from removing any videos from the channels, filing copyright strikes against any videos on the channels, filing any BOT attacks in an attempt to remove videos, filing any artificial BOT views in an attempt to remove videos, and filing any content id claims against the videos, we conclude that these actions may be consistent  with state law collection proceedings not subject to determination by the Copyright Act and therefore may not be pre-empted.

the YouTube terms of service provide that users retain ownership rights to content posted on YouTube, but YouTube retains exclusive rights to remove videos, indicating that users do not own the channels themselves.

YouTube's Terms of Service outlines the parameters of the relationship. The "Service" is defined collectively as "the YouTube platform and the products, services and features we make available to you as part of the platform." Google LLC is identified as the "entity providing the Service." Additional pertinent provisions are as follows:

> Content is the responsibility of the person or entity that provides it to the Service. YouTube is under no obligation to host or serve Content.

> With a Google account, you may be able to like videos, subscribe to channels, create your own YouTube channel, and more.

> Creating a YouTube channel will give you access to additional features and functions, such as uploading videos, making comments or creating playlists (where available).

> If you have a YouTube channel, you may be able to upload Content to the Service. You may use your Content to promote your business or artistic enterprise.

> You retain ownership rights in your Content. However, we do require you to grant certain rights to YouTube and other users of the Service, as described below [license to YouTube, License to Others, Right to Monetize].

> You grant to YouTube the right to monetize your Content on the Service (and such monetization may include displaying ads on or within Content or charging users a fee for access). This Agreement does not entitle you to any payments. Starting November 18, 2020, any payments you may be entitled to receive from YouTube under any other

agreement between you and YouTube (including for example payments under the YouTube Partner Program, Channel memberships or Super Chat) will be treated as royalties. If required by law, Google will withhold taxes from such payments.

Finally, YouTube provides "information to help copyright holders manage their intellectual property."

Holly's February 2022 response to appellees' application for a TRO and temporary injunction is consistent with the YouTube Terms of Service:

> To clarify the distinction between the ownership of the channels and the ownership of the videos, one might think of the channels as little TV stations, where the owner of the TV station can broadcast what the owner chooses to show. The fact that a show is on a television station, does not mean that the owner of the station owns the programs shown. The ability of the TV station to broadcast is governed by regulations and contractual arrangement. The ownership of the programs it shows is determined by copyright law.

> Similarly, the ability of a YouTube channel owner to show videos or other things is a matter governed by YouTube's Terms and Conditions. The ownership of the intellectual property shown on the channels is a matter of copyright law.

Based upon the record, there is no evidence that Holly or Brian owned the channels for purposes of transferring ownership as opposed to utilizing standard debt collection tools to reach nonexempt property in the hands of a non-party. It is clear from the record that the trial court and all parties understood the distinction between ownership of the videos, actual or constructive possession of the videos due to uploading, and the varying degrees of control over the uploaded videos as reflected

in prior orders and hearings involving nonparty Google and related entities.[10]
Regardless of Holly's and Brian's purported "ownership" interests in the YouTube
channels, it is clear that they are able to exercise control over the content, including
removing and transferring the videos, with the concomitant revenue stream, a
specific remedy sought by the injunction for fraudulent transfer. However, the final
judgment inextricably intertwines the transfer of the content management system,
content id and Google AdSense Accounts with the legal and equitable ownership
and title to the videos.[11]  We sustain Holly and Brian's third issue to the extent they
argue the trial court erred in transferring their ownership interests in the subject
YouTube channels to appellees as the same are specifically tied to the transfer of
legal and equitable ownership and title to the videos.[12]

D. **Issue Four: Damages**

---

[10] Google specifically sought clarification for the purpose of complying with the trial court's order
granting the temporary injunction relative to freezing control of the channels pursuant to the order which
enjoined Holly and Brian from "requesting transfer, effecting transfer, assisting in transfer or taking any
action whatsoever to transfer ownership *or control"* of these channels." (emphasis in record).  Google
explained "freezing" the channels "has prevented anyone from uploading or deleting content" on the
channels, which subsequently caused a significant decrease in revenue "likely due to the lack of new
content." Further, while Google may be able to unfreeze the channels, the "systems were not designed for
these types of modifications"; therefore, "technical issues could arise."  Google specifically advised that
"[u]pon unfreezing the channels, Google might not be able to prevent [Holly or Brian] from receiving,
disbursing, transferring, or otherwise disposing of any revenues generated by the [channels] and will not be
able to prevent [Holly or Brian] from requesting transfer, effecting transfer, assisting in transfer, or taking
any action whatsoever to transfer ownership or control of the [channels]."

[11] We do not address the issue of control over those channels for the purpose of receiving monies
generated from the platforms.  As further addressed below, the trial court awarded purported tangible assets
in the form of videos and video platforms without consideration of the limitation attributed to satisfaction
of the judgment, monetary value of the asset, or monetization of the use of the asset.

[12] We do not, by sustaining issue number three, prevent the trial court from determining what
constitutes monetization of the assets as opposed to the pre-empted divestment and transfer of ownership.

In their fourth issue, Holly and Brian argue the evidence is legally insufficient to support the damages awarded to appellees. Specifically, they complain that appellees "failed to produce any evidence regarding the value of the disputed videos as required under TUFTA" and "failed to produce any evidence showing that they are entitled to monetary damages and ownership of the videos, and the district court improperly allowed a double recovery."[13]

When reviewing a case tried to the bench where findings of fact and conclusions of law have been entered, findings of fact have the same force and effect as jury findings. *Buckeye Ret. Co., LLC v. Bank of Am., N.A.*, 239 S.W.3d 394, 399 (Tex. App.—Dallas 2007, no pet.). The applicable standard of review is the same as that applied in the review of jury findings. *Id.* When an appellant attacks the legal sufficiency of an adverse finding for which it did not have the burden of proof, it must demonstrate there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 453 (Tex. App.—Dallas 2012, pet. denied). Such a challenge fails if there is more than a scintilla of evidence to support the finding. *Doyle*, 370 S.W.3d at 453. Evidence does not exceed a scintilla if it is so weak as to do no more than

---

[13] In their fourth issue, Holly and Brian also argue that appellees "failed to produce any evidence showing they are entitled to 'lost profits' from the video revenue." However, as the trial court's judgment, findings of fact, and conclusions of law do not address the issue of lost profits, we conclude we need not further address this issue.

create a mere surmise or suspicion that the fact exists. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006).

A creditor affected by a fraudulent transfer can seek equitable remedies under section 24.008 of the business and commerce code or money damages under section 24.009(b). TEX. BUS. & COM. CODE §§ 24.008, 24, 24.009(b); *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008) ("[T]he Act provides for equitable remedies to rescind the fraudulent transfer, or a damage assessment limited to the amount of the property transferred."). The equitable remedies allowed under section 24.008 are "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" (TEX. BUS. & COM. CODE § 24.008(a)(1)); "an attachment or other provisional remedy against the asset transferred or other property of the transferee" (§ 24.008(a)(2)); "an injunction against further disposition . . . of the asset transferred or of other property" (§ 24.008(a)(3)(A)); "appointment of a receiver" (§ 24.008(a)(3)(B)); "any other relief the circumstances may require" (§ 24.008(a)(3)(C)); or, if the creditor has obtained a judgment against the debtor, permission to "levy execution on the asset transferred or its proceeds" (§ 24.008(b)).

