1  MARK S. ROSEN (S.B.N. 72431)
   Attorney at Law
2  27281 Las Ramblas, Ste. 200
3  Mission Viejo, California 92691
   Tel:  (714) 285-9838
4  marksrosen@aol.com

5
6  VAN T. TRAN (S.B.N. 174264)
   Attorney at Law
7  1502 N. Broadway
8  Santa Ana, California 92701
   Tel: (949) 260-8404
9  Fax: (714) 998-4663
10 tranesq@aol.com

11 Attorneys for Plaintiff DAVID TYLER MOSS and FIDELISSIMUS, LLC

12
13            IN THE UNITED STATES BANKRUPTCY COURT
14         FOR THE CENTRAL DISTRICT OF CALIFORNIA
15                     RIVERSIDE DIVISION

16 In Re  BRIAN DENNIS MARTIN        )  Chapter 7
17                                   )
                                     )  Case No. 6:25-bk-10944-MH
18       Debtor,                     )  Adversary No.6:25-ap-01055-RB
19 ──────────────────────────────    )  **FIRST AMENDED**
                                     )  **COMPLAINT FOR**
20 DAVID TYLER MOSS and              )  **DETERMINATION OF**
                                     )  **NONDISCHARGEABILITY AND**
21 FIDELISSIMUS, LLC,                )  **OBJECTION TO DISCHARGE**
                                     )  **PURSUANT TO 11 U.S.C. §523 AND**
22       Plaintiffs,                 )  **§727**
                                     )
23                                   )
24       vs.                         )
                                     )
25 BRIAN DENNIS MARTIN,              )
                                     )
26       Defendant.                  )
                                     )
27 ──────────────────────────────    )
28

                              – 1 –

COMES NOW, Plaintiffs DAVID TYLER MOSS and FIDELISSIMUS, LLC (collectively, "Plaintiffs"), creditors in the above-referenced Chapter 7 proceeding, and who pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure and Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, file this First Amended Complaint to Determine the Dischargeability of Debt and to object to discharge against Debtor/Defendant BRIAN DENNIS MARTIN ("Defendant" or "Debtor"), and in support thereof respectfully allege as follows:

I. JURISDICTION AND VENUE

1.   This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

2.   Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

3.   This adversary proceeding is brought pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6), 727, and Federal Rule of Bankruptcy Procedure 7001(d) and (f).

II. PARTIES

4.   Plaintiff DAVID TYLER MOSS is an individual and creditor of the Debtor, and a judgment creditor by virtue of a Final Judgment entered on April 15, 2016 in Case No. 3:14-CV-03088-BF in the United States District Court for the Northern District of Texas, and in the other actions described herein and to determine dischargeability of any debts.

5.   Plaintiff FIDELISSIMUS, LLC is a limited liability company and judgment creditor of the Debtor by virtue of a Final Judgment entered on April 15, 2016 in Case No. 3:14-CV-03088-BF in the United States District Court for the

Northern District of Texas, and in the other actions described herein and to determine dischareability of any debts.

6. On or about November 20, 2019, Brandon Keating, who is a judgment creditor in the court actions described herein, assigned his interest in the judgments described herein and in the actions set forth herein, to FIDELISSIMUS, LLC. Fidelissimus, LLC is a company owned by family members of Brandon Keating, who is the managing member of Fidelissimus, LLC. All references herein to "Plaintiffs" include Keating and Fidelissimus, LLC. By virtue of the assignment and the succession to the interest, Fidelissimus, LLC has stepped into the shoes of Keating.

7.      Defendant BRIAN DENNIS MARTIN is the Debtor in this Chapter 7 bankruptcy case.

## III. FACTUAL BACKGROUND

### A. PAST LEGAL ACTIONS

8.      **FEDERAL JUDGMENT.** In Case Number 3:14-CV-03088-BF of the United States District Court for the Northern District of Texas, Dallas Division, Plaintiffs obtained a judgment against Debtor in the amount of $18,600,000 on April 15, 2016, following a federal jury trial on claims including fraud, breach of fiduciary duty, and conspiracy. A copy of that judgment is attached hereto as Exhibit A. The judgment includes:

A. An award in favor of David Tyler Moss for breach of fiduciary duty, fraud, tortious interference, and conspiracy, against Brian Martin and a co-defendant Marko Princip jointly and severally in the amount of $2,100,000;

B. An award in favor of Brandon Keating for breach of fiduciary duty, fraud, tortious interference, and conspiracy, against Brian Martin and a co-defendant Marko Princip jointly and severally in the amount of $2,100,000;

C. An award of exemplary damages in favor of David Tyler Moss against

1  Brian Martin in the amount of $4,200,000;

2          D. An award of exemplary damages in favor of Brandon Keating against

3  Brian Martin in the amount of $4,200,000;

4          E. An award of exemplary damages against co-defendant Marko Princip;

5          F. Prejudgment interest.

6  That judgment was affirmed by the United States Court of Appeals for the Fifth Circuit

7  on January 16, 2019, in a published decision, *Moss et.al. v. Princip, et.al.,* 913 F.3d

8  508 (5th Cir. 2019). A copy of the decision of the Court of Appeals opinion is attached

9  hereto as Exhibit B. Since then, defendants have filed unsuccessful post-decision

10  motions. Under federal law, the decision of the district court, particularly after being

11  upheld by the Court of Appeals, is final for the purpose of res judicata regardless of

12  subsequent pending appellate proceedings. See *Sosa v. DIRECTV, Inc.,* 437 F.3d 923,

13  928 (9th Cir. 2006); *Eichman v. Fotomat Corp.,* 759 F.2d 1434, 1439 (9th Cir. 1985).

14          9.    **DALLAS COUNTY JUDGMENT.** In the District Court for the 68th

15  Judicial District in Dallas County, Texas, Case No. DC-20-09893, in a bench trial, the

16  court awarded a judgment in favor of David Tyler Moss and Fidelissimus, LLC, and

17  against Brian Martin, as well as co-defendants Holly Bone (Brian Martin's wife) and

18  Carolyn Martin.  The court also made several injunctive orders. The findings of fact

19  from the state court include detailed evidence of Debtor's post-judgment schemes to

20  avoid collection, including transferring monetized YouTube video content to entities

21  controlled by others, redirecting income to evade garnishment, and making false

22  statements under oath.

23

24          10. On an appeal, the Court of Appeals for the Fifth District of Texas at Dallas

25  on February 13, 2025, reversed the decision in part and remanded to the trial court.

26  The appellate court found that the state court could not jurisdictionally decide

27  trademark issues that were exclusively in federal jurisdiction, and found that there was

28  insufficient evidence to prove new damages. However, the court remanded "for further

proceedings under the Texas Uniform Fraudulent Transfer Act [TUFTA] consistent with this opinion." The appellate court did *not* find that no fraudulent transfers had been committed. The trial court had assigned ownership of various YouTube channels to the plaintiffs (App.Dec.pg.16). The appellate court found that the channels were owned by YouTube and YouTube entered into a contract, called the Terms of Service, to allow content owners to display their content on the channels. However, the trial court judgment transferred ownership interests in channels, contrary to the Terms of Service. The appellate court wrote: "We sustain Holly and Brian's third issue to the extent they argue the trial court erred in transferring their ownership interests in the subject YouTube channels to appellees as the same are specifically tied to the transfer of legal and equitable ownership and title to the videos [footnote 12]." In footnote 12, the court wrote: "We do not, by sustaining issue number three, prevent the trial court from determining what constitutes monetization of the assets as opposed to the pre-empted divestment and transfer of ownership."

11. Based on this, and given the detailed history described in the opinion as to the transfers made to avoid creditors, the court reversed on damages, but remanded to the trial court. On page 25, in the last sentence, the court said it would "remand for further proceedings under the Texas Uniform Fraudulent Transfer Act consistent with this opinion". This leaves the trial court to determine what constitutes monetization and, independent of damages, to determine a remedy for the fraudulent transfers described in the opinion.

12. As a result, the Dallas state court judgment remains undecided. After the case was remanded to the Dallas state court, the debtor's bankruptcy filing stayed any further proceedings of the state court. At the present time, either there will have to be relief from the automatic stay for the state court to decide on remand whether there were fraudulent transfers under TUFTA, or the bankruptcy court will have to decide the issue in the instant proceeding.

13. **COLLIN COUNTY JUDGMENT.** On May 23, 2022, in Case Number 429-05678-2020 of the 429th Judicial District, in Collin County, Texas, a judgment was entered in the case of *Fidelissimus, LLC and David Tyler Moss, Plaintiffs, v. Brian D. Martin, Carolyn M. Martin, Holly Bone Martin, Terrys Real Estate Investments, LLC.* Brian Martin appeared in the case, but did not appear on the date of trial. A copy of the judgment is attached hereto as Exhibit C. As to defendant Brian Martin, the court awarded:

A. On a claim of fraudulent transfer, count one, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $339,984.98;

B. On a claim of fraudulent transfer, count two, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $339,984.98;

C. On a claim of civil conspiracy, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $25,000;

D. On a claim of aiding and abetting/ concert of action, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $75,000;

E. On a claim of money had and received, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $75,000;

F. On a claim of conversion, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $339,000;

G. On a claim of civil theft, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $339,000.00;

H. On a claim of common law fraud, the court awarded in favor of

Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $339,000.00;

   I. On a claim of statutory fraud in a real estate transaction, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $225,000;

   J. On a claim of trespass to try title, the court awarded in favor of Fidelissimus, LLC and David Tyler Moss, and against Brian Martin, the sum of $338,000;

   K. The court awarded prejudgment interest in the sum of $55,662.94;

   L. The court awarded exemplary damages of $680,000.

14. No appeal was taken from this judgment and it is now final and is binding on the debtor.

## B. OTHER GROUNDS FOR NONDISCHARGE

15. Debtor created WildCraft and Wild MC Ltd., offshore and nominal entities, to conceal his ownership of valuable monetized assets in willful defiance of court orders and to frustrate collection of the judgment. The state court found that Debtor's conduct was willful, malicious, and fraudulent.