A creditor affected by a fraudulent transfer may seek money damages from the person for whose benefit the transfer was made, the first transferee, or any subsequent transferee who did not take it in good faith and for value. *Id.* § 24.009(b). The measure of damages is the lesser of "the amount necessary to satisfy the

creditor's claim" or "the value of the asset transferred . . . at the time of the transfer, subject to adjustment as the equities may require." *Id.* § 24.009(b), (c)(1).

The amount necessary to satisfy the creditor's claim is measured as of the time judgment is rendered under section 24.009(b), even if this amount is greater than or less than the amount that would have satisfied the creditor's claim at the time of the fraudulent transfer. *Citizens Nat'l Bank of Tex. v. NXS Construction, Inc.*, 387 S.W.3d 74, 90–91 (Tex. App.—Houston [14th Dist.] 2012, no pet). But the amount necessary to satisfy the creditor's claim includes only amounts necessary to satisfy the claim itself, not reimbursement for costs incurred in the course of pursuing the claim, such as court costs. *Id.*

Here, Holly was not a party to the federal litigation that resulted in appellees' $18 million judgment against Brian; she is not a judgment debtor. Liability against Holly is sought under appellees' numerous state law claims, including TUFTA. The record is unclear as to whether the damages assessed are for independent liability under the various state law claims or as a clawback of fraudulent transfers under TUFTA.

In their brief, Holly and Brian argue that appellees "wholly failed to present any evidence of the value of the videos" contained on the various YouTube channels and that such evidence was required under TUFTA regardless of the remedy elected by appellees. Holly and Brian cite the testimony of Brandon Keating, a manager of Fidelissimus who assigned to Fidelissimus his interest in the judgment against Brian,

−22−

that the FuturisticHub channel alone earned "approximately $1,080,000" each year. Keating testified that this calculation was based on Holly's testimony that "since April 15, 2016 to the present, that that channel was earning approximately $80- to $100,000 per month." Holly and Brian complain that this testimony constituted no evidence of the videos' fair market value, and the trial court's award of the videos "in addition to $14,745,285.80 in monetary damages" constituted a double recovery.[14]  We agree.

There is no distinction made by the trial court between the monetary value of the videos and the monetization of the videos through income generation.  It is clear from the record that the value was the monetization of the videos in that the trial court issued a writ of garnishment, an ex parte turnover order, and a temporary injunction under which Google deposited over $290,000 into the registry of the court. There is no evidence of the monetary value of the videos themselves; while the evidence relative to income generation is a scintilla, the procedurally correct tools for debt collection were not utilized.  Keating's testimony regarding the approximate income produced by the FuturisticHub channel from April 2016 until the time of trial and for WildCraft for fifteen months was based solely on Holly's

---

[14] With regard to the monetization of the WildCraft channel, based upon Holly's trial testimony the channel earns "approximately $30,000 to $40,000 per month."  Using an average of $35,000 per month to calculate economic damages concerning the WildCraft channel commencing January 2021, multiplied by 15 months, Keating confirmed he was asking the court to award "economic damages in the amount of "$525,000 concerning the WildCraft channel."  Keating testified he was asking the court to award $6,480,000 from the FuturisticHub channel, in addition to damages for the sale of the house in the amount of $340,000, for an aggregate total of $7,345,000.  Keating further requested that the email addresses and passwords be turned over and that Brian be enjoined from operating the five channels.

testimony and no other evidence.  Assuming that Keating's testimony was some

evidence of the income produced by the FuturisticHub and WildCraft channels

during that relevant time, we conclude his testimony was no evidence of the fair

market value of the videos themselves.  At most, Keating's testimony is evidence

that the videos on the FuturisticHub and WildCraft channels generated an income

stream that appellees might have attempted to garnish in order to satisfy the

judgment against Brian as they successfully garnished revenue from the videos on

the FuturisticHub channel in February and March 2021.  Without evidence of the

videos' value, the trial court erred in permanently vesting ownership of the videos

with appellees.[15] *See Hong*, 249 S.W.3d at 446 ("[T]he Act provides for equitable

remedies to rescind the fraudulent transfer, or a damage assessment limited to the

amount of the property transferred.").  We agree with Holly and Brian that the award

of the videos "in addition to $14,745,285.80 in monetary damages" constituted a

double recovery, as the testimony was in the amount of $7,345,000 and the evidence

was legally insufficient to support the damages awarded. *See id.*; *Doyle*, 370 S.W.3d

at 453. Further, there is no evidence of the basis of the apportionment of damages

between Holly and Brian, no evidence of the measure of damages as between the

various legal theories asserted and combined in the damages awarded, and no

distinction between the damages attributed to the equity clawback provisions under

---

[15] This holding does not negate the lack of subject jurisdiction over the determination of the ownership or transfer of the videos; rather, the damages analysis is purely to address legal insufficiency and double recovery.

TUFTA and the independent claims asserted.  In reaching this conclusion, we note that the absence of evidence of the independent damages herein awarded does not mean appellees are not entitled to collect on the underlying judgment. We sustain Holly and Brian's fourth issue.

## CONCLUSION

We overrule appellants' first issue, sustain the second issue to the extent we determine that the trial court lacked subject matter jurisdiction to award legal and equitable title of the videos, sustain the third issue to the extent that the trial court erred in transferring ownership interest in the YouTube channels to appellees, and sustain appellant's fourth issue that there was no evidence of damages to support an award based upon the state law claims.

We reverse the trial court's judgment, render judgment that appellees take nothing on their claims for civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction, and remand for further proceedings under the Texas Uniform Fraudulent Transfer Act consistent with this opinion.

/Bonnie Lee Goldstein//
BONNIE LEE GOLDSTEIN
JUSTICE



### Court of Appeals
### Fifth District of Texas at Dallas

## JUDGMENT

HOLLY BONE-MARTIN AND
BRIAN MARTIN, Appellants

No. 05-22-00439-CV          V.

DAVID TYLER MOSS, ET AL.,
Appellees

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-09893.
Opinion delivered by Justice
Goldstein. Justice Breedlove
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED**, judgment is **RENDERED** that David Tyler Moss and Fidelissimus, Inc. take nothing on their claims for civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction, and this cause is **REMANDED** for further proceedings under the Texas Uniform Fraudulent Transfer Act consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 13th day of February, 2025.

**EXHIBIT 2**

Case No. 24-10848

---

# In the United States Court of Appeals
# for the Fifth Circuit

◆

DAVID TYLER MOSS; BRANDON KEATING,
PLAINTIFFS – APPELLEES

v.