16. At the §341 Meeting of Creditors held on April 7, 2025, the Trustee requested that Plaintiffs narrow the scope of their questioning to identifying property currently owned or controlled by the Debtor. In response, testimony was elicited from the Debtor indicating that he plays a substantial, if not primary, role in the operation of a YouTube content channel held in the name of his brother, Kevin Martin.

17. The Debtor testified that he is responsible for the creation and management of monetized digital content posted to the channel, while Kevin Martin, who lacks relevant education, training, or expertise, is listed as the ostensible owner. The Debtor

further testified that he performs these services pursuant to an informal "work for hire" arrangement, whereby his sole compensation consists of room and board furnished by Kevin Martin. The Debtor represented that he receives no direct income, yet also acknowledged that Kevin pays certain of his bills, arranges transportation, and otherwise provides him with funds as needed.

18. The facts adduced at the Meeting of Creditors support the inference that the Debtor and Kevin Martin are operating a unified business endeavor through the use of integrated resources for the purpose of generating profit. The indicia of shared economic interest and operational interdependence give rise to the equitable doctrine of alter ego under California law, including but not limited to the "single business enterprise" theory, under which courts may disregard nominal separateness and impose liability where the entities—or individuals—are, in effect, operating as one.

19. Alternatively, even if the "single business enterprise" doctrine were found to apply only to legal entities and not individuals, the arrangement between the Martin brothers satisfies the elements of a joint venture. California law recognizes that a joint venture may be formed by express agreement or inferred from the conduct and declarations of the parties. The joint efforts of the Debtor and his brother, the shared financial benefits, and the absence of arm's-length arrangements reflect an informal business association in which the fruits of the Debtor's labor are funneled through an affiliate to evade enforcement of existing judgments.

20. Plaintiffs allege that this scheme is designed to hide assets, frustrate creditor collection efforts, and to obscure the true nature of the Debtor's continuing business activities and economic benefits. In the event the Trustee elects not to pursue avoidance or collection remedies against Kevin Martin or the assets nominally held in

his name, Plaintiffs intend to pursue post-judgment collection efforts upon obtaining a non-dischargeability determination in this adversary proceeding.

## IV. CAUSES OF ACTION

21.  Count 1: Non-Dischargeability Under 11 U.S.C. § 523(a)(2)(A)

(Actual Fraud)  Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

22. Debtor obtained property and retained funds through false representations and actual fraud.

23. The federal and state court judgments rest on specific findings of fraudulent intent, schemes to deceive, and misrepresentations by the Debtor. The judgments are binding upon the Debtor. To the extent they are not binding, the underlying facts to be evidenced in trial will show the basis for the non-dischargeability.

24. Accordingly, the debts owed to Plaintiffs are non-dischargeable under § 523(a)(2)(A).

25. Count 2: Non-Dischargeability Under 11 U.S.C. § 523(a)(4)

(Fraud While Acting in a Fiduciary Capacity). Debtor stood in a fiduciary relationship with Plaintiffs as a business partner in the VideoGames YouTube partnership.

26. Debtor breached that fiduciary duty by converting funds, misappropriating partnership property, and concealing material facts, as held in the judgments or to be proved at trial.

27. Such conduct constitutes defalcation and/or fraud in a fiduciary capacity under § 523(a)(4).

28. Count 3: Non-Dischargeability Under 11 U.S.C. § 523(a)(6)

(Willful and Malicious Injury)

29. Debtor's actions—including transfer of digital assets, deletion of videos, redirection of subscribers, and false copyright strikes—were intentional and caused harm to Plaintiffs, as so held in the judgments or to be proved at trial.

30. These actions were taken with specific intent to injure and frustrate judgment enforcement.

31. Such conduct is willful and malicious within the meaning of § 523(a)(6).

32. Count 4: Grounds to Deny Discharge Under 11 U.S.C. §727

33. As alleged herein, the debtor, with the intent to hinder, delay, or defraud these creditors, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, and continues to do so; has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, from which the debtor's financial condition or business transactions might be ascertained; has made false claims and withheld from the trustee recorded information; has failed to explain satisfactorily, any loss of assets or deficiency of assets.

34. As alleged herein, debtor has continued to conceal and hide assets as described herein starting at Paragraph 15. California law provides substantial support for applying the equitable doctrine of alter ego, including the "single business

enterprise" theory, to individuals who operate in concert as a unified business endeavor. The alter ego doctrine is an equitable remedy that allows courts to disregard separate legal identities when there exists a unity of interest and ownership, and where respecting such separateness would result in injustice or inequity.

35. The doctrine is not limited to corporate entities and may be applied to individuals where the facts justify such treatment. Courts in California have consistently held that where one person or entity is used as a mere shell, conduit, or instrumentality for another, and the recognition of separate identities would sanction a fraud or promote injustice, equity permits piercing the veil. See *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523 (2000); *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228 (2002); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009); *Greenspan v. LADT LLC*, 191 Cal. App. 4th 486 (2010); *Toho-Towa Co., Ltd. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096 (2013).

36. To invoke the alter ego doctrine under California law, two conditions must generally be met: (1) there is such a unity of interest and ownership that the separate personalities no longer exist, and (2) an inequitable result would follow if the acts in question are treated as those of the separate entities or individuals alone. Factors informing this analysis include, but are not limited to, commingling of assets, lack of segregation of funds, identical ownership and control, absence of arm's-length dealings, use of assets for personal purposes, and a general disregard of legal formalities.

37. In this case, the operational arrangement between Brian Martin and Kevin Martin reflects a unity of interest, shared resources, and coordinated conduct in furtherance of a common business purpose. The Debtor's labor and management of the

monetized content, combined with Kevin Martin's formal ownership and control of proceeds, constitute a structure in which Kevin acts as the nominal holder of assets to shield them from collection, while the Debtor continues to derive ongoing economic benefit. Recognition of separateness under these circumstances would reward evasion and frustrate the administration of justice.

38. Further, California recognizes the "single business enterprise" theory as a subset of alter ego, wherein multiple persons or entities may be treated as a single legal actor for purposes of imposing liability. Courts have imposed joint responsibility where individuals or entities pool resources, operate under unified policies or economic objectives, or commingle finances. See *Toho-Towa, supra*, 217 Cal. App. 4th at 1109; *LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP*, 3 Cal. App. 5th 1067 (2016). The informal and ongoing collaboration between the Martin brothers falls squarely within this doctrine.

39. Alternatively, even if the Court determines that alter ego or single business enterprise theories are inapplicable, the facts support imposition of liability under a joint venture theory. California law defines a joint venture as an undertaking by two or more persons to carry out a single business enterprise for profit, which may be inferred from conduct rather than requiring a formal agreement. See *Nelson v. Abraham*, 29 Cal. 2d 745, 177 P.2d 931 (1947). The shared labor, mutual financial benefit, and absence of commercial formality between the Debtor and his brother support a reasonable inference that they are engaged in a de facto joint venture.

40. Moreover, California has adopted the Uniform Voidable Transactions Act (UVTA), which authorizes the avoidance of transfers made with the actual intent to hinder, delay, or defraud creditors. Relevant factors include transfers to insiders,

continued control over transferred property, concealment of transfers, and lack of reasonably equivalent value in exchange. The funneling of monetized content and income through Kevin Martin, while Debtor continues to labor for the benefit of the enterprise without formal compensation, supports a strong inference of fraudulent intent under the UVTA.

41. Accordingly, Plaintiffs reserve the right to seek equitable remedies— including declaratory relief, constructive trust, or post-judgment collection—against Kevin Martin and any assets held in his name that serve as vehicles to shelter the Debtor's economic benefits from creditors. If the Trustee declines to pursue such relief, Plaintiffs will proceed independently upon obtaining a judgment of non-dischargeability in this action.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment declaring that the debts owed to Plaintiffs by Defendant Brian Dennis Martin are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6);

b. Deny Defendant and Debtor a discharge of his debts in bankruptcy;

c. Award Plaintiffs their reasonable attorneys' fees and costs; and

d. Grant such other and further relief to which Plaintiffs may be justly entitled.

DATED: June 6, 2025

MARK S. ROSEN
CO-COUNSEL FOR PLAINTIFFS
DAVID TYLER MOSS and FIDELISSIMUS, LLC

# EXHIBIT A

FILED
20 JUL 21 PM 3: 12
FELICIA PITRE
DISTRICT CLERK
DALLAS CO. TEXAS
_____ DEPUTY

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| DAVID TYLER MOSS and BRANDON KEATING, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 3:14-CV-03088-BF |
| MARKO PRINCIP, Individually, MARKO PRINCIP d/b/a VIDEOGAMES YOUTUBE CHANNEL, MARKO PRINCIP d/b/a ACHIEVEMENT GUIDE, MARKO PRINCIP d/b/a GAME GUIDE, LLC, VIDEOGAMES YOUTUBE CHANNEL, and BRIAN MARTIN, | § § § § § § § § § § § § | C-68th |
| Defendants. | § § | |

### FINAL JUDGMENT

Following a full jury trial on the merits, and based upon the claims for relief sought by

Plaintiffs in their First Amended Complaint (Dkt. No. 19), the Joint Pretrial Order (Dkt. No. 56),

and the Jury's Verdict (Dkt. No. 66), **IT IS HEREBY ORDERED, ADJUDGED,**

**DECLARED, AND DECREED** that:

1.    Based upon Plaintiff David Tyler Moss's election of remedies in favor of a tort

recovery pursuant to Jury Verdict Question No. 23 (as opposed to a contract

recovery under Jury Verdict No. 21), judgment is entered against Defendants

Brian Martin and Marko Princip on Plaintiff David Tyler Moss's claims for

breach of fiduciary duty, fraud, tortious interference, and conspiracy.  On these

Certified a true copy of an instrument
on file in my office on _____ May 4, 2021
Clerk, U.S. District Court,
Northern District of Texas
By _____ Deputy

EXHIBIT A

9

Case 6:25-ap-01055-RB    Doc 11    Filed 06/06/25    Entered 06/06/25 08:45:09    Desc
Case 6:25-ap-01055-RB    Main Doc Filed 05/29/25    Entered 05/29/25 18:19:38    Desc
Main Document    Page 77 of 80