BRIAN MARTIN,
DEFENDANT – APPELLANT

◆

On Appeal from the United States District Court
Northern District of Texas, Dallas Division
No. 3:14-cv-03088, the Honorable Barbara M. G. Lynn, Presiding

◆

## OPENING BRIEF OF APPELLANT

◆

Clouthier Law, PLLC
Susan J. Clouthier
Tex. Bar No. 24062673
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 77380
Telephone: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorney for Appellant**
**Brian Martin**

ORAL ARGUMENT REQUESTED

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

District Judge:                    Barbara M. G. Lynn

Magistrate Judge:                  Rebecca Rutherford

Appellant:                         Brian Martin

Co-Defendant in trial court:       Marko Princip

Counsel for Appellant:             Susan J. Clouthier
                                   Clouthier Law, PLLC
                                   9950 Woodloch Forest Dr, Ste 1300
                                   The Woodlands, Texas 77380

Trial Counsel for Appellant:       Mazin A. Sbaiti
                                   Sbaiti & Company PLLC
                                   5307 E. Mockingbird Lane
                                   Fifth Floor
                                   Dallas, Texas 75206

                                   Adrian Edward Bower
                                   Bower PLLC
                                   1910 Pacific Ave, Suite 10700
                                   Dallas, TX 75201

                                   Robert D Wilson
                                   Law Office of Robert D Wilson PC

ii

                                        1900 Preston Rd, Suite 267-72
                                        Plano, TX 75093

Counsel for Appellee:                   Daniel L Wyde
                                        Wyde & Associates
                                        10100 N Central Expressway
                                        Suite 230
                                        Dallas, TX 75231

                                        Hunter A Nunn
                                        The Law Office of Hunter A Nunn
                                        PO Box 191385
                                        Dallas, TX 75219

                                        Ryan Rouz
                                        Rouz & Associates PLLC
                                        1111 South Akard Street #405
                                        Dallas, TX 75215

                                        Victor D. Vital
                                        Haynes and Boone LLP
                                        2801 N Harwood St
                                        Suite 2300
                                        Dallas, TX 75201

                                        Read Hopkins Reily
                                        Macdonald Devin PC
                                        12270 Coit Road
                                        Suite 1100
                                        Dallas, TX 75251


                                        _/s/ **Susan J. Clouthier**_
                                        Susan J. Clouthier

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Brian Martin, respectfully requests oral argument. Although Appellant represents the facts and legal arguments are thoroughly presented in this brief and in the record, Appellant suggests that the decisional process of this Court would be significantly aided by oral argument. This case concerns a matter of first impression for this Court, namely, whether an attorney's wholly unauthorized representation of a client in a district court proceeding represents a fraud on the court as contemplated under Federal Rule of Civil Procedure 60(d). Appellant contends that discussing the facts and relevant precedent may shed further light upon the application of authority in this case. Accordingly, Appellant requests oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ................................................. iv

TABLE OF AUTHORITIES ........................................................................ vii

SUBJECT MATTER AND APPELLATE JURISDICTION ..................................... 1

STATEMENT OF THE ISSUES .................................................................... 2

STATEMENT OF THE CASE........................................................................ 2

    I.    Relevant facts and procedural history. ................................. 2

    II.   Martin's Fed. R. Civ. P. 60(d) motion. .................................... 8

    III.  United States Magistrate Judge's Findings, Conclusions,
        and Recommendation, and the District Court's Order
        Accepting Findings, Conclusions, and Recommendation. .. 11

SUMMARY OF THE ARGUMENT .................................................................. 14

ARGUMENT AND AUTHORITIES ................................................................. 17

    I.    Standard of review............................................................. 17

    II.   Wilson set into motion an unconscionable plan or scheme
        which was designed to improperly influence the district
        court in its decision, perpetrating a fraud on the court under
        Fed. R. Civ. P. 60(d). ........................................................... 18

    III.  Wilson's unauthorized actions demonstrate an injustice
        sufficiently gross to demand a departure from rigid
        adherence to the finality of the judgment. ......................... 23

        A.    As a result of Wilson's actions, Martin was denied due

process of law. .............................................................. 24

    B.   Wilson never had the authority to represent Martin
and thus perpetrated a fraud on the court................. 25

    C.   Wilson's unauthorized representation of Martin
violated the Disciplinary Rules of Professional
Conduct. .................................................................... 26

CONCLUSION ............................................................................. 28

CERTIFICATE OF SERVICE ......................................................... 30

CERTIFICATE OF COMPLIANCE .................................................. 31

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Apotex Corp. v. Merck & Co., Inc.,*
  507 F.3d 1357 (Fed. Cir. 2007) ..............................................................18

*Buck v. Thaler,*
  452 Fed. App'x 423 (5th Cir. 2011) .......................................................18

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ...................................................................................20

*Cleveland Bd. of Educ. v. Loudermill,*
  470 U.S. 532 (1985) .................................................................................25

*Disabilities Advocacy Ctr. v. Melton,*
  521 F. Supp. 365 (D.N.H. 1981) .............................................................27

*Doraleh Container Terminal SA v. Republic of Djibouti,*
  109 F.4th 608 (D.C. Cir. 2024) ...............................................................26

*Fierro v. Johnson,*
  197 F.3d 147 (5th Cir. 1999) ..................................................................19

*First Nat'l Bank of Louisville v. Lustig,*
  96 F.3d 1554 (5th Cir. 1996) ..................................................................19

*Fuentes v. Shevin,*
  407 U.S. 67 (1972) ...................................................................................25

*Gamble v. Webb,*
  806 F.2d 1258 (5th Cir. 1986) ................................................................25

*Haskett v. W. Land Servs., Inc.,*
  761 Fed. App'x 293 (5th Cir. 2019) ..................................................18, 19

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,*
    322 U.S. 238 (1944) ................................................................ 20

*In re Rosenthal & Watson, P.C.,*
    612 B.R. 507 (Bankr. W.D. Tex. 2020) ................................ 26

*Jackson v. Thaler,*
    348 Fed. Appx. 29 (5th Cir. 2009) .................................. 18, 19

*Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,*
    441 F.2d 631 (5th Cir. 1971) ................................................ 19

*Maiz v. Virani,*
    311 F.3d 334,fn.5 (5th Cir. 2002) ........................................ 26

*Mercury Air Group, Inc. v. Mansour,*
    237 F.3d 542 (5th Cir. 2001) ................................................ 17

*Osborn v. Bank of the U.S.,*
    (1824) ...................................................................................... 26

*Preyor v. Davis,*
    704 Fed. App'x 331 (5th Cir. 2017) .............................. Passim

*Pueblo of Santa Rosa v. Fall,*
    273 U.S. 315 (1927) .............................................................. 27

*Riley v. Wells Fargo Bank, N.A.,*
    815 Fed. App'x 808 (5th Cir. 2020) .................................... 17

*Rodriguez v. Bank of Am., N.A.,*
    693 Fed. App'x 376 (5th Cir. 2017) .................................... 17

*Rozier v. Ford Motor Co.,*
    573 F.2d 1332 (5th Cir. 1978) .............................................. 18

*Tollett v. City of Kemah,*
    285 F.3d 357 (5th Cir. 2002) ................................................ 17

*United States v. Throckmorton,*
    98 U.S. 61 (1878) .................................................................. 15

*Wilson v. Johns-Manville Sales Corp.,*
    873 F.2d 869 (5th Cir.1989) ................................................. 19

**Statutes**

28 U.S.C. § 636(b)(1) ................................................................ 12

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1332(a) ..................................................................... 1

**Rules**

Fed. R. App. P. 4 ......................................................................... 1

Fed. R. App. P. 32(a)(5) ............................................................ 32

Fed. R. App. P. 32(a)(6) ............................................................ 32

Fed. R. App. P. 32(a)(7)(B)(i) .................................................. 32

Fed. R. Civ. P. 60(d) ......................................................... Passim

Fed. R. Civ. P. 60(d) (1) and (3) ................................................ 8

Fed. R. Civ. P. 60(d)(3) ..................................................... Passim

Tex. Discip. R. Prof. Cond. Rule 1.06(a) .................................. 27

Tex. Discip. R. Prof. Cond. Rule 1.06(b) ............................ 27, 28

## SUBJECT MATTER AND APPELLATE JURISDICTION

**Subject Matter Jurisdiction in the District Court**. The district
court from which this appeal is taken had jurisdiction of this action
pursuant to 28 U.S.C. § 1332(a), commonly referred to as diversity
jurisdiction.