Case 3:14-cv-03088-BT    Document 86    Filed 04/15/16    Page 2 of 4    PageID 1266

claims, Plaintiff David Tyler Moss shall recover from Defendants Brian Martin and Marko Princip, jointly and severally, the amount of $2,100,000.00 (USD);

2.    Based upon Plaintiff Brandon Keating's election of remedies in favor of a tort recovery pursuant to Jury Verdict Question No. 24 (as opposed to a contract recovery under Jury Verdict Question No. 22), judgment is entered against Defendants Brian Martin and Marko Princip on Plaintiff Brandon Keating's claims for breach of fiduciary duty, fraud, tortious interference, and conspiracy. On these claims, Plaintiff Brandon Keating shall recover from Defendants Brian Martin and Marko Princip, jointly and severally, the amount of $2,100,000.00 (USD);

3.    Because of the tort remedy election, the Court further enters judgment against Defendant Brian Martin on Plaintiff David Tyler Moss's claim for exemplary damages, pursuant to Jury Verdict Question No. 27; and, in view of the statutory cap imposed by Chapter 41 of the Texas Civil Practices & Remedies Code, the Court hereby orders that Plaintiff David Tyler Moss shall recover exemplary damages from Defendant Brian Martin in the amount of $4,200,000.00 (USD);

4.    Because of the tort remedy election, the Court further enters judgment against Defendant Brian Martin on Plaintiff Brandon Keating's claim for exemplary damages, pursuant to Jury Verdict Question No. 28; and, in view of the statutory cap imposed by Chapter 41 of the Texas Civil Practices & Remedies Code, the Court hereby orders that Plaintiff Brandon Keating shall recover exemplary damages from Defendant Brian Martin in the amount of $4,200,000.00 (USD);

Case 6:25-ap-01055-RB    Doc 11    Filed 06/06/25    Entered 06/06/25 08:45:09    Desc
Case 6:25-ap-01055-RB    Main Document Filed 05/29/25    Entered 05/29/25 18:19:38    Desc
Main Document    Page 78 of 80

Case 3:14-cv-03088-BT    Document 86    Filed 04/15/16    Page 3 of 4    PageID 1267

5.   Because of the tort remedy election, the Court further enters judgment against Defendant Marko Princip on Plaintiff David Tyler Moss's claim for exemplary damages, pursuant to Jury Verdict Question No. 25; and the Court hereby orders that Plaintiff David Tyler Moss shall recover exemplary damages from Defendant Marko Princip in the amount of $3,000,000.00 (USD);

6.   Because of the tort remedy election, the Court further enters judgment against Defendant Marko Princip on Plaintiff Brandon Keating's claim for exemplary damages, pursuant to Jury Verdict Question No. 26; and the Court hereby orders that Plaintiff Brandon Keating shall recover exemplary damages from Defendant Marko Princip in the amount of $3,000,000.00 (USD);

7.   As of the date of the jury's verdict, the Court hereby declares that a partnership exists in respect to the VideoGames YouTube Channel Partnership (the "Partnership"), with the following persons owning the following percentages of the Partnership:

   a.   David Tyler Moss thirty (30) percent;

   b.   Brandon Keating thirty (30) percent;

   c.   Brian Martin twenty (20) percent; and

   d.   Marko Princip twenty (20) percent.

8.   Prejudgment interest at the rate allowed by law is awarded as to the amounts set forth in paragraphs 1) and 2) above, and the amounts set forth in paragraph 1) and 2) shall continue to bear interest post-judgment at the rate of .55% per annum;

9.   Plaintiffs are entitled to and are awarded all recoverable costs; and

---

**Final JudgmentPage 3**

Case 3:14-cv-03088-BT   Document 86   Filed 04/15/16   Page 4 of 4   PageID 1268

10.    The Court expressly determines that there is no just reason to delay entry of

Judgment.  The Court may issue additional orders, as necessary, to effectuate this

Judgment; or may amend this Judgment as permitted by law.

**SO ORDERED**, April 15, 2016.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT  B

**THOMSON REUTERS**
**WESTLAW PRECISION**   | All content | Enter terms, citations, databases, | 5th Circuit | [icons] | Sign out

'Moss v. Princip

'nited States Court of Appeals, Fifth Circuit · January 16, 2019 · 913 F.3d 508 · 102 Fed.R Serv.3d 985  (Approx  30 pages)

| Document | Filings (30) | Negative Treatment (3) | History (10) | Citing References (198 | Cited With (1,132) | More Like This | Table of Authorities | | Ful |

[ ] [ ] [ Go ] [ ] [ ] [ ] [ ] [ ]

Distinguished by Malek, Co-Trustee of Frederic V. Malek GST Non-Exempt Marital Trust v. Manicozzi, W.D.Tex., November 21, 2023

913 F.3d 508

United States Court of Appeals, Fifth Circuit.

Notes

Outlines

## David Tyler MOSS; Brandon Keating, Plaintiffs - Appellees

v.

## Marko PRINCIP, Doing Business as Videogames YouTube Channel, Individually, Doing Business as Achievement Guide, Doing Business as Game Guide L.L.C.; Bryan Martin, Defendants - Appellants

Quick
Check

No. 16-10605
FILED January 16, 2019

### Synopsis

**Background:** Two partners in four-person partnership brought state court action against the two other partners and against the partnership, asserting claims for common-law fraud, breach of fiduciary duty, breach of the partnership agreement, conversion, and money had and received, and seeking to enjoin defendant partners from withholding revenue or taking actions to harm the value of the partnership. Defendant partners removed action to federal court on basis of diversity. Plaintiff partners amended complaint, adding claims for conspiracy and tortious interference with existing contract and seeking defendant partners' expulsion from the partnership, and requesting declaratory relief to determine the identities and rights of the partners, owners, and investors in the partnership. Following jury's finding that partnership existed and awarding plaintiff partners compensatory damages, defendant partners moved to dismiss case for lack of subject matter jurisdiction on grounds that there was incomplete diversity because the partnership was included as a defendant, and plaintiff partners moved to dismiss the partnership as a dispensable party. The United States District Court for the Northern District of Texas, Paul D. Stickney, United States Magistrate Judge, 2016 WL 9245113, granted plaintiff partners' motion to dismiss the partnership as a dispensable party and denied defendant partners' motion for reconsideration. Defendant partners appealed.

**Holdings:** The Court of Appeals, Patrick E. Higginbotham, Circuit Judge, held that:

1 partnership was dispensable party, and

2 jury did not reach inconsistent conclusions.

Affirmed and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Lack of Jurisdiction; Other; Motion for Reconsideration.

**West Headnotes (21)**

**[1]** **Federal Courts** [icon] 170Bk2015 Limited jurisdiction; jurisdiction as dependent on constitution or statutes

As federal courts have limited jurisdiction, one invoking a federal court's power must affirmatively demonstrate its presence.

[ 1 Case that cites this headnote ]

**[2]** **Federal Courts** [icon] 170Bk2076 Timeliness issues

**Federal Courts** [icon] 170Bk3252 Determination of question of jurisdiction

A lack of subject matter jurisdiction may be raised at any time and may be examined for the first time on appeal.

[ 2 Cases that cite this headnote ]

## EXHIBIT B

Back to top

**[3]** **Federal Courts** [icon] 170Bk3581 Jurisdiction

Court of Appeals reviews a district court's subject matter jurisdiction de novo as a matter of law.

[ + CoCounsel ]   [ ↑ ] [ ⋮ ]

3 Cases that cite this headnote

---

**4**    Federal Courts    170Bk3585  Parties

Court of Appeals reviews district court's assessment of whether a party is necessary and indispensable for abuse of discretion. Fed. R. Civ. P. 19(a).

5 Cases that cite this headnote

---

**5**    Federal Courts    170Bk2447  Unincorporated associations and partnerships

For the purposes of diversity jurisdiction, a partnership is a citizen of every state in which one of its partners or members is a citizen. 28 U.S.C.A. § 1332(a).

7 Cases that cite this headnote    More cases on this issue

---

**6**    Federal Courts    170Bk2468  Time as of which jurisdiction determined; change of citizenship pending suit

Diversity jurisdiction rests on the state of facts that existed at the time of filing, whether the challenge to jurisdiction is brought shortly after filing, after the trial, or even for the first time on appeal. 28 U.S.C.A. § 1332(a).

2 Cases that cite this headnote

---

**7**    Removal of Cases    334k43  Time of existence of ground of removal

For cases removed from state court on basis of diversity, diversity jurisdiction must exist at the time of removal. 28 U.S.C.A. § 1332(a).

19 Cases that cite this headnote

---

**8**    Federal Courts    170Bk2454  Dismissal as to one or more parties

As exception to time-of-filing rule, jurisdictional defect relating to diversity of citizenship can be cured by dismissal of dispensable nondiverse party, even after judgment has been rendered. 28 U.S.C.A. § 1332(a); Fed. R. Civ. P. 21.

1 Case that cites this headnote

---

**9**    Federal Civil Procedure    170AII(E)  Necessary Joinder

Federal Courts    170Bk2427  Required, necessary, or indispensable parties

When joining a required party is not feasible, such as when joining that party would destroy diversity, the court must determine whether the party is merely necessary to the litigation, or in fact indispensable. 28 U.S.C.A. § 1332(a); Fed. R. Civ. P. 19.

13 Cases that cite this headnote    More cases on this issue

---

**10**    Federal Civil Procedure    170Ak203  Who are indispensable parties

There is no prescribed formula for determining in every case whether a person is an indispensable party; that can only be determined in the context of particular litigation. Fed. R. Civ. P. 19.

10 Cases that cite this headnote    More cases on this issue

---

**11**    Federal Civil Procedure    170Ak203  Who are indispensable parties

Courts must be flexible and pragmatic in evaluating a party's indispensability. Fed. R. Civ. P. 19.