**Jurisdiction in the Court of Appeals**. This Court has
jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Jurisdiction
under this statute is proper because this appeal is from a final decision
rendered and entered in the United States District Court for the
Northern District of Texas on August 29, 2024. ROA.1830, 1845.

This appeal is timely under the provisions of Rule 4 of the Federal
Rules of Appellate Procedure because the Final Order was entered on
July 3, 2024, and the order denying Martin's Motion for Reconsideration
of the Order Accepting Findings, Conclusions, and Recommendation of
the United States Magistrate Judge was entered on August 29, 2024, and
the Notice of Appeal was filed on September 11, 2024. ROA.1830, 1845,
1883.

## STATEMENT OF THE ISSUES

1.  As a matter of first impression for this Court, the district court
    abused its discretion when it denied Appellant Brian Martin's
    Motion for Post-Judgment Relief Pursuant to Federal Rule of Civil
    Procedure 60(d), because Martin showed by clear and convincing
    evidence that a fraud had been perpetrated on the court when an
    attorney, unbeknownst to Martin, appeared without authorization
    on his behalf in district court and kept Martin in the dark as to the
    existence and nature of the lawsuit.

## STATEMENT OF THE CASE

## I.    Relevant facts and procedural history.

On August 27, 2014, Appellees David Tyler Moss and Brandon
Keating filed their First Amended Petition and Application for
Temporary Restraining Order in the District Court of the 191st Judicial
District of Dallas County, Texas. ROA.33. In said Petition, Appellant
Brian Martin was added as a defendant. ROA.34. The Petition alleged
that Keating entered into a membership agreement with Marko Princip
and other individuals and entities that entitled Keating to 30% of the
ownership interest in a certain Game Guide, LLC. ROA.35-36. Further,

the Petition alleged that Moss and Princip entered into a partnership agreement; the partnership agreement allegedly provided that Moss would invest $1,500 in a VideoGames YouTube channel in return for 30% of the company. ROA.36-37. The Petition alleges that Moss later participated in a Skype conversation with Princip and Martin where Martin allegedly stated "[y]our contract is void." ROA.38.

Moss and Keating alleged various causes of action under the Petition, including common-law fraud, breach of fiduciary duty, breach of contract, conversion, and money had and received; however, the Petition does not make clear how Martin would be liable under any cause of action. *See generally* ROA.39-46.

At the time that Martin was brought in as a party under the First Amended Petition, Princip instructed Attorney Robert Wilson to "file a response" on behalf of Martin; further, Princip confirmed that "he would pay all of the fees." ROA.1751. On August 28, 2014, a Notice of Removal to Federal Court was filed by Wilson on behalf of Princip and Martin, removing the case to the United States District Court for the Northern District of Texas – Dallas Division. ROA.25-27.

However, at the time these actions were taken by Wilson on

Martin's behalf, Martin had not been served the Petition, had not received notice of the claim, and was wholly unaware of the litigation. ROA.1798. Martin never hired Wilson to represent him in any civil proceedings or any other matter. ROA.1798. Martin never sought or consented to Wilson's representation of him in this matter. ROA.1798. Martin did not sign and did not see any engagement agreement with Wilson or his firm. ROA.1798. Martin did not pay, or consent for any other party to pay, Wilson any consideration for Wilson or his firm to represent Martin. ROA.1798. Indeed, Wilson later admitted his "instruction in relation to the claim brought by Mr. Keating and others was from Marko Princip only" and that he "did not take instructions from Mr. Martin." ROA.1750-51. Further, Wilson admitted that he "did not, at any time, receive instruction(s) directly from Mr. Martin." ROA.1751.

Further, Wilson's unauthorized representation of Martin obscured a conflict between Martin and his putative co-defendant; namely, that Princip sold Martin 50% of the Videogames YouTube channel *after* allegedly already selling 60% of it to Moss and Keating. ROA.1823. Only after the conclusion of litigation did Martin discover that Wilson had been representing both Martin and Princip despite the conflict created

4

by the allegation that Princip had assigned away 60% of the Videogames Channel prior to his selling Martin 50% of it. ROA.1800. According to Martin, "[h]ad [he] known these facts, or that [he] was a named defendant, [he] would have retained [his] own counsel." ROA.1800. Further, Martin's obliviousness to Wilson's representation or the status of litigation prevented Martin from asserting his own claims in the case, whether in the form of counterclaims or crossclaims. *See* ROA.1802.

On October 10, 2014, Wilson filed a Status Report on behalf of Martin, in which Wilson indicated that Martin consented to a trial before a United States Magistrate Judge. ROA.167-69. However, Martin never gave such consent, and he never consented to waiving his right to a trial before the district judge. ROA.1798. On November 26, 2014, Wilson purported to sign a Joint Status Report, consenting to a trial before a Magistrate Judge "conditioned on Magistrate Stickney or Kaplan only." ROA.176-80. Again, at the time Wilson made this representation to the district court, Martin was unaware of the existence of the lawsuit and had "never heard of Judge Stickney, Judge Kaplan, or Robert Wilson." ROA.1798.

Wilson filed an Answer to Plaintiffs' Fist Amended Complaint on

September 11, 2015. ROA.567. Throughout the answer, Wilson made admissions and denials on behalf of Martin. ROA.567-602. However, Wilson admits that he did so without first speaking with Martin and receiving instructions from him. ROA.1751. These admissions were made without Martin's knowledge and included admissions that in fact were either false or beyond Martin's knowledge. ROA.1800. The admissions made by Wilson were not based on information conveyed by Martin to Wilson, either directly or indirectly. ROA.1802.

A Joint Settlement Status Report was filed with the district court on July 27, 2015. It was reported that the "[p]arties are in favor of attempting to settle this case through mediation and are in the process of scheduling with a private mediator." ROA.559-60. The district court entered an order requiring the parties to choose a mediator; the parties subsequently chose a mediator and filed their selection with the district court. ROA.562-63. The district court entered an Order of Referral For Mediation. ROA.565. The parties later attended mediation and were unable to reach settlement. ROA.603. However, throughout the entirety of the proceedings, Martin was unaware that Wilson was participating in settlement negotiations on his behalf. ROA.1799. Wilson did not inform

Martin of the court-ordered mediation, and Martin was not invited to participate. ROA.1799.

The case proceeded to a trial by jury on March 28, 2016. ROA.1888. At a pretrial conference, Wilson announced that he was present "on behalf of Marko Princip, Brian Martin, and other named Defendants." ROA.1891. However, up to the day the trial began, Martin was still unaware that he was a named defendant in the lawsuit. ROA.1799. Martin appeared at trial initially believing only that he would be called as a witness. ROA.1799. Prior to the commencement of trial, during the only communication that Martin had with Wilson, Wilson told Martin that Wilson would appreciate it if Martin appeared at trial as a witness. ROA.1799. Once Martin entered the courtroom, Wilson told him to "sit down and shut up." ROA.1799.