1 Case that cites this headnote    More cases on this issue

---

**12**    Federal Civil Procedure    170Ak227  Partners and partnerships

Federal Courts    170Bk2447  Unincorporated associations and partnerships

> Could district court dismiss partnership as defendant to cure jurisdictional defect relating to diversity of citizenship? Yes

Partnership was dispensable party in two partners' action against two other partners and the partnership asserting claims for breach of fiduciary duty and expulsion of defendant partners from the partnership, and thus district court could dismiss partnership as defendant to cure jurisdictional defect relating to diversity of citizenship; partnership's interests were fully represented by each of its partners, all of whom were before court, partnership's presence in the suit was not necessary to protect the partnership or any of the parties from prejudice, although partnership was a party throughout the litigation, its role was purely passive, reflecting the reality that its interests did not diverge from the interests represented by the four individual partners and that its presence played no distinct role in the outcome of the suit against the individuals, and any risk of duplicative litigation brought by the partnership could be cured through injunctive relief fashioned by district court. 28 U.S.C.A. § 1332(a); Fed. R. Civ. P. 19(b)(1), 21.

11 Cases that cite this headnote    More cases on this issue

Back to top

---

**13**    Partnership    289k411  Aggregate or entity theory

CoCounsel

A partnership's interests as an entity consist of interests of its partnership interests of the various partners that are relevant to the purpose of the partnership.

3 Cases that cite this headnote

---

14 **Partnership** 289k617 Parties

Was partnership required to be joined as real party in interest in partners' action? No

Under Texas law, partnership was not required to be joined as real party in interest in two plaintiff partners' action seeking expulsion, from the partnership, of two defendant partners; fact that partnership could bring action as a real party in interest, under Texas law, did not of itself make it an indispensable party. Tex. Bus. Org. Code §§ 152.210, 152.211; Fed. R. Civ. P. 17(a).

8 Cases that cite this headnote    More cases on this issue

---

15 **Federal Civil Procedure** 170AXV(I) Interrogatories Accompanying Forms for General Verdict
**Federal Civil Procedure** 170Ak2217 Inconsistency; conflict with general verdict

If answers to jury interrogatories are in irreconcilable conflict, then the judge has no authority to enter judgment based upon those answers, so litigants do not waive their right to complain of inconsistent answers by failing to object.

2 Cases that cite this headnote

---

16 **Partnership** 289k626 Trial

Did jury reach inconsistent conclusions in response to interrogatories? No

Jury did not reach inconsistent conclusions in response to interrogatories asking it to determine separately defendant partners' contract and tort liability and any damage that followed for each, and instructing it not to increase or reduce the amount in one answer because of its answer to any other question about damages, when jury found that each of two plaintiff partners lost amounts due to defendant partners' failure to comply with partnership agreement that was different from amount lost as a result of defendant partners' tortious conduct; having submitted different theories of liability to the jury, the district court required the plaintiff partners to elect one theory of damages, the plaintiff partners elected damages attributable to the defendant partners' tortious conduct, and, to extent the jury's answers differed, the difference reflected the different theories of liability.

2 Cases that cite this headnote    More cases on this issue

---

17 **Federal Courts** 170Bk3420 New trial, rehearing, or reconsideration

A party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court. Fed. R. Civ. P. 50(b).

---

18 **Federal Civil Procedure** 170Ak2602 Necessity for preverdict motion for judgment as matter of law; different grounds or issues
**Federal Courts** 170Bk3419 Taking case or question from jury; judgment as a matter of law

A party that fails to move for judgment as a matter of law on the basis of insufficient evidence at the conclusion of all of the evidence waives its right to file a post-verdict motion for judgment as a matter of law, and also waives its right to challenge the sufficiency of the evidence on appeal. Fed. R. Civ. P. 50(b).

1 Case that cites this headnote

---

19 **Federal Courts** 170Bk3420 New trial, rehearing, or reconsideration

There can be no appellate review of allegedly excessive or inadequate damages if the trial court was not given the opportunity to exercise its discretion on a motion for a new trial. Fed. R. Civ. P. 50(a).

---

20 **Federal Courts** 170Bk3395 Plain error
**Federal Courts** 170Bk3415(3) Sufficiency of evidence

When a challenge to the sufficiency of the evidence is not preserved for appellate review, Court of Appeals reviews for plain error and will not reverse if any evidence supports the jury verdict.

1 Case that cites this headnote

---

21 **Federal Courts** 170Bk3392 Mode and sufficiency of presentation

Court of Appeals does not look with favor upon tardy arguments that are brought to the district court's attention post-trial after counsel has had the opportunity to salvage what she may from the record.

Back to top

✦ CoCounsel

[*511 Appeal from the United States District Court for the Northern District of Texas, Paul D. Stickney, U.S. Magistrate Judge

### Attorneys and Law Firms

Daniel Laurence Wyde, Wyde & Associates, Victor Derrone Vital, Barnes & Thornburg, L.L.P., John R. Teakell, Esq., Attorney, Dallas, TX, for Plaintiffs - Appellees

Mazin Ahmad Sbaiti, Esq., Managing Senior Counsel, Sbaiti & Company, P.L.L.C., Dallas, TX, for Defendants - Appellants.

Before HIGGINBOTHAM, JONES, and GRAVES, Circuit Judges.

### Opinion

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This case sits at the unusual intersection of federal subject-matter jurisdiction and a district court's exercise of its discretion to dismiss a partnership as a dispensable party when all its partners were parties in the case. We conclude that the district court had subject-matter jurisdiction to try the case and did not err in dismissing a nondiverse partnership as dispensable, nor err in its entry of judgment upon the jury's verdict. We affirm and remand to the district court for the sole purpose of fashioning any appropriate protective measures to prevent duplicative litigation.

I

The four parties to this appeal entered into an overlapping series of agreements regarding management and revenue of a YouTube channel —YouTube.com/VideoGames, featuring reviews of video games and digital recordings of players' screens. This was a lucrative undertaking, but their relationship soured.

A

Defendant-appellee Marko Princip was an entrepreneur in the YouTube arena. In 2012, Princip entered into a "membership agreement" with plaintiff-appellant Brandon Keating where Keating agreed to invest $1500 in exchange for a 30% financial stake and right to make decisions in "Game Guide LLC," a yet-unformed company run by Princip. The agreement also provided that "[a]ny other Youtube Channel, sponsorship, or project, with the exception of TEAMNOBLE, will be considered directly related to" the LLC.

Two months later, Princip reached out to plaintiff-appellant David Tyler Moss to solicit an investment in a new YouTube channel. Princip and Moss signed a partnership [*512 agreement where they agreed to "become legal partners in business." Moss agreed to invest $1500 into the "VideoGames Youtube Channel," in exchange for 30% ownership of the company, 30% of brand, channel, website, and app revenue, equal say in partnership decisions, and the ability to log in to the channel at any point. By its terms, the partnership was to be governed by Texas law.

Moss alleges that Princip consistently failed or refused to make timely payments by the fifteenth day of each month, while Princip states that he "dutifully" paid Moss as the money came in. Princip claims that he approached Moss to terminate their partnership agreement, for which Moss demanded an "outrageous" price. Princip says that he then stopped paying Moss to put aside money for negotiating a dissolution of the partnership. Princip and defendant-appellee Brian Martin contacted Moss in November 2012; introducing himself as Princip's business partner, Martin accused Moss of extortion, and informed Moss that his contract with Princip was "void."

Around the same time, Princip entered into an agreement with a minor child, A.L., to assist the VideoGames Channel. Princip failed to disburse promised revenues and A.L. took control of the channel. [1] At some point, Princip enlisted Martin for financial assistance to sue A.L. for control of the channel, but did not discuss the proposed litigation with Moss or Keating. Princip and A.L. reached a settlement in October 2013 where A.L. would retain control of the channel but disburse a portion of future profits. Princip and Martin entered into a partnership agreement stating that they would become joint legal owners of the channel and would divide the profits from the settlement between them. A.L.'s parents then sued Princip and Martin in California state court for breach of the settlement agreement, and Martin and Princip agreed to pay them $30,000 in exchange for the transfer of all interest in the channel.

But the treaty was not long lived. In June 2014, Princip emailed Keating confirming that Keating owned 30% of the channel, for reasons the record does not clarify. Some months later, Moss and Keating filed a petition and application for a temporary restraining order in Texas state court against Princip, Martin, Game Guide LLC, and the unnamed partnership, which they called "Videogames Youtube Channel." Moss and Keating alleged common-law fraud, breach of fiduciary duty, breach of the partnership agreement, conversion, and money had and received. They sought damages for lost earnings and profits and mental anguish, exemplary damages for breach of fiduciary duty, access to the partnership's books and records, and judicial expulsion of Princip from the partnership. They also sought to enjoin Princip from withholding revenue or taking actions to harm the value of the partnership.

B

The defendants removed the case to the United States District Court for the Northern District of Texas, pleading federal diversity jurisdiction. The notice of removal, even after an amendment, did not state the citizenship of each of the parties to the lawsuit. It stated onl[ Back to top ] that Keating was a resident of Illinois and Martin was a [*513 resident of California. No one challenged removal.

✛ CoCounsel

Ensconced in federal court, the plaintiffs ame̶n̶d̶e̶d̶ ̶t̶h̶e̶i̶r̶ ̶c̶o̶m̶p̶l̶a̶i̶n̶t̶ adding conversion and tortious interference with existing contract; seeking Martin and Princip's expulsion as partners; and requesting declaratory relief "to determine the identities and rights of the partners, owners, and investors in the [partnership]."

A jury found a partnership among Moss, Keating, Princip, and Martin—with Moss and Keating each owning 30% of the partnership, and Princip and Martin each 20%. It also awarded Moss and Keating $2,100,000 each in compensatory damages from Princip and Martin, jointly and severally; $5,000,000 each in exemplary damages from Martin; and $3,000,000 each in exemplary damages from Princip. [2]

When the plaintiffs moved for entry of judgment, the defendants moved to dismiss the case for lack of subject matter jurisdiction. They argued that while the four individuals were citizens of different states, there was incomplete diversity because the partnership was included as a defendant. [3] Moss and Keating responded by moving under Federal Rule of Civil Procedure 21 to dismiss the partnership as a dispensable nondiverse party, contending that they did not seek relief or entry of judgment against it and it was not a subject of the jury verdict.