Wilson then proceeded to state to the jury that he represents Martin. ROA.1905. But during Martin's testimony, the following exchange took place:

> Question: And yet Mr. Keating has sued you. Is that correct?
>
> Martin: No; not at all.
>
> Question: So you don't understand — Mr. Wilson hasn't explained to you that Mr. Keating has sued you and Mr.

Princip –

ROA.2295-96. Next, the following exchange took place:

> Question: Okay. Are you aware, as you sit here testifying today, that if the jury finds that Mr. Moss had a contract with Mr. Princip and you interfered with that contract, that you can be held liable? Are you aware of that?
>
> Martin: No.
>
> Question: That has never been explained to you.
>
> Martin: Never…

On April 15, 2016, the district court entered a Final Judgment against Martin and Princip jointly and severally in the amount of $18,600,000. ROA.1035-38.

## II.    Martin's Fed. R. Civ. P. 60(d) motion.

On September 20, 2023, Martin filed his Motion for Post-Judgment Relief Pursuant to Federal Rule of Civil Procedure 60(d). ROA.1725. Under the Motion, Martin requested relief from the April 15, 2016 judgment predicated on Federal Rule of Civil Procedure 60(d) (1) and (3). ROA.1729. Specifically, Martin argued that Attorney Robert Wilson perpetrated fraud on the court by falsely representing that he was Martin's attorney, and by taking unauthorized action on Martin's behalf. ROA.1729.

Martin argued that he did not receive service in either the original state court action or the removed federal litigation, and that instead Wilson agreed to accept service on Martin's behalf without Martin's knowledge or authorization. *See* ROA.1729-30. Further, Wilson removed the state court action to federal court without first engaging Martin and receiving his consent to take these actions. ROA.1730-31. Wilson additionally filed an answer and other pleadings on Martin's behalf, making case-determinative admissions and denials, all without Martin's knowledge or authorization. *See* ROA.1730-31. Martin also argued that Wilson waived Martin's right to a trial before a federal district court judge and consented to trial before a federal magistrate without first establishing communication with Martin or otherwise informing Martin of Wilson's representation. *See* ROA.1737.

Martin further argued that Wilson engaged in settlement negotiations on his behalf while Martin was still wholly ignorant of the ongoing litigation; indeed, Wilson attended a court-ordered mediation on Martin's behalf without informing Martin of the mediation and without making known the fact of his representation. ROA.1741-42. Wilson never presented Martin with any pleadings or discovery in the case. ROA.1743.

9

When finally informed of the impending jury trial, Wilson merely asked Martin to attend as a witness, obscuring the reality that Martin was a named defendant in the lawsuit. ROA.1743. At the commencement of trial, Wilson instructed Martin to "to sit down and shut up," and the trial proceeded to a multimillion-dollar verdict. *See* ROA.1743.

Based on the foregoing, Martin argued that Wilson willfully, intentionally, deliberately, and purposely set in motion an unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate the matter. ROA.1746. Further, Martin argued that Wilson's false and fraudulent statements and filings to the district court were directed to the presiding judge, and that the false and fraudulent statements and filings did, in fact, deceive the district court which resulted in, amongst other things, the district court issuing Martin's summons with Wilson's address on it, the district court asserting jurisdiction over Martin via improper service on Wilson, and a trial being conducted before a magistrate judge without the consent of all parties. ROA.1746. Martin urged the district court, under Rule 60(d)(3) of the Federal Rules of Civil Procedure, to set aside and vacate the April 15, 2016 judgment, and all such other orders and instruments as were

executed pursuant to the judgment in this case. ROA.1747.

Martin additionally requested the following relief: (1) an investigation, by a special master or otherwise, into the frauds asserted and/or established by Martin; (2) a hearing on the frauds asserted and/or established by Martin and/or the district court's investigation; (3) an order staying all collection proceedings and companion litigation relating to the April 15, 2016 judgment; (4) an order requiring all judgment creditors and successors who have collected amounts based in whole or in part on the existence of the April 15, 2016 judgment to deposit all such sums collected into the registry of the district court; (5) for such other relief as the district court deemed just. ROA.1747-48.

## III. United States Magistrate Judge's Findings, Conclusions, and Recommendation, and the District Court's Order Accepting Findings, Conclusions, and Recommendation.

On June 4, 2024, the Findings, Conclusions, and Recommendation of the United States Magistrate Judge was entered. ROA.1808. Because Judge Stickney had since retired from service as a United States Magistrate Judge, and no party consented to proceed before Judge Rutherford, Judge Rutherford accordingly issued Findings, Conclusions, and a Recommendation to the District Judge for the disposition of

11

Martin's Rule 60(d) motion under 28 U.S.C. § 636(b)(1). ROA.1811.

Judge Rutheford observed that to prevail on his Rule 60(d)(3) Motion, Martin had the burden to establish that there was fraud on the court by clear and convincing evidence; further, Judge Rutherford noted that fraud on the court is a "narrow concept" and "should embrace only the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner." ROA.1812-13 (citation omitted). Judge Rutherford ultimately found that Martin did not meet his burden to establish this class of fraud by clear and convincing evidence. ROA.1813. Specifically, Judge Rutherford found that Martin's evidence and accompanying argument did not establish that Wilson acted without Martin's authority and with an intent to defraud the district court. ROA.1814-15. Further, Judge Rutherford noted that Martin appeared and participated at trial and never objected that the court lacked jurisdiction over him or that Wilson lacked authority to represent him. ROA.1815. Lastly, Judge Rutherford observed that Martin did not cite any binding authority holding that an attorney taking actions on behalf of a party without direct instruction fits within the species of fraud which

would justify vacating a judgment under Rule 60(d)(3). ROA.1816.

Martin filed his Objections to Finding, Conclusion, and Recommendation of Magistrate on June 18, 2024. ROA.1818. Martin objected to the Recommendation as being erroneous and contrary to law and asked for review under a *de novo* standard. ROA.1822.

In his Objections, Martin argued that, because no response was filed, his own affidavit testimony was uncontroverted by anything outside the record; according to Martin, the Recommendation's silence as to Martin's affidavit testimony, coupled with the Recommendation's suggestion of no evidence, indicated that Martin's testimonial evidence was improperly given either no or inadequate weight. ROA.1822. Further, contrary to Judge Rutherford's claim that "there simply is no evidence of an unconscionable plan or scheme to purposefully misrepresent the nature of his attorney-client relationship to the court," Martin again argued that "Wilson's fraud kept the potential claims of a third plaintiff, Martin, out of the suit, and it allowed [Wilson's] real client, Princip, to have someone with whom to split the adverse judgment." ROA.1823. In response to Judge Rutherford's observation that "Martin voluntarily appeared and participated at trial," Martin

13

argued that the uncontroverted evidence shows that Martin appeared at trial only after being falsely convinced by Wilson that he would be appearing only as a witness and not as a defendant. ROA.1827.

On July 3, 2024, the district court entered its Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge. ROA.1830. The district court found that Martin did not establish a fraud on the Court by clear and convincing evidence. ROA.1831. Martin filed his Motion for Reconsideration of Order Accepting Findings, Conclusions, and Recommendation of United States Magistrate Judge on July 30, 2024. ROA.1834. The district court entered an order denying Martin's Motion for Reconsideration of the Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge on August 29, 2024. ROA.1845.

### SUMMARY OF THE ARGUMENT

> Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real

14

> contest in the trial or hearing of the case, are reasons for
> which a new suit may be sustained to set aside and annul the
> former judgment or decree, and open the case for a new and a
> fair hearing.