The district court granted the plaintiffs' motion to dismiss the partnership as a dispensable party, denied Princip and Martin's motion for reconsideration, determined that the channel was partnership property, not Princip's individual property, and expelled Princip and Martin from the partnership. It stayed the entry of amended judgment reflecting the expulsion pending appeal. Princip and Martin argue here that the district court lacked jurisdiction over the case and alternatively for a new trial.

II

[1] [2] As federal courts have limited jurisdiction, [4] one invoking the courts' power must affirmatively demonstrate its presence. [5] It is equally settled that "[a] lack of subject matter jurisdiction may be raised at any time and may be examined for the first time on appeal." [6] Princip and Martin, having removed the case and lost at trial in the district court, now argue that the district court never had jurisdiction because the partnership was a necessary and indispensable party whose presence foreclosed complete diversity.

[3] [4] We review the district court's subject matter jurisdiction de novo as a matter of law, [7] and its assessment of *514 whether a party is necessary and indispensable for abuse of discretion. [8] We conclude that the district court did not abuse its discretion in dismissing the partnership as a dispensable party to preserve its diversity jurisdiction.

A

To remove the case to federal court, the defendants invoked the district court's diversity jurisdiction under 28 U.S.C. § 1332(a). Diversity jurisdiction requires an amount in controversy exceeding $75,000 and "complete diversity" of parties—that "all persons on one side of the controversy be citizens of different states than all persons on the other side." [9]

[5] There was complete diversity between Moss and Keating and the two individual defendants, Princip and Martin. [10] But Moss and Keating sued the partnership in addition to Princip and Martin, and it was a defendant at the time of removal and throughout trial. For the purposes of diversity jurisdiction, a partnership is a citizen of every state in which one of its partners or members is a citizen. [11] The partnership was therefore a citizen of each of the states where Moss, Keating, Princip, and Martin were citizens—North Carolina, Illinois, Texas, and California. From the beginning, there was incomplete diversity of parties. [12]

B

[6] [7] [8] Diversity jurisdiction rests on "the state of facts that existed at the time of filing—whether the challenge to jurisdiction is brought shortly after filing, after the trial, or even for the first time on appeal." [13] For cases removed from state court, jurisdiction must exist at the time of removal. [14] But there has "long been an *515 exception to the time-of-filing rule" [15] : a court may dismiss a dispensable nondiverse party under Rule 21, even after judgment has been rendered. [16] Recognizing this principle, the district court concluded that the partnership and LLC were dispensable, and granted Moss and Keating's motion to dismiss both entities. The primary issue on appeal is whether the district court preserved its jurisdiction.

1

[9] [10] Federal Rule of Civil Procedure 19 directs federal courts to join "required" parties when feasible. The parties do not dispute that the partnership should have been joined if feasible. When joining a required party is not feasible, such as when joining that party would destroy diversity, the court must determine whether the party is "merely necessary" to the litigation, or in fact "indispensable." [17] Rule 19(b) directs a court to consider four factors in assessing "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed":

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoin...

Back to top

✦ CoCounsel

The Supreme Court has cautioned that "whether a party is indispensable ... [in the absence of [a party] ... can only be determined in the context of particular litigation." [19] "[T]here is no prescribed formula for determining in every case whether a person is an indispensable party." [20]

2

Princip and Martin argue that the partnership was indispensable because Moss and Keating sought declaratory and injunctive relief impacting the structure of the partnership, and pursued claims for damages deriving from and affecting partnership interests. They argue that this case is indistinguishable from our prior decisions in *Whalen v. Carter* [21] and *Bankston v. Burch*, [22] where we held that partnerships were indispensable parties to suits derivatively implicating partnership interests.

In *Whalen*, a shareholder and creditor of a Louisiana corporation brought RICO, federal securities, and state law claims against multiple defendants, including a [*516] real estate partnership in commendam in which the plaintiff was also a partner. [23] We determined that the district court correctly did not assert jurisdiction over the state law claims on summary judgment, since even though the partnership was added as a defendant after the suit was filed, it was indispensable at the time of filing. [24] In establishing that the partnership was an indispensable party, we looked to the fact that under Louisiana law, the legal rights of a partnership in commendam were distinct from the rights of its partners, [25] and that individual suits to recover for the loss of partnership assets rested in "injury to the corporation, not the indirect injury to the partner." [26] As a result, "[t]he absence of [the partnership] from the ... action would prejudice its ability" to "protect against the depletion of its assets and, where necessary ... recover[] those assets after they ha[d] been depleted." [27] The partnership was indispensable even though it was possible that limitations might bar the plaintiff's return to state court—we concluded that "the possibility Whalen might not obtain an adequate remedy [did not outweigh] the interest of the partnership in asserting and protecting its legal rights." [28]

In *Bankston*, a limited partner in a Hawaii limited partnership sued the general partner in Texas state court, claiming fraud or negligent misrepresentation, breach of fiduciary duty, mismanagement and waste of partnership assets, and breach of contract. [29] He sought an accounting, dissolution of the partnership, removal of the general partner, a temporary injunction against the general partner's dissipation of partnership assets, declaratory judgment regarding certain expenditures, and punitive damages. [30] After removing the case to federal court, the general partner contested subject matter jurisdiction on the eve of trial, but the district court determined that it had jurisdiction and proceeded with the trial. [31] Following *Whalen*, we concluded that because Bankston's claims were entirely or almost entirely derivative of the partnership's rights and interests, [32] the partnership was indispensable and there was incomplete diversity. [33]

Princip and Martin observe that like the state partnership law governing *Whalen* and *Bankston*, under Texas law, a partnership is a distinct entity from its individual [*517] partners. [34] Moss and Keating alleged that Princip and Martin breached fiduciary duties and failed to allow them to participate in the partnership's management, resulting in a loss of revenue and injury to the partnership itself. [35] These claims are analogous to the claims that *Whalen* and *Bankston* properly treated as derivative of the partnership's interests. Indeed, in addition to claims for damages resting on the partnership's rights and interests, the plaintiffs sought relief implicating the partnership's own governance and composition: judicial expulsion of Princip [36] and injunctive relief against actions that would lower partnership revenues.

[11] But while there are parallels between this case and *Whalen* and *Bankston*, Rule 19 requires courts to be "flexible and pragmatic" in evaluating a party's indispensability, [37] a call demanding attention to the case at hand to answer whether the district court abused its discretion in concluding that equity and good conscience allowed the case to proceed in the partnership's "absence."

3

Both *Whalen* and *Bankston* hinged on threatened prejudice to the partnership if the case proceeded in its absence. [38] We observed that other considerations weighed in favor of treating the partnership as dispensable, but concluded that the risk of prejudice to the partnership was more significant. In neither case were all constituent partners in the partnership parties to the suit. Moss and Keating argue that when all partners are parties, the partnership's "entire interest" is already represented, and so the partnership itself is dispensable.

Several circuits have found non-diverse partnerships to be dispensable where all partners, or all general partners, were parties to the litigation and could adequately represent partnership interests. Most recently, the Sixth Circuit considered litigation brought by a limited partner in a real estate partnership against the general partner and its sole shareholder, seeking to recoup assets that the general partner had allegedly diverted and to enforce an agreement for an equal split of profits. [39] The court acknowledged that the partnership was a necessary party under Rule 19(a) because it had an interest distinct from the plaintiff's in recouping diverted assets. [40] But it concluded that the partnership was not indispensable: the partnership was adequately represented by the presence of its general partner and its sole shareholder; the court could shape relief to avoid prejudice to the partnership; and the plaintiff might no longer be able to bring a [*518] viable case in state court. [41]

The Third Circuit reached the same conclusion where two of the three members of a partnership sued the third, seeking a declaratory judgment that the third partner breached the partnership agreement and had therefore lost its status as a limited partner. [42] The partnership should have been joined if feasible under Rule 19(a), both because the defendant partner's capital obligation implicated partnership rights and the continued presence of the partner would compel the sale of the partnership's real property. [43] The court ultimately concluded that the nondiverse partnership was dispensable under Rule 19(b); while a defendant partner might be at risk of repetitive litigation—the partnership later bringing the same claims plaintiff partners raised—a district court can enjoin individual partners from further pursuit of suits on behalf of the partnership. [44] And, while the partnership as an entity

case, its interests were adequately represented by one of its partners. [46] The court also observed that it did not matter whether the lawsuit was characterized as derivative: the balancing of interests under Rule 19 favored dismissing the partnership regardless of the characterization. [46]

Finally, [47] the Second Circuit dismissed a partnership as a dispensable party after the conclusion of a full trial between several of its limited partners and its general partner. [48] The limited partners sought removal of the general partner or dissolution of the partnership, money damages in favor of the partnership, and an accounting. [49] The court recharacterized the action as a derivative class action on behalf of all limited partners and held that the partnership should be dismissed as a dispensable nondiverse party based on a weighing of the equities under Rule 19(b)—especially because, post-trial, the plaintiffs' had a heightened interest in preserving the fully litigated judgment. [50]

12   "[G]uided by common sense," as we must be under Rule 19, [51] we conclude that the district court did not abuse its discretion in determining that the partnership was a dispensable party. As in the \*519 cases we have discussed, the partnership's interests were fully represented by each of its partners, all of whom were before the court. Although the plaintiffs raised claims for damages derivative of the partnership's rights, the partnership's presence in the suit was not necessary to protect the partnership or any of the parties from prejudice. [52] The partnership *was a party* throughout the litigation, but its role was purely passive, reflecting the reality that its interests did not diverge from the interests represented by the four individual partners and that its presence played no distinct role in the outcome of the suit against the individuals. [53] The plaintiffs' "interest in preserving a fully litigated judgment should be overborne only by rather greater opposing considerations than would be required at an earlier stage." [54] And, finally, any risk of duplicative litigation brought by the partnership itself can be cured through injunctive relief fashioned by the district court. [55]

13   Our decision reflects the unique relationship between the partnership's interests and the interests of each of its partners. Although a partnership is legally treated as a separate entity, "its interests can only be known" through the constituent partners who control its actions. [56] "A partnership's interests as an entity consist of an aggregation of those interests of each of the individual partners that are relevant to the purpose of the partnership." [57]