*United States v. Throckmorton*, 98 U.S. 61, 65–66 (1878).

Brian Martin's case is an extraordinary one. It also represents a matter of first impression for this Court concerning the breadth and reach of Federal Rule of Civil Procedure 60(d).

Here, an attorney, purporting to act on his behalf, kept Martin in the dark that he was a named defendant in a lawsuit up to the commencement of trial. While Martin was oblivious to the legal proceedings against him, the attorney accepted service on Martin's behalf (without informing Martin that he had been sued); made binding admissions to the district court on behalf of Martin (without first contacting or speaking with Martin); entered into settlement negotiations on Martin's behalf (without informing Martin that negotiations were underway); and ultimately represented Martin at trial (after asking Martin to appear at trial only as a witness). And, perhaps most gravely, the attorney took all these actions while simultaneously representing a co-defendant who appeared to have perpetuated the same alleged fraud on Martin that the co-defendant had allegedly perpetrated

15

on the plaintiffs.

Under Rule 60(d), a court may set aside a judgment for fraud on the court. Fraud on the court includes a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. It requires a showing of an unconscionable plan or scheme which is designed to improperly influence the court in its decision. Though no case yet directly holds so, it is nevertheless clear that an attorney's wholesale misrepresentation to a court that he has the authority to act on behalf of a litigant is the kind of fraud that is contemplated under the statute.

This is made all the clearer by the impact of the Attorney Rober Wilson's fraudulent representation of Martin. As a result of the Wilson's actions, Martin was denied due process of law; the fraud denied Martin due process because Martin received neither notice of the lawsuit nor a meaningful opportunity to be heard at trial. Further, it is axiomatic that no person has the right to appear as attorney for another without first receiving authority from the purported client; here, Wilson never had the authority to represent Martin and thus perpetrated a fraud on the court. Finally, by representing Martin alongside a co-defendant to whom

16

Martin was materially adverse, Wilson's unauthorized representation of
Martin violated the Disciplinary Rules of Professional Conduct.

Because a fraud was perpetuated on the court as contemplated
under Fed. R. Civ. P. 60(d)(3), Martin asks this Court to set aside and
vacate the April 15, 2016 judgment, and all such other orders and
instruments as were executed pursuant to the judgment in this case.

## ARGUMENT AND AUTHORITIES

## I.    Standard of review.

This court reviews the denial of a Rule 60(d)(3) motion for abuse of
discretion. *Riley v. Wells Fargo Bank, N.A.*, 815 Fed. App'x 808, 809 (5th
Cir. 2020) (*citing Rodriguez v. Bank of Am., N.A.*, 693 Fed. App'x 376, 377
(5th Cir. 2017)). An abuse of discretion occurs where the "ruling is based
on an erroneous view of the law or on a clearly erroneous assessment of
the evidence." *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002)
(*quoting Mercury Air Group, Inc. v. Mansour,* 237 F.3d 542, 548 (5th Cir.
2001)). Whether relief should be granted based on fraud on the court
under Rule 60(d) is committed to the sound discretion of the district
court, and district courts are given wide discretion in denying such
motions. *Buck v. Thaler*, 452 Fed. App'x 423, 431 (5th Cir. 2011) (*citing*

*Apotex Corp. v. Merck & Co., Inc.,* 507 F.3d 1357, 1361 (Fed. Cir. 2007);

*see also Jackson v. Thaler,* 348 Fed. Appx. 29, 34 n.6 (5th Cir. 2009)).

## II. Wilson set into motion an unconscionable plan or scheme which was designed to improperly influence the district court in its decision, perpetrating a fraud on the court under Fed. R. Civ. P. 60(d).

Under Rule 60(d), a court may "set aside a judgment for fraud on

the court." *Haskett v. W. Land Servs., Inc.,* 761 Fed. App'x 293, 296–97

(5th Cir. 2019) (*quoting* Fed. R. Civ. P. 60(d)(3)). Rule 60(d)(3) functions

as a saving clause: it allows courts to "set aside a judgment for fraud on

the court" without a strict time bar. *Jackson,* 348 Fed. App'x at 34. A

fraud-on-the-court claim is "not subject to any time limitation." *Haskett,*

761 Fed. App'x at 297 (*citing Rozier v. Ford Motor Co.,* 573 F.2d 1332,

1337–38 (5th Cir. 1978)). Movants have the burden to establish that

there was fraud on the court by clear and convincing evidence. *Id.* (*citing*

*Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,* 441 F.2d 631, 636 (5th Cir.

1971)).

Fraud under Rule 60(d)(3) "embraces the species of fraud which

does or attempts to defile the court itself." *Jackson,* 348 Fed. App'x at 34

(*quoting Wilson v. Johns-Manville Sales Corp.,* 873 F.2d 869, 872 (5th

Cir.1989) (cleaned up). To establish fraud on the court, it is necessary to

18

show an unconscionable plan or scheme which is designed to improperly

influence the court in its discretion. *Fierro v. Johnson*, 197 F.3d 147, 154

(5th Cir. 1999) (*citing First Nat'l Bank of Louisville v. Lustig,* 96 F.3d

1554, 1573 (5th Cir. 1996)).

Fraud on the court includes "a fraud perpetrated by officers of the

court so that the judicial machinery cannot perform in the usual manner

its impartial task of adjudging cases that are presented for adjudication."

*Preyor v. Davis*, 704 Fed. App'x 331, 340 (5th Cir. 2017) (*quoting Wilson,*

873 F.2d at 872). It "requires a showing of an unconscionable plan or

scheme which is designed to improperly influence the court in its

decision." *Id.* (*quoting Wilson*, 873 F.2d at 872). Courts should grant relief

for fraud on the court to protect "the integrity of the courts," and to "fulfill

a universally recognized need for correcting injustices which, in certain

instances, are deemed sufficiently gross to demand a departure from rigid

adherence" to the finality of a judgment. *Id.* at 341 (*quoting Chambers v.*

*NASCO, Inc.*, 501 U.S. 32, 44 (1991); *also quoting  Hazel-Atlas Glass Co.*

*v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).

Here, it is clear that a fraud was perpetrated by Wilson, an officer

of the court, so that the judicial machinery could not perform in the usual

manner in the underlying proceeding. As a result of Wilson's actions, an unconscionable plan or scheme was launched which was designed to improperly influence the court in its decision. Wilson acted as Martin's attorney for the entirety of the proceedings without informing Martin of the existence of the litigation or the nature of Wilson's activities. *See generally* ROA.1797-1805. As a result of Wilson's actions, Martin was never served the Petition, never received notice of the claim, and was denied a meaningful opportunity to defend himself and to be heard. *See* ROA.1798. Further, Wilson's unauthorized representation of Martin obfuscated a conflict between Martin and his co-defendant based on Princip selling to Martin 50% of the Videogames YouTube channel *after* already selling 60% of it to Moss and Keating. ROA.1823. Martin was therefore deprived of the opportunity to hire his own counsel to zealously defend his interests, and he lost the opportunity to assert both counterclaims and crossclaims in the litigation. *See* ROA.1880, 1802.