14   There is one final wrinkle. Princip and Martin argue that apart from whether the partnership is an indispensable party, it was required to be joined as a "real party in interest" under Federal Rule of Civil Procedure 17(a). To the extent that Princip and Martin argue that only the partnership as an entity could sue them, this misapprehends the real-party-in-interest requirement under Rule 17, which recognizes that "a party authorized by statute" may "sue in their own name[ ] without joining the person for whose benefit the action is brought." [58] Texas partnership law authorizes liability to a partnership *or its partners* for breach of the partnership agreement or violation of partnership duties, [59] and authorizes judicial expulsion \*520 of a partner "on application by the partnership or another partner." [60] Moss and Keating were entitled to sue in their own names. [61] To the extent that Princip and Martin instead argue that all real parties in interest must be joined in a lawsuit, we have already explained that the partnership was a proper party to the lawsuit, but was not indispensable because its interest was fully represented by the presence of its individual partners. As Wright & Miller explains, "the question of who should or may be joined in the action must be determined under Rule 19 and Rule 20 rather than Rule 17(a)" [62] —"[t]he fact that an absent person could bring the action as a real party in interest does not of itself make that person a necessary or indispensable party." [63]

This said, Rule 17 "insure[s] generally that the judgment will have its proper effect as res judicata." [64] When a rightsholder is not joined in a lawsuit, the defendant is at risk of subsequent litigation raising essentially the same claims. Any such risk can be alleviated through properly shaped protective provisions in the judgment.

*  *  *

In sum, the partnership was not an indispensable party or otherwise required to be joined; the district court did not err in dismissing it, and the court had diversity jurisdiction. We remand for the district court to consider protective provisions to guard Princip and Martin against the risk of future duplicative litigation, in keeping with the goals of Rules 17 and 19(b). Sufficient protection may include an injunction prohibiting Moss and Keating from suing Princip and Martin on behalf of the partnership on any claims the partnership could have raised in this suit, as well as requiring them to cause the partnership to release the claims as a condition of judgment. [65] This we leave to the able district court.

\*521 Princip and Martin raise essentially the same challenge based on the presence of Game Guide LLC, the limited liability company initially formed between Princip and Keating. They do not argue that the LLC should be treated differently from the partnership in our jurisdictional inquiry. Our analysis extends to the LLC, which the district court also properly dismissed.

III

Having determined that the district court had jurisdiction to try the case, we will now address Princip and Martin's objections to the outcome. They raise two sets of challenges: that the jury reached inconsistent conclusions in its responses to the Rule 49 submissions, and that insufficient evidence supported several of the jury's responses.

As a preliminary matter, Princip and Martin did not object to the jury instructions, contest the jury's answers to the Rule 49 submissions, or challenge the sufficiency of the evidence at the close of Moss and Keating's evidence or even after the jury returned its answers to the Rule 49 submissions. Following a post-trial substitution of counsel, Princip and Martin argued that the court should delay entry of judgment to allow them to challenge the jury's findings, but the court did not delay judgment and there is no ind[...]

motions challenging the trial outcome. [66] Princip and Martin's failure to properly place these issues before the district court fatally impairs their appellate challenge. [67]

### A

[15] Princip and Martin first contend that the jury reached inconsistent conclusions in its responses to the Rule 49 submissions. Although they failed to object to these alleged inconsistencies before the district court, we have observed that "[i]f answers to jury interrogatories are in irreconcilable conflict, then the judge has no authority to enter judgment based upon those answers," so litigants "d[o] not waive their right to complain of inconsistent answers by failing to object." [68] We must therefore assess whether the jury's answers to the Rule 49 submissions were in irreconcilable conflict. [69]

[16] The court submitted the Rule 49 interrogatories to the jury, asking it to determine separately the defendants' contract and tort liability and any damages that followed for each and instructing it not to "increase or reduce the amount in one answer because of [its] answer to any other question about damages." The jury found that each plaintiff lost $725,000 in **\*522** past contract royalties and $731,700 in predicted future royalties as a result of the defendants' failure to comply with the partnership agreement, but lost $600,000 in past contract royalties and $1,500,000 in predicted future royalties as a result of the defendants' tortious conduct. [70] Princip and Martin assert that because the jury arrived at differing amounts, its answers to the Rule 49 submissions were irreconcilable.

There is nothing conflicting about the judgment entered upon the verdict. Having submitted different theories of liability to the jury the district court required the plaintiffs to elect one theory of damages; the plaintiffs elected damages attributable to the defendants' tortious conduct. To the extent that the jury's answers differed, this reflects the different theories of liability. The appellants' suggestion that the plaintiffs' contract and tort theories should have produced the same amount of damages does not acknowledge the differences between the two.

### B

Princip and Martin also contend that there was insufficient evidence to support the jury's finding of causation as to future damages; its calculation of both past and future damages; and its liability findings as to Martin.

[17] [18] [19] It is settled that "a party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court." [71] We have held that "[a] party that fails to move for judgment as a matter of law under Rule 50(a) on the basis of insufficient evidence at the conclusion of all of the evidence waives its right to file a post-verdict Rule 50(b) motion, and also waives its right to challenge the sufficiency of the evidence on appeal." [72] Likewise, "there can be no appellate review of allegedly excessive or inadequate damages if the trial court was not given the opportunity to exercise its discretion on a motion for a new trial." [73] As we have explained, Princip and Martin did not raise any objections or post-trial motions challenging the sufficiency of the evidence to support the jury's damages and liability determinations.

[20] When a challenge to the sufficiency of the evidence is not preserved for appellate review, "[w]e review ... for plain error and will not reverse if *any* evidence supports the jury verdict." [74] Princip and Martin have not shown that no evidence supported the jury's findings. While they offer ways to interpret the evidence in their favor or to discount Moss and Keating's evidence, the jury disagreed. [75]

[21] **\*523**

We do "not look with favor upon tardy arguments that are brought to the [district] court's attention post-trial after counsel has had the opportunity to salvage what she may from the record." [76] Princip and Martin now argue that we should allow a do-over. They have not demonstrated their entitlement to such relief.

### IV

We remand to the district court for the sole purpose of fashioning appropriate injunctive relief to limit any found risks of duplicate litigation, as we have discussed, and affirm its judgment.

## All Citations

913 F.3d 508, 102 Fed.R.Serv.3d 985

### Footnotes

1    Moss's attorney sent Princip a demand letter in February 2013, claiming that Princip failed to pay Moss his full share of revenues in a timely manner and that Moss did not have complete access to his channel because A.L. had changed the password to lock out Princip.

2    This was based on one measure of damages connected to the plaintiffs' tort claims. The district court reduced Martin's exemplary damages to $4,200,000 in accordance with a statutory cap.

3    As we will discuss, the defendants also argued that Game Guide LLC was a nondiverse, jurisdiction-destroying party.

4    *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017) (citing *Arbaugh v Y&H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 1521 L.Ed.2d 1097 (2006)).

5   *See, e.g., Settlement Funding, L.L.C. v. Rapid Medical Claims, Inc.*, 706 F.3d 530, 534 (5th Cir. 2013).

6   *Id.* at 534 (quoting *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 935 (5th Cir. 2012) ).

7   *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 218–19 (5th Cir. 2012); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008).

8   *See HS Resources, Inc. v. Wingate*, 327 F.3d 432, 438–39 (5th Cir. 2003) (citing *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986) ).

9   *Harvey*, 542 F.3d at 1079 (citing   *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) for the complete-diversity rule).

10   Specifically, Moss was a citizen of North Carolina, Keating was a citizen of Illinois, Princip was a citizen of Texas, and Martin was a citizen of California.

This raises an ancillary issue: because one of the properly joined and served defendants was a Texas citizen, they did not satisfy the requirements of the removal statute. *See* 28 U.S.C. § 1441(b)(2). Because no party raised this procedural issue in a timely manner, however, the district court was not obligated to consider it. *See Adam v. Barry* (In re *1994 Exxon Chem. Fire* ), 558 F.3d 378, 393–96 (5th Cir. 2009); *see also Monroe v. United Carbon Co.*, 196 F.2d 455, 457 (5th Cir. 1952) ("[W]here a resident defendant has improperly removed a suit on the grounds of diversity of citizenship, if no motion to remand is made and all jurisdictional requisites under said section 1332 are present, the court may treat it as an action originally brought in the federal court, and in which the question of venue and all procedural requirements are waived.").

11   *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192–95, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *Harvey*, 542 F.3d at 1080.

12   We have previously recognized the somewhat counterintuitive interaction between the complete-diversity rule and the established principle that a partnership is a citizen of all states where its partners are citizens, but have declined to carve out an exception for such cases. *See Whalen v. Carter*, 954 F.2d 1087, 1095 (5th Cir. 1992).

13   *Grupo Dataflux*, 541 U.S. at 570–71, 124 S.Ct. 1920.

14   *See GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 488–89 (5th Cir. 2016); *Louisiana v. Am. Nat. Property Cas. Co.*, 746 F.3d 633, 636–37 (5th Cir. 2014).

15   *Grupo Dataflux*, 541 U.S. at 572, 124 S.Ct. 1920.

16   *Id.* at 571–73, 124 S.Ct. 1920.

17   *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 117–19, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

18   Fed. R. Civ. P. 19(b).

19   *Provident Tradesmens*, 390 U.S. at 117, 88 S.Ct. 733.

20   *Id.* at 118 n.14, 88 S.Ct. 733 (internal alterations omitted).

21   954 F.2d 1087.

22   27 F.3d 164 (5th Cir. 1994).

23   *Whalen*, 954 F.2d at 1089–90.

24   *Id.* at 1095–96 (citing *Freeport-McMoRan. Inc. v. K N Energy, Inc.*, 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) ). Having established that the district court did not have diversity jurisdiction over the state law claims, we remanded for the district court to determine whether it could exercise supplemental jurisdiction over those claims. *Id.* at 1097.

25   *Id.* at 1096 (citing La. Code Civ. Proc. Art. 688 (1991) ).