Additionally, Wilson consented to a trial before a United States Magistrate Judge without consulting Martin and receiving authorization to makes such a concession. ROA.167-69, 1798. Indeed, at the time Wilson waived Martin's right to a trial before a district court judge,

20

Martin was unaware of the existence of the lawsuit and had "never heard" of either the magistrate judges involved or Attorney Robert Wilson. ROA.1798. Wilson also filed an answer on Martin's behalf, making outcome-determinative admissions and denials on behalf of Martin. ROA.567-602. However, Wilson made these important representations without ever having spoken to Martin or receiving his authorization; indeed, many of the admissions were in fact false or beyond Martin's knowledge. ROA.1751, 1800, 1802.

Up to the very day the trial began, Martin was still unaware that he was a named defendant in the lawsuit. ROA.1799. Martin went to the trial only after being coaxed by Wilson that he would merely be appearing as a witness. ROA.1799. Once Martin entered the courtroom, Wilson told him to "sit down and shut up." ROA.1799. At trial, it is clear from Martin's sworn trial testimony that he was wholly unaware that he was a defendant in the suit.

A diligent search of this Court's caselaw found no cases that holds whether an attorney's unauthorized practice before a district court is the type of fraud contemplated under Fed. R. Civ. P. 60(d); thus, this a matter of first impression for this Court. However, it is clear that Wilson's

unauthorized activities fit within the general definition of "fraud on the court." Fraud on the court includes "a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Preyor*, 704 Fed. App'x at 340. Here, an officer of the court wholly mispresented his authority to act before the district court on behalf of his purported client; that officer filed papers with the court, moved the court for the appointment of a magistrate to hear the case, and made representations to the court about the status of settlement negotiations. The "judicial machinery" of the district court relied on its belief that Wilson had the authority to move the case forward on behalf of Martin during a time when Wilson did not in fact have such authority. Further, fraud on the court "requires a showing of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id.* And Wilson certainly embarked on such an unconscionable scheme when he appeared before the Court as an attorney for Martin when Wilson had been invested with no authority whatsoever to appear in that capacity.

Because Wilson perpetrated a fraud on the court as contemplated

22

under Fed. R. Civ. P. 60(d)(3), Martin asks this Court to set aside and vacate the April 15, 2016, judgment, and all such other orders and instruments as were executed pursuant to the judgment in this case.

## III. Wilson's unauthorized actions demonstrate an injustice sufficiently gross to demand a departure from rigid adherence to the finality of the judgment.

A review of Wilson's unauthorized activities shows that his conduct fits neatly into the definition of fraud on the court, entitling Martin to relief under Fed. R. Civ. P. 60(d). Further, though it is true that Fed. R. Civ. P. 60(d) covers fraud that is directed at the court, it is also true that courts should grant relief for fraud on the court to "fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence" to the finality of a judgment. *Preyor*, 704 Fed. App'x at 341.

Here, the effects and implications of Wilson's fraud on the court are far reaching. Though the issues discussed below do not in isolation represent fraud on the court, taken together they demonstrate an injustice sufficiently gross to demand a departure from rigid adherence to the finality of the April 15, 2016, judgment.

23

## A.    As a result of Wilson's actions, Martin was denied due process of law.

"Procedural due process consists of notice and the opportunity to be heard." *Gamble v. Webb*, 806 F.2d 1258, 1261 (5th Cir. 1986) (*citing Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)). In 1972, the Supreme Court stated that "[f]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (cleaned up) (citations omitted). Further, the Supreme Court stated that it "is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Id.* (cleaned up) (citations omitted). "Procedural due process consists of notice and the opportunity to be heard." *Gamble*, 806 F.2d at 1261 (*citing Cleveland Bd. of Educ.,* 470 U.S. at 542).

Here, Wilson's fraud denied Martin due process because Martin received neither notice nor a meaningful opportunity to be heard. Wilson accepted service on Martin's behalf, but never notified Martin that he had done so or that a claim was pending against him. ROA.1729-30, 1798-99. Martin thus was denied proper notice in the underlying proceedings.

Further, Martin had "no email, letter, text, or phone communication with" Wilson prior to the case going to trial; indeed, Martin was still unaware that he was a defendant in the litigation when the trial commenced, believing he was only there to serve as a witness. ROA.1799. Martin had no opportunity to prepare for trial or successfully mount a defense; he thus was denied a meaningful opportunity to be heard.

### B. Wilson never had the authority to represent Martin and thus perpetrated a fraud on the court.

An attorney's authority to represent his client "must indeed exist." *Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608, 613 (D.C. Cir. 2024) (*quoting Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 830 (1824)). "[A]n attorney does not have the authority to act on behalf of the purported client if the purported client did not hire the attorney to represent him." *Maiz v. Virani*, 311 F.3d 334, 341 fn.5 (5th Cir. 2002). It is "hornbook law that no person has the right to appear as attorney for another without first receiving authority from the purported client." *In re Rosenthal & Watson, P.C.*, 612 B.R. 507, 544 (Bankr. W.D. Tex. 2020) (citing *Maiz,* 311 F.3d at 341 fn.5; *Dev. Disabilities Advocacy Ctr. v. Melton,* 521 F. Supp. 365, 372 (D.N.H. 1981); *Pueblo of Santa Rosa v. Fall,* 273 U.S. 315 (1927)).

Here, at all times throughout the entirety of the proceedings,
Wilson acted as Martin's attorney without the authority to do so. *See*
ROA.1797-1805. Wilson accepted service of process, filed responsive
pleadings, made binding admissions with the district court, and entered
into settlement negotiations, all without ever having been hired (or even
contacted) by Martin. *See* ROA.1797-1805. The entirety of Wilson's
unauthorized representation on behalf of Martin functioned as a fraud
on the court, setting into motion an unconscionable plan or scheme
designed to improperly influence the court in its decision. Martin is thus
entitled to relief from the underlying judgment under Fed. R. Civ. P.
60(d).

## C. Wilson's unauthorized representation of Martin violated the Disciplinary Rules of Professional Conduct.

Under Rule 1.06(a) of the Texas Disciplinary Rules of Professional
Conduct, "[a] lawyer shall not represent opposing parties to the same
litigation." Further, under Rule 1.06(b), a lawyer shall not represent a
person if the representation of that person "involves a substantially
related matter in which that person's interests are materially and
directly adverse to the interests of another client of the lawyer or the
lawyer's firm," or "reasonably appears to be or become adversely limited

26

by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests." A lawyer may only represent a client in the circumstances contemplated under Rule 1.06(b) if "the lawyer reasonably believes the representation of each client will not be materially affected," and "each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any." Tex. Discip. R. of Prof. Cond. 1.06(c).

Here, Wilson represented both Martin and Princip when the two were essentially opposing parties in the litigation. Under the facts of the case, it appears that Princip sold Martin 50% of the Videogames YouTube channel *after* already selling 60% of it to Moss and Keating. ROA.1823. In essence, Martin was a victim of the same fraud allegedly perpetrated by Princip on Moss and Keating. According to Martin, "[h]ad [he] known these facts, or that [he] was a named defendant, [he] would have retained [his] own counsel." ROA.1800. Despite this obvious conflict, Wilson took it upon himself to represent both Martin and Princip. Further, as a result of Wilson's unauthorized representation, Martin lost the ability to both

defend his interests against Princip and to assert claims against Princip in the litigation.