26   *Id.*

27   *Id*

28   *Id.* at 1097. The court acknowledged that Whalen might still be able to obtain an adequate remedy through the exercise of supplemental jurisdiction. *Id.* n.9.

29   *Bankston*, 27 F.3d at 166.

30   *See id.*

31   *Id.*

32   *Id.* at 167–68. We observed that Bankston's request for an accounting might be brought individually, but concluded that "[p]lainly the derivative claims overwhelm any individual claim for an accounting in this case." *Id.* at 167 n.6.

33   *Id.* at 167–68. As in *Whalen*, "the judgment would prejudice the partnership's rights and ... shaping the relief provided inadequate protection to the partnership's interest." *Id.* at 168.

34   Tex. Bus. Orgs. Code § 152.056.

Back to top

+: CoCounsel

35    Their claims for breach of fiduciary duty alleged that the defendants "acted in a manner adverse to the partnership," and "ma[de] managerial
decisions and directional decisions without [the plaintiffs'] knowledge or consent."

36    They later amended their complaint in federal court to also seek judicial expulsion of Martin.

37    *Determination by the Court Whenever Joinder Not Feasible*, 7 Fed. Prac. & Proc. Civ. § 1608 (3d ed.) ("[T]o a substantial degree the effective operation of the rule
depends on the careful exercise of discretion by the district court.").

38    *Wholan*, 954 F.2d at 1096–97 (observing that other interests tipped in favor of dispensability, but the partnership's strong interest in the litigation rendered it
indispensable); *accord Bankston*, 27 F.3d at 168.

39    *See Hooper v. Wolfe*, 396 F.3d 744, 745–46 (6th Cir. 2005).

40    *Id.* at 748.

41    *Id.* at 749–51.

42    *hB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1188 (3d Cir. 1996).

43    *Id.* at 1190.

44    *Id.* at 1191–92 ("[T]he Partnership, like a marionette, cannot make a move unless some human being pulls the strings.").

45    *Id.* at 1192–93.

46    *Id.* at 1195–96. The court referenced the Supreme Court's reminder that the Rule 19(b) determination is context-sensitive, and does not hinge on formulaic
characterizations. *Id.* at 1196 (citing *Provident Tradesmens*, 390 U.S. at 118 & n.14, 88 S.Ct. 733).

47    We note *Delta Fin. Corp. v. Paul D. Comanduras & Associates*, 973 F.2d 301 (4th Cir. 1992), where a partnership's sole limited partner sued the general partner to
compel arbitration in accordance with the partnership agreement. The court referenced the "strictly internal" nature of the conflict between the partners and
concluded that the partnership was neither necessary nor indispensable. *Id.* at 303–04.

48    *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 82 (2d Cir. 1990). The lawsuit initially included the partnership as a defendant, because it was not yet
settled that the citizenship of a limited partnership was based on the citizenship of all of its partners. *See id.* at 83–84. The Supreme Court issued its *Carden*
decision establishing that rule while the appeal was pending. *See id.* at 82.

49    *Id.* at 83.

50    *Id.* at 88–92 (discussing *Provident Tradesmens*, 390 U.S. at 112, 88 S.Ct. 733).

51    *HB Gen.*, 95 F.3d at 1193.

52    *See* Fed. R. Civ. P. 19(b)(1).

53    Princip and Martin suggest that the partnership's presence afforded the plaintiffs a tactical advantage. We do not suggest that the district court ought not
pragmatically consider such advantage when present. We see none here.

54    *Provident Tradesmens*, 390 U.S. at 112, 88 S.Ct. 733; *see also id.* at 109–10, 88 S.Ct. 733 ("Before the trial, the strength of [the plaintiff's interest in having a
forum] depends upon whether a satisfactory alternative forum exists. On appeal, if the plaintiff has won, he has a strong additional interest in preserving his
judgment." (footnote omitted) }.

55    *See HB Gen.*, 95 F.3d at 1191 (explaining the actions the district court could take to protect the defendants from future prejudice).

56    *See Hooper*, 396 F.3d at 750; *see also HB Gen.*, 95 F.3d at 1193 ("Even though the Partnership has its own interests, it is an artificial entity; its interests must
ultimately derive from the interests of the human beings that are its members (albeit through the medium of other partnerships and corporations).").

57    *HB Gen.*, 95 F.3d at 1193.

58    Fed. R. Civ. P. 17(a)(1)(G).

59    Tex. Bus. Orgs. Code §§ 152.210, 152.211. As Moss and Princip observe, some Texas courts have construed § 152.211 to limit partners' ability to personally sue
for actions that diminished the general value of the partnership. *See    Hodges v. Rajpal*, 459 S.W.3d 237, 248–50 (Tex. App.—Dallas 2015);    *Hall v.
Douglas*, 380 S.W.3d 860, 872–74 (Tex. App.—Dallas 2012). These cases only address limited partnerships, and their logic is not universally accepted. *See
Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 361–62 (Tex. App.—Houston [14th Dist.] 2016) (recognizing that individuals had standing to assert claims for
damages that accrued to them personally, even if they presented evidence of harm to their association as a whole); *Lake v. Cravens*, 488 S.W.3d 867, 888 (Tex.
App.—Fort Worth 2016) (concluding that this issue goes not to standing, but simply to what damages a plaintiff may recover).

We cannot conclude that the partnership was required to be joined as a plaintiff. Any interest of the partnership was fully represented and vindicated, and
there was no need to "preserve assets for the benefits of all partners," *cf. In re Fisher*, 433 S.W.3d 523, 527 (Tex. 2014), since all partners were present in the
case and monetary recovery was determined by percentage partnership share.

60    Tex. Bus. Orgs. Code § 152.501(b)(5).

61    *See Real Party in Interest—In General*, 6A Fed. Prac. & Proc. Civ. § 1543 (3d ed.) (explaining that the purpose of the real-party-in-interest requirement is to
require that "the action ... be brought by the person who, according to the governing substantive law, is entitled to enforce the right").

Back to top

✦ CoCounsel

62    *Id.* Our decision in *Bankston*, for example, involved partners bringing suit on behalf of the partnership that asserted the partnership's derivative claims. We determined that the partnership was "at a minimum" the real party in interest to the derivative suit, then went on to analyze under Rule 19 whether it could be dismissed to preserve jurisdiction. *Bankston*, 27 F.3d at 167.

63    6A Fed. Prac. & Proc. Civ. § 1543; *see also HB Gen.*, 95 F.3d at 1196–97 (holding that where partners were authorized to bring suit under Delaware law—derivatively or otherwise—the real party in interest requirement was met and the partnership was not required to be joined).

64    Fed. R. Civ. P. 17 advisory committee's note to 1966 amendment.

65    *Cf. HB Gen.*, 95 F.3d at 1191–92 (laying out the rationales for these protective provisions).

66    Princip and Martin made clear that they were *not* asking the district court to pass judgment on the sufficiency of the evidence or other potential inconsistencies at the time they raised the issues, but rather were asking for more time to review the record prior to filing any motions.

67    In addition, Princip and Martin waived portions of their argument on appeal by failing to cite adequate authority to support their positions. *See Sindhi v. Raina*, 905 F.3d 327, 334 (5th Cir. 2018). Notably, while Martin argues that he should not have been held liable to the same extent as Princip, he cites no caselaw to justify vacating the judgment as to his liability.

68    *See Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 297–98 (5th Cir. 1986) (citing *Alverez v. J. Ray McDermott*, 674 F.2d 1037 (5th Cir. 1982) ).

69    *Cf. Aiverez*, 674 F.2d at 1040 (noting that the Seventh Amendment requires us "to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible .... before we are free to disregard the jury's verdict and remand the case for new trial").

70    The district court only entered judgment for the damages the jury found to be connected to the defendants' tortious conduct, which avoided any overlap between the two measures of damages.

71    *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006).

72    *United States ex rel Wallace v. Flintco Inc.*, 143 F.3d 955, 960 (5th Cir. 1998); *accord NewCSI, Inc. v. Staffing 360 Sols., Inc.*, 865 F.3d 251, 257 & n.4 (5th Cir. 2017).

73    *Bueno v. City of Donna*, 714 F.2d 484, 493–94 (5th Cir. 1983).

74    *NewCSI, Inc.*, 865 F.3d at 257; *see Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 292 (5th Cir. 2007).

75    For example, Princip and Martin argue that the only evidence of the channel's profits came from Princip's tax forms, but the jury apparently rejected their argument at trial that the tax forms were the best indicator of the channel's profits, in favor of the plaintiffs' argument that Princip and Martin had represented the channel as earning significantly more.

76    *Risher v. Aldridge*, 889 F.2d 592, 595 (5th Cir. 1989); *accord Gorriott v. NCsoft Corp.*, 661 F.3d 243, 248 (5th Cir. 2011).

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Contact us · Live chat · Training and support · Improve Westlaw Precision/Report an error · Transfer My Data · Pricing guide · Search Tips · Sign out     THOMSON REUTERS

1-800-REF-ATTY (1-800-733-2689)    My Account

Westlaw Precision. © 2025 Thomson Reuters    Accessibility · Privacy · Supplier terms    *Thomson Reuters is not providing professional advice*

Back to top

 CoCounsel

# EXHIBIT  C

## CASE NO. <u>429-05678-2020</u>

| | | |
|---|---|---|
| **FIDELISSIMUS, LLC, AND** | § | **IN THE DISTRICT COURT** |
| **DAVID TYLER MOSS,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **429TH JUDICIAL DISTRICT** |
| | § | |
| **BRIAN D. MARTIN, CAROLYN** | § | |
| **M. MARTIN, HOLLY BONE** | § | |
| **MARTIN, TERRYS REAL** | § | |
| **ESTATE INVESTMENTS, LLC,** | § | |
| **Defendants.** | § | **COLLIN COUNTY, TEXAS** |

## <u>DEFAULT JUDGMENT</u>

The hearing on this cause was held on May 23, 2022. Plaintiffs, Fidelissimus, LLC and David Tyler Moss appeared and Defendant, Carolyn M. Martin, although duly cited to appear by filing an answer herein, failed to file any answer within the time allowed by law. On June 4, 2021 this Court previously entered a Partial Default Judgment as to Liability against Carolyn M. Martin.