Wilson never made "full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation" to Martin; indeed, Martin confirms that he "had no email, letter, text, or phone communication with Robert Wilson prior to the Federal Case going to trial." ROA.1799. Wilson himself admits that he "did not, at any time, receive instruction(s) directly from Mr. Martin." ROA.1759. Martin thus never consented to the adverse representation.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court' denial of Appellant's Motion for Post-Judgment Relief Pursuant to Federal Rule of Civil Procedure 60(d) and render an order: (1) setting aside and vacating the April 15, 2016, judgment, and all such other orders and instruments as were executed pursuant to the judgment in this case; (2) staying all collection proceedings and companion litigation relating to the April 15, 2016  judgment; (3) requiring all judgment creditors and successors who have collected amounts based in whole or in part on the existence of the April 15, 2016 judgment to deposit all such

sums collected into the registry of the district court; (4) for such other

relief as this Court deems just.

    January 20, 2025

                            Respectfully submitted,

                            **CLOUTHIER LAW, PLLC**

                            <u>/s/ Susan J. Clouthier</u>
                            Susan J. Clouthier
                            Tex. Bar No. 24062673
                            9950 Woodloch Forest Dr, Ste 1300
                            The Woodlands, Texas 77380
                            Tel: (346) 443-4300
                            Fax: (346) 443-4343
                            susan@clouthierlaw.com

                            **Counsel for Appellant
                            Brian Martin**

## CERTIFICATE OF SERVICE

I certify that on January 20, 2025, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice of the filing to counsel for the Appellee.

I further certify that (1) the required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of paper copies of the foregoing document to the Clerk of Court when requested.

/s/ *Susan J. Clouthier*
Susan J. Clouthier

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 5,715 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook font size 14.

*/s/ Susan J. Clouthier*
Susan J. Clouthier

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID TYLER MOSS and<br>BRANDON KEATING,<br><br>Plaintiffs,<br><br>v.<br><br>MARKO PRINCIP,<br>Individually, MARKO PRINCIP<br>d/b/a VIDEOGAMES YOUTUBE<br>CHANNEL, MARKO PRINCIP<br>d/b/a ACHIEVEMENT GUIDE,<br>MARKO PRINCIP<br>d/b/a GAME GUIDE, LLC,<br>VIDEOGAMES YOUTUBE<br>CHANNEL,<br>and BRIAN MARTIN,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

No. 3:14-CV-03088-BF

C-68th

FINAL JUDGMENT

Following a full jury trial on the merits, and based upon the claims for relief sought by

Plaintiffs in their First Amended Complaint (Dkt. No. 19), the Joint Pretrial Order (Dkt. No. 56),

and the Jury's Verdict (Dkt. No. 66), **IT IS HEREBY ORDERED, ADJUDGED,**

**DECLARED, AND DECREED** that:

1.   Based upon Plaintiff David Tyler Moss's election of remedies in favor of a tort

recovery pursuant to Jury Verdict Question No. 23 (as opposed to a contract

recovery under Jury Verdict No. 21), judgment is entered against Defendants

Brian Martin and Marko Princip on Plaintiff David Tyler Moss's claims for

breach of fiduciary duty, fraud, tortious interference, and conspiracy. On these

Final Judgment Page 1

Certified a true copy of an instrument
on file in my office on _____
Clerk, U.S. District Court,
Northern District of Texas
By _____ Deputy

9

claims, Plaintiff David Tyler Moss shall recover from Defendants Brian Martin and Marko Princip, jointly and severally, the amount of $2,100,000.00 (USD);

2.    Based upon Plaintiff Brandon Keating's election of remedies in favor of a tort recovery pursuant to Jury Verdict Question No. 24 (as opposed to a contract recovery under Jury Verdict Question No. 22), judgment is entered against Defendants Brian Martin and Marko Princip on Plaintiff Brandon Keating's claims for breach of fiduciary duty, fraud, tortious interference, and conspiracy. On these claims, Plaintiff Brandon Keating shall recover from Defendants Brian Martin and Marko Princip, jointly and severally, the amount of $2,100,000.00 (USD);

3.    Because of the tort remedy election, the Court further enters judgment against Defendant Brian Martin on Plaintiff David Tyler Moss's claim for exemplary damages, pursuant to Jury Verdict Question No. 27; and, in view of the statutory cap imposed by Chapter 41 of the Texas Civil Practices & Remedies Code, the Court hereby orders that Plaintiff David Tyler Moss shall recover exemplary damages from Defendant Brian Martin in the amount of $4,200,000.00 (USD);

4.    Because of the tort remedy election, the Court further enters judgment against Defendant Brian Martin on Plaintiff Brandon Keating's claim for exemplary damages, pursuant to Jury Verdict Question No. 28; and, in view of the statutory cap imposed by Chapter 41 of the Texas Civil Practices & Remedies Code, the Court hereby orders that Plaintiff Brandon Keating shall recover exemplary damages from Defendant Brian Martin in the amount of $4,200,000.00 (USD);

Final Judgment Page 2

5.    Because of the tort remedy election, the Court further enters judgment against
      Defendant Marko Princip on Plaintiff David Tyler Moss's claim for exemplary
      damages, pursuant to Jury Verdict Question No. 25; and the Court hereby orders
      that Plaintiff David Tyler Moss shall recover exemplary damages from Defendant
      Marko Princip in the amount of $3,000,000.00 (USD);

6.    Because of the tort remedy election, the Court further enters judgment against
      Defendant Marko Princip on Plaintiff Brandon Keating's claim for exemplary
      damages, pursuant to Jury Verdict Question No. 26; and the Court hereby orders
      that Plaintiff Brandon Keating shall recover exemplary damages from Defendant
      Marko Princip in the amount of $3,000,000.00 (USD);

7.    As of the date of the jury's verdict, the Court hereby declares that a partnership
      exists in respect to the VideoGames YouTube Channel Partnership (the
      "Partnership"), with the following persons owning the following percentages of
      the Partnership:

      a.    David Tyler Moss thirty (30) percent;

      b.    Brandon Keating thirty (30) percent;

      c.    Brian Martin twenty (20) percent; and

      d.    Marko Princip twenty (20) percent.

8.    Prejudgment interest at the rate allowed by law is awarded as to the amounts set
      forth in paragraphs 1) and 2) above, and the amounts set forth in paragraph 1) and
      2) shall continue to bear interest post-judgment at the rate of .55% per annum;

9.    Plaintiffs are entitled to and are awarded all recoverable costs; and

**Final JudgmentPage 3**

11

10.   The Court expressly determines that there is no just reason to delay entry of

Judgment.  The Court may issue additional orders, as necessary, to effectuate this

Judgment; or may amend this Judgment as permitted by law.

**SO ORDERED**, April 15, 2016.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANT BRIAN DENNIS MARTIN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R.CIV. P. RULE 12(b)(6) AND FRBP 7012(b)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 5/29/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Defendant's Counsel: Michael Jay Berger    michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
Interested Party: Lynda T. Bui (TR)    trustee.bui@shulmanbastian.com, C115@ecfcbis.com
Plaintiff's Counsel: Mark S Rosen    marksrosen@aol.com, pattielegalasst@aol.com
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On 5/29/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.
Plaintiff's Counsel
Van T. Tran
1502 N. Broadway
Santa Ana, CA 92701

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Magdalena Reyes Bordeaux
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 365 / Courtroom 303
Riverside, CA 92501-3819

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/29/2025 | Peter Garza | /s/Peter Garza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                         **F 9013-3.1.PROOF.SERVICE**