Brian D. Martin, Holly Bone Martin and Terrys Real Estate Investments, LLC, each filed an answer in this case. Although notified of the trial date, neither Brian D. Martin, Carolyn M. Martin, Holly Bone Martin or Terrys Real Estate Investments appeared at the 429th Judicial District Court for trial as noted by the Court.

1.    On the claim of Fraudulent Transfer (Count One), the court finds in favor of Plaintiffs, Fidelissimus, LLC and David Tyler Moss, and against

a) Carolyn M. Martin in the amount of $339,984.98; and

b) Brian D. Martin in the amount of $339,984.98; and

c) Holly Bone Martin in the amount of $339,984.98

Each defendant is jointly and severally liable in the amount of $339,984.98 (Three Hundred Thirty-nine Thousand Nine Hundred Eighty-four and 98.00/100 Dollars).

EXHIBIT C

2.    On the claim of Fraudulent Transfer (Count Two), the court finds in favor of Plaintiffs Fidelissimus, LLC, and David Tyler Moss and against

a) Carolyn M. Martin in the amount of $339,984.98; and

b) Brian D. Martin in the amount of $339,984.98; and

c) Holly Bone Martin in the amount of $339,984.98; and

~~d) Terrys Real Estate in the amount of $~~ *0w 5/23/22* .

Each defendant is jointly and severally, in the amount of $ _339,984⁹⁸_

( _____ ).

3.    On the claim of Civil Conspiracy, the court finds in favor of Plaintiffs, Fidelissimus, LLC and David Tyler Moss against

a) Brain D. Martin in the amount of $ _25,000⁰⁰_ ; and

b. Carolyn M. Martin in the amount of $ _25,000⁰⁰_ ; and

c) Holly Bone Martin in the amount of $ _25,000⁰⁰_ ; and

~~d) Terrys Real Estate in the amount of $~~ *0w 5/23/22* .

Each defendant is jointly and severally, in the amount of $ _75,000⁰⁰_

( _____ ).

5.    On the claim of Aiding and Abetting / Concert of Action, the court finds in favor of Plaintiffs Fidelissimus, LLC and David Tyler Moss and against a

a) Brian D. Martin in the amount of $ _25,000⁰⁰_ ; and

b) Carolyn M. Martin in the amount of $ _25,000⁰⁰_ ; and

c) Holly Bone Martin in the amount of $ _25,000⁰⁰_ ; and

d) Terrys Real Estate Investments, LLC.

Each jointly and severally, in the amount of $ _75,000⁰⁰_

( _____ ).

6.    On the claim of Money Had and Received, the court finds in favor of Plaintiffs Fidelissimus, LLC and David Tyler Moss and against

a) Brian D. Martin in the amount of $ _25,000⁰⁰_ ; and

b) Carolyn M. Martin in the amount of $ _25,000⁰⁰_ ; and

c) Holly Bone Martin in the amount $ *25,000*⁰⁰    ; and

~~d) Terrys Real Estate Investments, LLC in the amount of~~ $ *75,000*⁰⁰ *@w 5/23/22.*

Each    defendant    is    jointly    and    severally,    in    the    amount    of
$ *75,000*⁰⁰ _____ (                              ).

     7.    On the claim of Conversion, the court finds in favor of Plaintiffs,

Fidelissimus, LLC and David Tyler Mosss and against

a) Carolyn M. Martin in the amount of $ *113,000*____    ; and

b) Brian D. Martin in the amount of $ ___*113,000*____    ; and

c) Holly Bone Martin in the amount of $ *113,000*____    ; and

~~d) Terrys' Real Estate in the amount of~~ $ *@5/23/22*____    .

Each    defendant    is    jointly    and    severally,    in    the    amount    of
$ *339,000*⁰⁰ _____ (                              ).

     8.    On the claim of Civil Theft, the court finds in favor of Plaintiffs,

Fidelissimus, LLC, and David Tyler Moss and against

a) Carolyn M. Martin in the amount of $ *113,000*⁰⁰    ; and

b) Brian D. Martin in the amount of $ *113,000*⁰⁰    ; and

c) Holly Bone Martin in the amount of $ *113,000*⁰⁰    ; and

d) ~~Terrys' Real Estate in the amount of~~ $_____    .

Each    defendant    is    jointly    and    severally,    in    the    amount    of
$ *339,000*⁰⁰ _____ (                              ).

     9.    On the claim of Common Law Fraud, the court finds in favor of

Plaintiffs, Fidelissimus, LLC and David Tyler Moss and against

a) Carolyn M. Martin in the amount of $ *113,000*⁰⁰    ; and

b) Brian D. Martin in the amount of $ *113,000*⁰⁰    ; and

c) Holly Bone Martin in the amount of $ *113,000*⁰⁰    ; and

~~d) Terrys' Real Estate in the amount of~~ $ *@5/23/22*____    .

Each    defendant    is    jointly    and    severally,    in    the    amount    of
$ *339,000*⁰⁰ _____ (                              ).

10. On the claim of Statutory Fraud in a Real Estate Transaction, the court finds in favor of Plaintiffs Fidelissimus, LLC and David Tyler Moss and against a) Carolyn M. Martin in the amount of $ *75,000⁰⁰* ; and b) Brian D. Martin in the amount of $ *75,000⁰⁰* ; and c) Holly Bone Martin in the amount of $ *75,000⁰⁰* ; and d) ~~Terrys' Real Estate in the amount of $~~ *(JW) 5/23/22* . Each defendant is jointly and severally, in the amount of $ *225,000⁰⁰* ( ).

11. On the claim of Trespass to Try Title, the court finds in favor of Plaintiffs Fidelissimus, LLC, and David Tyler Moss and against a) ~~Carolyn M. Martin in the amount of $~~ *(JW) 5/23/22* ; and b) Brian D. Martin in the amount of $ *169,000⁰⁰* ; and c) Holly Bone Martin in the amount of $ *169,000⁰⁰* ; and d) ~~Terrys' Real Estate in the amount of $~~ *(JW) 5/23/22* . Each defendant is jointly and severally, in the amount of $ *338,000⁰⁰* ( ).

12. Plaintiffs Fidelissimus, LLC and David Tyler Moss are entitled to prejudgment interest on the damages awarded herein, measured from Jan. 16, 2020, at the rate of 7.0% per annum, in the sum of $ ~~3~~ *55,662⁹⁴* ( ).

13. Plaintiffs Fidelissimus, LLC and David Tyler Moss are entitled to postjudgment interest on the total amount of the judgment and any prejudgment interest awarded hereinabove, at the rate of 5.0 % per annum from the date this judgment is signed until paid.

14 Plaintiffs Fidelissimus, LLC and David Tyler Moss are entitled to the *(JW) 5/23/22* sum of $ ( ), as attorney's fees, to bear interest at the rate of 5.0% ~~per annum from~~ the date this

judgment is signed until paid.

15.    Plaintiffs Fidelissimus, LLC and David Tyler Moss are entitled to Exemplary Damages of $680,000.00.  Each Defendant, Brian D. Martin, Carolyn M. Martin and Holly Bone Martin are jointly and severally liable for the exemplary damages to the Plaintiffs.

16.    All monetary amounts awarded to Fidelissimus, LLC and David Tyler Moss are to be divided equally between each Plaintiff as are any payments received from any of the Defendants.

16.    Costs are hereby taxed against Defendants, jointly and severally.

**IT IS ORDERED** that Plaintiff, Fidelissimus, LLC and / or David Tyler Moss is entitled to enforce this judgment through abstract, execution and any other process necessary.

If you are an individual (not a company), your money or property may be protected from being taken to pay this judgment.  Find out more by visiting www.texaslawhelp.org/exempt-property. / *Si usted es una persona física (y no una compañía), su dinero o propiedad pudieran estar protegidos de ser embargados como pago de esta deuda decretada en juicio en contra suya.  Obtenga mayor información visitando el sitio www.texaslawhelp.org/exempt-property.*

SIGNED on ___May 23___, 2022.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
Dan L. Wyde
Attorney for Plaintiffs Fidelissimus, LLC
WYDE & ASSOCIATES, PLLC
Email:  wydelaw@gmail.com

10100 N Central Expy, Ste 230
DALLAS, TX 75231
Tel. (214) 521-9100



John Helstowski
Attorney for Terrys Real Estate Investments, LLC
John G. Helstowski
Email: jgh@jghfirm.com
5209 Heritage Avenue, Suite 510
Colleyville, Texas 76034
Tel. 817.382.3125



Carolyn M. Martin, Pro se Defendant
10675 Bryant Street, Unit 14
Yucaipa, California 92399
Tel. Unknown



Brian D. Martin, Pro se Defendant
80 Stour Close
Harwich Essex CO12 4TL,
United Kingdom
Tel. _____



Holly Bone Martin, Pro se Defendant
80 Stour Close
Harwich Essex CO12 4TL,
United Kingdom
Tel. _____

STATE OF TEXAS          )
COUNTY OF COLLIN )
I, Michael Gould, District Clerk in and for Collin County Texas,
do hereby certify that the above foregoing is a true and correct copy of the
original document as the same appears on the file in the District Court,
Collin County, Texas. Witness my hand and seal of said Court, this
the 12 day of MAY A.D., 20 25
                    MICHAEL GOULD, DISTRICT CLERK
                    COLLIN COUNTY, TEXAS
                    _____ DEPUTY

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

27281 Las Ramblas, Ste 200, Mission Viejo CA 92691

A true and correct copy of the foregoing document entitled (*specify*): _____
First amended complaint for determination of nondischargeability and objection to discharge pursuant to 11 USC 523 a
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
06/06/2025_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com; michael.berger@ecf.inforuptcy.com
trustee.bui@shulmanbastian.com, C115@ecfcbis.com
marksrosen@aol.com, pattielegalasst@aol.com, ustpregion16.rs.eft@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 06/06/2025 | PATTIE LIMON | *Pattie Limon* |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          **F 9013-3.1.PROOF.SERVICE**