BRIAN MARTIN, In Pro Per

941 Cimarron Lane

Corona CA 92879

(840)-207-1860

xbrianmartinx@gmail.com

IN THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF

CALIFORNIA RIVERSIDE DIVISION

| | |
|---|---|
| **In Re BRIAN DENNIS MARTIN** | Chapter 7 Case No. 6:25-bk-10944-RB<br>Adversary No.6:25-ap-01055-RB |
| **DAVID TYLER MOSS and FIDELISSIMUS, LLC,** | **DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT** |
| **Plaintiffs,** | |
| **vs.** | |
| **BRIAN DENNIS MARTIN,** | |
| **Defendant.** | Date: June 16, 2026 |
| | Time: 2:00 PM |
| | Courtroom: 303 |
| | PLACE: 3420 12th Ave., Riverside CA |

**DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO**

**DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT**

**TO THE HONORABLE MAGDALENA REYES BORDEAUX,**

**JUDGE OF THE UNITED STATES BANKRUPTCY COURT.**

DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO
DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

I, Brian Dennis Martin, declare as follows:

1. I am the Defendant in the above-captioned adversary proceeding. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would testify competently thereto.

## I. FRAUDULENT STANDING OF FIDELISSIMUS LLC

2. Plaintiff Fidelissimus LLC asserts it is a judgment creditor in this matter. However, the Texas Abstract of Judgment, dated April 13, identifies **Brandon Keating**—not the LLC—as the judgment creditor.

3. Curiously, in the motion to obtain said abstract, Plaintiffs' Texas counsel, Craig Capua, also represents Brandon Keating as the legitimate judgment creditor rather than Fidelissimus LLC.

4. Attached hereto as **Exhibit 1** is a true and correct copy of the Abstract of Judgment dated April 13.

5. Attached hereto as **Exhibit 2** is a motion by the Plaintiffs Counsel Craig Capua falsely stating to a federal court that "The judgment remains valid and enforceable", which is a fraudulent statement ignoring this courts discharge.

6. I have reviewed the First Amended Complaint and all associated filings. Brandon Keating is not named as a Plaintiff in this Adversary Proceeding. However, the Texas Abstract of Judgment (Exhibit 1) explicitly lists Brandon Keating—not the Plaintiffs herein—as the judgment creditor. This establishes that the Plaintiffs lack standing to collect on this judgment, as they are not the real parties in interest.

7. I have performed a diligent search of the public dockets for the underlying cases

DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO
DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

referenced by Plaintiffs, including Case No. 3:14-cv-03088 (Federal) and Dallas County Texas Case Nos. DC-20-13290 and DC-20-09893. Despite these efforts, I have found **zero** evidence of an Assignment of Judgment, Notice of Transfer, or Substitution of Creditor that transfers any interest in the underlying judgment from Brandon Keating to Fidelissimus LLC. Plaintiffs are operating without a recorded chain of title, confirming they have no standing to bring these claims

## II. FABRICATION OF JUDICIAL FINDINGS

1. In the First Amended Complaint and Motion to Compel, Plaintiffs and counsel Mark Rosen falsely state that a Texas court ruling provided evidence of a "business venture" between myself, Kevin Martin, and Force Media, LLC.

2. This statement is demonstrably false; there was no evidentiary hearing in the referenced Texas case, and thus no judicial finding exists to support these claims. Kevin Martin and Force Media, LLC filed an appeal to the Texas garnishment and inside the appeal brief it is clearly stated that there was no evidentiary hearing to the merits which further cements Plaintiffs false statements in this court. **(Exhibit 3 pg 5-6)** Plaintiffs in this case (DC-22-03943-C) in the 68th Judicial District Court of Dallas County, Texas ignored California court orders and Temporary Restraining orders in California to fraudulently and illegally obtain money belonging to Kevin Martin and his business Force Media, LLC where Kevin Martin and Force Media, LLC was not in jurisdiction to that court nor were they present. **(Exhibit 4)** This flies in the face of due process of law and demonstrates Plaintiffs willful and malicious acts to disregard California State Law and California Court's authority and they

DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

continue to disregard California Court authority by their fraudulent handling in this adversary case.

3. Plaintiffs have previously attempted this same tactic against my wife, Holly, and her YouTube channel business venture; those claims were lost and subsequently reversed on appeal (See *05-22-00439-CV*, Dallas 5th Court of Appeals). Now they are using that same abuse and vexatious stance toward my own brother Kevin Martin who's rights have been obliterated by Plaintiffs wrongful foreign court collection actions.

## III. MISREPRESENTATION OF BITCOIN EVIDENCE

1. In Exhibit 3 of their Motion to Compel, Plaintiffs falsely allege that I received Bitcoin from my mother, Carolyn Martin.

2. In reality, I was assisting my mother in recovering funds after she was targeted by a scam. Brandon Keating was personally involved in this exchange and specifically requested that I send him the receipts for this recovery effort.

3. Attached hereto as **Exhibit 5** are true and correct copies of the communications and receipts proving this was a recovery effort, not a personal transfer. This copy was directly extracted from Plaintiffs motion to compel with Bitcoin Depot, Dkt 95.

## IV. OMISSION OF REVERSED JUDGMENTS AND APPEALS

1. Plaintiffs have consistently omitted the fact that the Dallas Texas state court judgment they rely upon was **reversed** by the Texas Appeals Court. Attached hereto as **Exhibit 6** is a true and correct copy of the Reversal Order (05-22-00439-CV).

4

DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

2. Furthermore, Plaintiffs failed to disclose that the 2016 Federal Judgment is currently under active appeal. Attached hereto as **Exhibit 7** is a true and correct copy of the Notice of Appeal and Appeal Brief.

## V. DEEMED ADMISSIONS (FRBP 7036)

1. On **November 26, 2025**, I served a First Set of Requests for Admission on Plaintiffs' counsel, Mark Rosen, via electronic mail. Attached hereto as **Exhibit 8** is a true and correct copy of the service email.

2. As of today, over 140 days have passed without any response, objection, or request for an extension of time. Pursuant to Rule 36(a)(3), these matters are now conclusively established as admitted. A number of emails were sent after the deadline of these admissions and were ignored all the same. Attached hereto as **Exhibit 9** is a true and correct copy of communication attempts. Every email in this exhibit batch is irrefutable evidence of Mark Rosen's miscommunication and misrepresentation of the facts as well as his failed responses and actions to submit the Admissions request I sought for months. You will also note that in an email dated March 26, 2026 I sent financials to Mark Rosen that contained of my Mothers bank statements and tax records in compliance to a subpoena and then on April 7, 2026 when Mark Rosen finally responds for the first time he states that he has received no documents at all. His response is his admission of willfully acting against this courts authority to meet and confer. This is undeniable evidence that Mark Rosen and the Plaintiffs are mishandling this adversary case and causing an impossible litigation to continue.

DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

## VI. DISCOVERY ABUSE AND VIOLATION OF COURT ORDERS

1. This Court ordered a "Meet and Confer" between the parties. Despite being granted a 120-day extension, counsel Mark Rosen went over 60 days without any communication with me. These failed attempts are logged as **Exhibit 9**.

2. Plaintiffs have refused to meet and confer on pending motions and failed to serve me with copies of filings via email, violating local protocol.

3. Rather than seeking financial discovery from me directly—which I have offered to provide—Plaintiffs have bypassed me to harass my third-party source of income, YouTube.

4. In a phone discussion on or about April 13, 2026, Mark Rosen admitted he "doesn't check his emails much" and had not seen discovery documents sent two weeks prior, which contained Carolyn Martin's bank statements and tax returns.

5. Further to that, Mark Rosen falsely stated in his motion to compel compliance to Kevin Martin and Force Media, LLC Dkt 93, that Kevin Martin and Force Media gave no response to the discovery requests. This was a bold faced lie. Attached hereto as **Exhibit 10** is a true and correct copy of Kevin Martin and Force Media, LLC response sent to Mark Rosen and his legal assistant on August 19, 2025. Further evidence that Mark Rosen is ignoring this case and conducting abusive discovery creating fraudulent filings to fit their narratives over a pr se defendant.

6. Furthermore, Mark Rosen admitted to me that he "needs to start spending more time on this case from now on," an admission that he has not taken these proceedings seriously, causing the current failure of the discovery process.

6

DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO
DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

7. I have personal knowledge that Plaintiffs violated the bankruptcy discharge injunction previously issued by this Court.

8. Attached hereto as **Exhibit 14** is a true and correct copy of the Court's Discharge Order.

9. Attached hereto as **Exhibit 11** is a true and correct copy of the Motion for Contempt I filed with this Court regarding the Plaintiffs' improper Texas judgment abstracting.

10.      This court ordered a discharge to me on June 2, 2025. I filed a motion for sanctions into case no. 6:25-bk-10944-RB on April 16, 2026 verifying the willful violation of the Plaintiffs attached hereto **Exhibit 11**. Attached **Exhibit 14** copy of Discharge Order. Attached hereto **Exhibit 12** are true and correct copies of emails I sent to Plaintiffs counsel in Texas to warn them not to violate the discharge injunction. These email notices were ignored by Craig Capua, and Mark Rosen's response was for me to send this issue to Plaintiffs Texas Counsel Craig Capua.

11.      This court ordered a discharge to me on June 2, 2025 which is on record. The discharge gave me injunction relief. The plaintiffs have willfully and maliciously violated that discharge injunction on April 13, 2026 and on April 15, 2026, just two days after going behind this court's back to obtain an abstract of judgment the Plaintiffs filed a motion for comfort order hoping to have it granted so their disregard for the courts authority would go unnoticed. My opposition I filed on April 16, 2026 provided the evidence the Plaintiffs violated this courts order and scrambled to pull the wool over this honorable judge's eyes thinking this court wouldn't notice their actions in a foreign Texas court. Attached hereto **Exhibit 13** is a copy of this courts order *denying* Plaintiffs motion for comfort order which they filed to cover their

DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

tracks. Dkt 107 in this adversary case is my Opposition which fully explains the facts of that violation of this courts orders made by Plaintiffs.

12.    The last wrinkle in this, is that I am a pro se defendant in a case where I am taking my life extremely seriously and providing a defense that will save my life and prove my case. Mark Rosen and the Plaintiffs have taken advantage of a pro se litigant whom he thinks he can run over and abuse. He's told me a number of times he's been doing law for over 50 years. This is a statement from a lawyer who views a pro se litigant as worthless. However the constitutional right we all have here in the United States of America is to defend our case to the fullest including self representation. Mark Rosen is using his professional title to undermine this case and take advantage of a pro se litigant who's the only one participating in this adversary despite the Plaintiffs initiating it first. This has made things very difficult for me and my family. Discovery is about the law and justice, not abuse and neglect, which is the very reason I take this motion I present to the court extremely serious and I would never take this lightly however Mark Rosen and the Plaintiffs have left me with no other choice but to utilize the laws of the land to defend myself and obtain justice. I realize more than ever that this case has been tainted far beyond repair and a fair litigation has been completely destroyed in this matter. I humbly and respectfully submit to this court that this case dismiss with prejudice so I may carry on my fresh start.

DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 20, 2026, at Corona, California.

By: _____ **Brian Dennis Martin**

9
DECLARATION OF BRIAN DENNIS MARTIN IN SUPPORT OF MOTION TO DISMISS FOR TERMINATING SANCTIONS AND FRAUD ON THE COURT

## MASTER EXHIBIT LIST

| Exhibit # | Document | DESCRIPTION |
|---|---|---|
| **Exhibit 1** | **Texas Abstract of Judgment** (Dated April 13, 2026 | Proves **Brandon Keating** is the creditor, not Fidelissimus LLC (Standing Issue). |
| **Exhibit 2** | **Motion for Abstract Judgment** | Filed by Plaintiff's Texas counsel Craig Capua, specifically omitting Fidelissimus LLC from the judgment and placing Brandon Keating as the actual creditor. |
| **Exhibit 3** | **Appeal of Kevin Martin and Force Media, LLC** | Shows the history of the Dallas case where no evidentiary hearing occurred. |
| **Exhibit 4** | **California Court Case** (CVRI2402841)<br><br>**Texas Court Case Records** (Case No. DC-22-03943-C) | Further proof that the plaintiffs are misrepresenting who holds the debt. Kevin Martin and Force Media's TRO was violated by Plaintiffs in Texas Court. Proof Plaintiffs have no regard for California Court orders and State law.<br><br>Order for Garnishment which Kevin Martin and Force Media, LLC filed for an appeal with evidence that there was no evidence to garnish said funds against Kevin Martin and his accounts. It shows how illegal this Texas court is by even taking money from Kevin Martin's personal California account when Kevin Martin is not a judgment debtor. No evidence was presented in any hearing. |

| Exhibit # | Document | DESCRIPTION |
|---|---|---|
| **Exhibit 5** | **Bitcoin Recovery Records & Communications** | The "receipts" showing Brian Martin and Brandon Keating were helping Carolyn Martin recover from a scam, not a personal transfer (proves fraud allegation by Plaintiffs is false). |
| **Exhibit 6** | **Texas Appeals Court Reversal Order** (05-22-00439-CV) | Proves the Dallas judgment was reversed and the debt was "wiped out." |
| **Exhibit 7** | **Notice of Appeal & Federal Appeal Brief** | Proves the 2016 Federal Judgment is under active challenge in the 5th Circuit. |
| **Exhibit 8** | **Service Email + Requests for Admission** | Printout of the Nov 26, 2025 email **AND** the full list of Admission questions which are now by law deemed admitted. |
| **Exhibit 9** | **Communications Post-Deadline** | Emails showing Plaintiff's counsel in this adversary, Mark Rosen's lack of response after the December 29 deadline for requests of admissions. Attempts to contact Rosen and his firm during the "60-day silence" (Violation of Court Order). |
| **Exhibit 10** | **Kevin Martin's Discovery Responses and Mark Rosens Fraudulent filing falsely stating Kevin Martin gave no response.** | Kevin Martin's email response including pages from Mark Rosen's motion to compel compliance to Kevin Martin and Force Media falsely stating to this court that the Texas Court had verified evidence and that Kevin Martin and Force Media, LLC did not respond to the subpoena. With Kevin Martin's August 19, 2025 email response, it is clear Mr Rosen's April 2026 filing is a fraud on the court and intentionally false statements were made by Plaintiffs |
| **Exhibit 11** | **Motion for Sanctions for Violation of Discharge Injunction 11 U.S.C. 524** | Complete motion with exhibits and discharge order dated June 2, 2026 proving Plaintiffs willful disregard to this courts orders and Defendants rights. |

| Exhibit # | Document | DESCRIPTION |
|---|---|---|
| Exhibit 12 | **Emails to Plaintiffs counsel** | Defendants emails to Plaintiffs counsel requesting them to withdraw their motion for abstract of judgment which would be a violation of the discharge injunction. |
| Exhibit 13 | **Order from this court denying Plaintiffs motion for comfort order.** | This document and its opposition proves Plaintiffs violated the Discharge Injunction and tried to sneak behind this courts back to obtain one to cover their violation of the discharge injunction. |
| Exhibit 14 | **Copy of Discharge Order** | True and Correct copy of this courts Discharge Order |

# EXHIBIT 1

# ABSTRACT OF JUDGMENT

United States District Court
Northern District of Texas
Dallas Division

Civil Action No. 3:14-cv-03088-M

I, the Clerk of the United States District Court for the Northern District of Texas, Dallas
Division, certify that in the case styled:

David Tyler Moss and Brandon Keating, Plaintiffs,
v.
Brian Martin and Marko Princip, Defendants,

Final Judgment was entered on April 15, 2016, in favor of Plaintiffs and against Defendants.

The judgment awards:
• $2,100,000.00 to David Tyler Moss, jointly and severally;
• $2,100,000.00 to Brandon Keating, jointly and severally;

Plus exemplary damages as set forth in the Final Judgment.

Post-judgment interest accrues at the rate of 0.55% per annum until paid.

There remains due and owing in excess of $4,200,000.00, plus interest and costs.

Issued this 13th day of April, 2026.


Clerk of Court

Clerk of Court
United States District Court
Northern District of Texas

By: s/Yolanda Pace
Deputy Clerk

# EXHIBIT 2

# WEST & ASSOCIATES L.L.P.

## ATTORNEYS AND COUNSELORS AT LAW

ROYCE WEST
CRAIG A. CAPUA
TONYA TARPEH
MICHAEL C. LACTSON
NICOLE COLLIER
TWANA W. ALLEN
BRIAN M. KING

————

OF COUNSEL
EDGARDO E. COLÓN
THELMA CLARDY
DEANNE CLAIRE

320 SOUTH R.L. THORNTON FREEWAY, SUITE 300
DALLAS, TEXAS 75203

OFFICE: 214-941-1881
FAX: 214-941-1399

WWW.WESTLLP.COM

HOUSTON OFFICE
440 LOUISIANA
SUITE 1880
HOUSTON, TEXAS 77002
OFFICE: 713-425-7293
FAX: 713-425-7299

FORT WORTH OFFICE
101 S. JENNINGS AVENUE
SUITE 210
FORT WORTH, TEXAS 76104
OFFICE: 817-877-1881
FAX: 817-458-4695

April 8, 2026

Via CM/ECF
Clerk of Court
United States District Court
Northern District of Texas
Dallas Division

**Re: Moss v. Princip et al., Civil Action No. 3:14-cv-03088**

Plaintiffs David Tyler Moss and Brandon Keating, by and through undersigned counsel, respectfully request that the Clerk of Court issue an Abstract of Judgment in the above-referenced matter.

In support, Plaintiffs show as follows:

1. On April 15, 2016, the Court entered a Final Judgment in favor of Plaintiffs and against Defendants Brian Martin and Marko Princip in **Case No. 3:14-cv-03088**, United States District Court for the Northern District of Texas, Dallas Division.

2. The Judgment remains valid and enforceable. Post-judgment challenges brought by Defendant Brian Martin under Federal Rule of Civil Procedure 60(d) were denied, and the Court's rulings were upheld by Order dated July 3, 2024, with reconsideration denied on August 29, 2024.

3. Plaintiffs seek issuance of an Abstract of Judgment for purposes of recording the judgment in the appropriate county real property records pursuant to applicable Texas law.

**WHEREFORE,** Plaintiffs respectfully request that the Clerk issue an Abstract of Judgment reflecting the Court's Final Judgment entered April 15, 2016, and provide certified copies as requested.

Respectfully submitted,

WEST & ASSOCIATES, L.L.P.

By: _____

# EXHIBIT 3

ACCEPTED
05-24-00943-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
11/14/2024 1:49 PM
RUBEN MORIN
CLERK

No. 05-24-00943-CV

IN THE COURT OF APPEALS
FOR THE FIFTH DISTRICT OF TEXAS
AT DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
11/14/2024 1:49:23 PM
Ruben Morin
Clerk

**NOMINAL OWNERS, FORCE MEDIA, LLC AND KEVIN MARTIN,**

Appellants

v.

**DAVID TYLER MOSS AND FIDELLISIMUS LLC,**

Appellees.

On Appeal from the 68th Judicial District of
Dallas County, Texas, No. DC-22-03943-C
The Honorable Martin Hoffman, Presiding

**BRIEF OF APPELLANTS**

CLOUTHIER LAW, PLLC
Susan J. Clouthier
Texas Bar No. 24062673
Tyler A. To
Texas Bar No. 24140423
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 77380
Tel: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorneys for Appellants**
**Nominal Owners Force Media, LLC and Kevin Martin**

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES

| | |
|---|---|
| Appellants/Plaintiffs: | Kevin Martin<br>Force Media, LLC |
| Appellees/Defendants: | David Tyler Moss<br>Fidellisimus LLC |
| Appellants' Appeal Counsel: | Susan J. Clouthier<br>Tyler A. To<br>Clouthier Law, PLLC<br>9950 Woodloch Forest Dr, Ste 1300<br>The Woodlands, Texas 77380 |
| Appellee's Counsel: | Craig A. Capua<br>State Bar No. 03783950<br>Royce B. West<br>State Bar No. 21206800<br>West &Associates, LLP<br>320 S R L Thornton Fwy Suite 300<br>Dallas, TX 75203-1842 |
| Trial Court Judge: | Honorable Martin Hoffman<br>68th Judicial District of<br>Dallas County, Texas, Texas |

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES ............................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................... v

STATEMENT OF THE CASE .....................................................................................1

STATEMENT REGARDING ORAL ARGUMENT ............................................................2

ISSUES PRESENTED ...............................................................................................2

STATEMENT OF FACTS............................................................................................2

SUMMARY OF THE ARGUMENT ...............................................................................5

ARGUMENT AND AUTHORITIES ..............................................................................6

    I.    Kevin and Force Media meet all requirements for restricted appeal relief. 6

        A.   Standard of review. ....................................................................6

        B.   This restricted appeal is brought within six months of the judgment; Kevin and Force Media never participated in garnishment proceedings; and error is apparent on the face of the record. ...................................................................6

    II.   The court lacked personal jurisdiction over Kevin and Force Media because they never did business in Texas.............................................................7

        A.   Standard of review. ....................................................................7

        B.   Moss failed to plead sufficient jurisdictional facts. ....................................7

    III.   Service of the writs of garnishment were wholly defective because they do not strictly comply with the statutory requirements. ...........................................11

        A.   As nominal owners, Kevin and Force Media were improperly named as garnishees when they should have been named as debtors.............................12

        B.   As the alleged debtors, Kevin and Force Media were never served with the required documents...............................................................12

C.    In the alternative, as garnishees, the writs were not delivered to Kevin and Force Media by a sheriff or constable. ..............................................13

D.    The returns of service were not signed under penalty of perjury as required by Rule 17.030(c) of the Texas Civil Practice and Remedies Code. ................14

E.    In the alternative, the returns were not properly verified because the jurats do not sufficiently verify facts relating to the act of service. ...........................15

IV.    There is legally insufficient evidence to sustain a judgment for garnishment because the claim was unliquidated and required a hearing. ...........16

A.    Standard of review. ...............................................................................16

B.    Appellees' claim of garnishment against Kevin and Force Media is unliquidated and unsupported by any written instrument. ................................17

C.    Appellees failed to provide evidence for their unliquidated damages unsupported by a written instrument. ...........................................................18

CONCLUSION ................................................................................................19

CERTIFICATE OF SERVICE ...........................................................................20

CERTIFICATE OF COMPLIANCE ....................................................................20

APPENDIX ....................................................................................................21

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aavid Thermal Techs. of Tex. v. Irving Indep. Sch. Dist.*,
  68 S.W.3d 707 (Tex. App.—Dallas 2001, no pet.)................................ 18

*American Type Culture Collection, Inc. v. Coleman*,
  83 S.W.3d 801 (Tex. 2002)................................................................. 8

*Arenivar v. Providian Nat'l Bank*,
  23 S.W.3d 496 (Tex. App.—Amarillo 2000, no pet.) ........................ 16, 17, 19

*Argyle Mech., Inc. v. Unigus Steel, Inc.*,
  156 S.W.3d 685 (Tex. App.—Dallas 2005, no pet.)............................ 17

*Bank One, Tex., N.A. v. Sunelt Sav., F.S.B.*,
  824 S.W.2d 557 (Tex. 1992)............................................................. 12

*City of Keller v. Wilson*,
  168 S.W.3d 802 (Tex. 2005)............................................................. 16

*Dolly v. Aethos Commc'ns Sys, Inc.*,
  10 S.W.3d 384 (Tex. App.—Dallas 2000, no pet.)......................... 11, 15

*Energy Search Co. v. RLI Ins. Co.*,
  2019 WL 6711427 (Tex. App.—Houston [14th Dist.] Dec. 10, 2019, no pet.).... 8

*Gen. Elec. Co. v. Falcon Ridge Apts., J.V.*,
  811 S.W.2d 942 (Tex. 1991).............................................................. 6

*Gourmet, Inc. v. Hurley*,
  552 S.W.2d 509 (Tex. App.—Dallas 1977, no writ)............................. 8

*In re M.C.B.*,
  400 S.W.3d 630 (Tex. App.—Dallas 2013, no pet.)............................ 11

*In re Tex. Am. Exp., Inc.*,
  190 S.W.3d 720 (Tex. App.—Dallas 2005, orig. proceeding) ...................... 11, 18

*Kelly v. Gen. Interior Constr., Inc.*,
  201 S.W.3d 653 (Tex. 2010)............................................................... 7

*Longhorn Creed Ltd. v. Gardens of Connemara Ltd.*,
686 S.W.3d 418 (Tex. App.—Dallas 2024, pet. filed) ......................................... 19

*Lytle v. Cunningham*,
261 S.W.3d 837 (Tex. App.—Dallas 2008, no pet.)............................................... 6

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
414 S.W.3d 142 (Tex. 2013)............................................................................ 7, 10

*Moody Nat'l Bank v. Riebschlager*,
946 S.W.2d 521 (Tex. App.—Houston [14th Dist.] 1997, writ denied) ............. 13

*Norman Comms. v. Texas Eastman Co.*,
955 S.W.2d 269 (Tex. 1997).................................................................................. 6

*Oliphant Fin., LLC v. Galaviz*,
299 S.W.3d 829 (Tex. App.—Dallas 2009, no pet.)............................................ 19

*Otis Elevator Co. v. Parmelee*,
850 S.W.2d 179 (Tex.1993)................................................................................. 16

*Primate Const., Inc. v. Silver*,
884 S.W.2d 151 (Tex. 1994)................................................................................ 14

*Tavarez v. Smith*,
2002 WL 31525282.............................................................................................. 17

**Statutes**

Tex. Civ. Prac. & Rem. Code § 17.030(c)............................................................. 14

Tex. Civ. Prac. & Rem. Code § 17.042 ......................................................... 8, 9, 10

**Rules**

Tex. R. App. P. 9.4............................................................................................... 20

Tex. R. App. P. 26.1(c) .......................................................................................... 6

Tex. R. App. P. 30................................................................................................ 1, 6

Tex. R. App. P. 38.1, 39.1 and 39.2...................................................................... 2

Tex. R. Civ. P. 21a ........................................................................................... 8

Tex. R. Civ. P. 107 .......................................................................................... 14

Tex. R. Civ. P. 243 .......................................................................................... 18

Tex. R. Civ. P. 501.4 ........................................................................................ 8

Tex. R. Civ. P. 663 ................................................................................ 8, 12, 13

## STATEMENT OF THE CASE

| | |
|---|---|
| Nature of the case: | This restricted appeal arises from the trial court's final Modified Order Concerning Garnished Funds. C.R. at 366–68. |
| Course of Proceedings: | On February 22, 2024, Appellees, David Tyler Moss, et al., filed a First Amended Ex Parte and Under Seal Application for Writ of Garnishment after Judgment against Garnishee J.P. Morgan Chase Bank, N.A. and Appellants Force Media, LLC and Kevin Martin as Nominal Owners. C.R. at 64. The court issued two writs of garnishment on February 23, 2024. C.R. at 84–91. Upon the court finding that Appellants defaulted by interlocutory judgment on April 16, 2024, the trial court then filed a Judgment of Garnishment on May 24, 2024, directing funds held in out-of-state Chase accounts be paid for the benefit of Appellees. C.R. at 151–53. |
| Disposition of the case: | The court issued a final Modified Order Concerning Garnished Funds on June 25, 2024, ordering Garnishee to deposit $288,243.19 into the court registry; be discharged and released of all liability; and be dismissed from the action with prejudice. C.R. at 173–76. Appellees then filed a Motion to Distribute Funds Held in the Registry of the Court the following day. C.R. at 369. The court then ordered disbursement of those funds on August 5, 2024. C.R. at 380. |
| Court of Appeals Jurisdiction: | Appellants timely filed their Notice of Restricted Appeal on August 12, 2024. C.R. at 386. Therefore, this case is properly before the Fifth Court of Appeals. See Tex. R. App. P. 30. |

1

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rules of Appellate Procedure 38.1, 39.1 and 39.2, Appellants, Kevin Martin and Force Media, LLC, request oral argument before this Court of Appeals. Although Appellants represent that the facts and legal arguments are thoroughly presented in this brief and in the record, Appellants also believe that the decisional process of the Court of Appeals will be significantly aided by oral argument. Appellants believe that oral argument will better help this Court of Appeals understand the legal arguments they make regarding the rights of nominal owners and the evidence required to sustain a claim of garnishment. Accordingly, Appellants request oral argument.

## ISSUES PRESENTED

1.    Kevin and Force Media meet all requirements for restricted appeal relief.

2.    The court lacked personal jurisdiction over Kevin and Force Media because they never did business in Texas.

3.    Service of the writs of garnishment were wholly defective because they do not strictly comply with the statutory requirements.

4.    There is legally insufficient evidence in the record to support a judgment of garnishment because the claim was unliquidated and required a hearing.

## STATEMENT OF FACTS

This restricted appeal concerns a Texas court's assertion of jurisdiction over an individual and corporation who are located in California, who were never properly served process in California, and who—as complete strangers to the main

2

Texas suit on which Appellees based their ancillary garnishment action—possess California bank accounts.

In a separate Texas lawsuit for fraudulent transfer, civil conspiracy, aiding and abetting, conversion, common law fraud, and statutory fraud against Brian and Holly-Bone Martin ("Brian" and "Holly"), Appellees, Tyler Moss and Fidellisimus, LLC ("Appellees") were awarded a judgment and injunction securing damages in the aggregate amount of $14,745,285.80. C.R at 66. Neither Kevin Martin nor Force Media, LLC ("Kevin" and "Force Media") were parties to that suit. *See generally* C.R. at 45–52.

However, on February 22, 2024, Appellees filed an amended application to garnish the California bank accounts of Kevin and Force Media. C.R. at 64–83. The amended application named JP Morgan Chase Bank ("Chase Bank") as garnishee; alleged that the funds in the accounts were owned by Brian and Holly as judgment debtors; and that Kevin and Force Media were holding those funds in nominal title. C.R. at 65.

The garnishment action is based solely on a FaceTime call Appellees had with Kevin. *See* C.R. at 67–68. According to the allegations of their attached affidavit, Kevin admitted during a Facetime call that he and/or Force Media were instructed by Brian to hold those funds in their accounts. C.R. 81–82. Writs of garnishment were then executed on Kevin and Force Media, which the verifying jurats on record

3

indicate were served by a California private process server, Nick Shows. C.R. at 137, 143.

Subsequently, Chase Bank filed an amended answer to Appellees' writs, reflecting that it was indebted to Kevin for $419.60 and to Force Media for $289,023.59. C.R. at 102. However, Chase Bank also asserted that it was never indebted to Brian or Holly. C.R. at 101. The record also indicates that Kevin and Force Media did not appear or make any responsive pleading after the writs were allegedly served. C.R. at 149. On April 16, 2024, the court found by interlocutory judgment that Kevin and Force Media defaulted, holding that Appellees were entitled to recover as follows:

> [D]amages in the sum of $289,023.59 against [nominal owner] Force Media, LLC, and damages in the sum of $419.60 against [nominal owner] Kevin Martin, all of which are on deposit with JPMorgan Chase Bank, N.A., which is the garnishee, together with all interest and costs that may have accrued in this case, and all costs in this garnishment proceeding.

C.R. at 150.

The court then rendered a Judgment of Garnishment on May 24, 2024. C.R. at 151–55. For the entire garnishment suit, the record indicates that the court held only two hearings for purposes of modifying its final order and disbursing funds. *See generally* 1 R.R.; 2 R.R. Pursuant to a non-evidentiary hearing held on June 10, 2024, the court submitted the Modified Final Order Concerning Garnished Funds to have Chase Bank deposit a total of $288,243.19 into the court registry on June 25,

4

2024. 1 R.R. at 8; C.R. at 366–68. Pursuant to a non-evidentiary hearing held on July 1, 2024, the court ordered that such funds be disbursed to Appellees in satisfaction of their judgment against Brian and Holly on August 5, 2024. *See generally* 2 R.R.; *see also* C.R. at 369–71, 380–81. At no point did the court hold an evidentiary hearing. *See generally* 1 R.R.; 2 R.R.

## SUMMARY OF THE ARGUMENT

Kevin and Force Media meet all requirements for the restricted appeal. The notice appeal was filed within six months from the date of the final order; Kevin and Force Media did not participate in the proceedings, and error is on the face of the record as follows:

First, the trial court lacked jurisdiction over Kevin and Force Media. Both parties are out-of-state, did not do business in Texas, and have no relation to the main suit on which the garnishment action is based. Their bank accounts are also located in California. Likewise, Appellees' application for garnishment did not assert sufficient jurisdictional facts to establish personal jurisdiction.

Second, service on Kevin and Force Media was defective. Appellees failed to strictly comply with the rules governing service of process for nonresidents and with rules concerning service for writs of garnishment. Personal jurisdiction over Kevin and Force Media cannot thus be established by defective service of process.

Lastly, Appellees did not present any evidence supporting the judgment

5

against Kevin and Force Media. The claim for garnishment as pled by Appellees in their application is necessarily unliquidated and contingent on facts they failed to prove with evidence at a hearing. Judgment for garnishment was therefore improperly rendered against Kevin and Force Media due to insufficient evidence.

ARGUMENT AND AUTHORITIES

**I.      Kevin and Force Media meet all requirements for restricted appeal relief.**

**A.      Standard of review.**

"A restricted appeal is a direct attack on the trial court's judgment." *Gen. Elec. Co. v. Falcon Ridge Apts., J.V.*, 811 S.W.2d 942, 943 (Tex. 1991). Restricted appeals (1) must be brought within six months of the date of judgment; (2) by a party to the suit who did not participate in the trial; and (3) the error complained of must be apparent on the face of the record. *Lytle v. Cunningham*, 261 S.W.3d 837, 839 (Tex. App.—Dallas 2008, no pet.); TEX. R. APP. P. 26.1(c), 30. The face of the record consists of all the papers on file in the appeal, including any reporter's record. *Lytle*, 261 S.W.3d at 839. Subject to these requirements, review by restricted appeal affords an appellant the same scope of review as an ordinary appeal. *See Norman Comms. v. Texas Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam).

**B.      This restricted appeal is brought within six months of the judgment; Kevin and Force Media never participated in garnishment proceedings; and error is apparent on the face of the record.**

Filed on August 12, 2024 Kevin's restricted appeal was brought within six

6

months of the Final Order rendered on June 10, 2024. Additionally, the clerk's record shows that while Kevin and Force Media, LLC were parties to the writ, they never participated in any part of the proceedings. *See* C.R. 149–50. The remainder of this brief will discuss the error apparent on the face of the record.

## II. The court lacked personal jurisdiction over Kevin and Force Media because they never did business in Texas.

### A. Standard of review.

Generally, personal jurisdiction over a nonresident defendant is a question of law that courts review *de novo*. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). Texas courts may exercise jurisdiction over nonresidents if (1) the long-arm statute authorizes the exercise of personal jurisdiction and (2) such exercise is consistent with state and federal due process guarantees. *Kelly v. Gen. Interior Constr., Inc.*, 201 S.W.3d 653, 657 (Tex. 2010).

To support a default judgment based on service under the long-arm statute, the record must show (1) the pleadings contain allegations that make the defendant amenable to process by the use of the long-arm statute, and (2) the defendant was, in fact, served in the manner required by the statute.

### B. Moss failed to plead sufficient jurisdictional facts.

Moss's application for garnishment did not plead jurisdictional facts and thus failed to confer personal jurisdiction over Kevin and Force Media under the Texas long-arm statute.

When appellants do not file special appearances or other responsive pleadings, a court's review is limited to determining whether a plaintiff's jurisdictional facts, taken as true, affirmatively demonstrate the trial court's jurisdiction over the appellants. *Energy Search Co. v. RLI Ins. Co.*, No. 14-18-00747-CV, 2019 WL 6711427 at *2 (Tex. App.—Houston [14th Dist.] Dec. 10, 2019, no pet.) (mem. op.). "Unless the petition states the grounds of jurisdiction, the defendant is not in a position to make an informed decision as to whether he should appear and defend the suit, make a special appearance to contest jurisdiction, or let the judgement go by default and resist its enforcement in his own state on due process grounds." *Gourmet, Inc. v. Hurley*, 552 S.W.2d 509, 512 (Tex. App.—Dallas 1977, no writ).

The record is unclear as to what rule Appellees relied on to effectuate service. Rule 663a provides that defendant to a garnishment proceeding must be served as provided in Rule 21a or Rule 501.4, *as applicable*. Tex. R. Civ. P. 663a. However, the application of Rule 21a or Rule 501.4 does not account for service on nonresident defendants. *See* Tex. R. Civ. P. 21a, 501.4.

Service on nonresidents is generally governed by the Texas long-arm statute. *See American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *see also* TEX. CIV. PRAC. & REM. CODE § 17.042. While Appellees never alleged that Kevin or Force Media maintained a regular place of business or a designated Texas agent for service of process, Section 17.042 is implied by

8

Appellees' claim that Brian fraudulently transferred assets to Kevin and Force Media, both of whom Appellees asserted could be served with process in California. *See* C.R. at 65.

Section 17.042 confers jurisdiction over nonresidents who "do business" in Texas, providing a non-exclusive list of what constitutes "doing business." *See* TEX. CIV. PRAC. & REM. CODE § 17.042. Among other ways, nonresidents do business in Texas by entering a contract with a resident performable in whole or in part in Texas, or by committing a tort in whole or in part in Texas. *Id.*

Appellees' pleadings alleging a fraudulent transfer by Brian do not affirmatively establish personal jurisdiction over Kevin and Force Media under the long-arm statute. In pertinent part, Appellees' application for garnishment makes the following allegations:

> On or about February 13, 2024, at approximately 7:00 p.m., Brandon Keating, who is the Manager of Fidellisimus, LLC and one of Plaintiffs/Judgment Creditors, had a telephone conversation with Kevin Martin, who is the brother of Brian Martin and a nominal owner with a deposit account at Chase.
>
> * * *
>
> During the telephone call, Kevin Martin confirmed that he and/or Force Media, LLC, who are both nominal owners and have deposit accounts at Chase, have money in their accounts which was provided to them by Brian Martin.
>
> * * *
>
> Brian Martin gave Kevin Martin and/or Force Media, LLC money to

9

> be held in their accounts at Chase in an attempt to defraud Plaintiffs/Judgment Creditors from obtaining it.
>
> * * *
>
> Kevin Martin further stated that the money is revenue from the CraftTastic YouTube channel.
>
> * * *
>
> [Kevin] also agreed that Brian Martin owes millions of dollars to Plaintiff/Judgment Creditors, and that the money generated from the CraftTastic YouTube channel belongs to Plaintiffs/Judgment Creditors.
>
> * * *
>
> At the end of the telephone conversation, Kevin Martin stated to Brandon Keating that he and/or Force Media, LLC is holding the money that belongs to Plaintiffs/Judgment Creditors.

C.R. at 64–67. The garnishment application asserts no relevant facts regarding whether Kevin or Force Media do business in Texas as contemplated by the long-arm statute. Appellees make no allegation that Kevin and Force Media—an individual and corporation in California—entered a contract performable in whole or in part in Texas, or even committed a tort in whole or in part in Texas. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. The Texas Supreme Court made clear that "Texas's interest in protecting its citizens against torts is insufficient to automatically exercise personal jurisdiction upon an allegation that a nonresident directed a tort from outside the forum against a resident." *Moncrief Oil*, 414 S.W.3d at 152. With that understanding, the allegations above, taken as true, are insufficient to confer personal jurisdiction. Therefore, Moss's application falls short of

10

demonstrating that Kevin or Force Media do business in Texas or are amenable to service under the long-arm statute.

**III.   Service of the writs of garnishment were wholly defective because they do not strictly comply with the statutory requirements.**

In a restricted appeal, defective service of process constitutes error apparent on the face of the record, and there are no presumptions in favor of valid issuance, service of process, and return of citation. *In re M.C.B.*, 400 S.W.3d 630, 633 (Tex. App.—Dallas 2013, no pet.). Because the remedy of garnishment is summary and harsh, it requires strict compliance with the statutory requirements. *In re Tex. Am. Exp., Inc.*, 190 S.W.3d 720, 725 (Tex. App.—Dallas 2005, orig. proceeding). "Virtually any deviation will be sufficient to set aside a default judgment in a restricted appeal." *Dolly v. Aethos Commc'ns Sys, Inc.*, 10 S.W.3d 384, 388 (Tex. App.—Dallas 2000, no pet.).

The record is unclear regarding the purported capacity Moss intended to assign Kevin or Force Media under the writ of garnishment because they were both named as nominal owners and as garnishees, while Brian and Holly were named as the judgment debtors. Service was defective as they should have been named as debtors to the suit, but the same is true even if they were properly named as garnishees.

11

**A.**    **As nominal owners, Kevin and Force Media were improperly named as garnishees when they should have been named as debtors.**

Kevin and Force Media were named as nominal owners but were erroneously served as purported garnishees. According to *Sunbelt*, a nominal owner must be named in place of the true owner of funds in the garnishment proceeding. *Bank One, Tex., N.A. v. Sunelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992) (per curiam). Because the true owner of the funds in a garnishment action is typically named as the judgment debtor, this means that nominal owners should be named as the debtor. *See id.*

Here, Moss erroneously named Brian and Holly as the debtors whose funds were to be garnished. *See, e.g.*, C.R. at 140. If Appellees sought to challenge title to funds held in Kevin or Force's account, they should have sought a writ of garnishment naming Kevin and Force Media, not Brian or Holly, as the debtors. *See Abbott v. Liberty National Bank*, No. 06-12-00020, 2013 W: 399138 at * 2 n.2 (Tex. App.—Texarkana, February 1, 2013, pet. denied) (mem. op.).

**B.**    **As the alleged debtors, Kevin and Force Media were never served with the required documents.**

Rule 663a of the Texas Rules of Civil Procedure mandates that the defendant debtor in a garnishment proceeding be served "with a copy of the writ of garnishment, the application, accompanying affidavits, and orders of the court as soon as practicable following the service of the writ on the garnishee." Tex. R. Civ.

12

P. 663a.

Here, Kevin and Force Media were allegedly served a writ in which they were named as garnishees. *See, e.g.*, C.R. at 139. This is not a "copy" of the writ to Chase Bank because it was substantively different from what Chase Bank, the actual garnishee, received. C.R. at 107. Likewise, the record does not indicate that they received the application, accompanying affidavits, or orders of the court as required by Rule 663a, and the notice of debtor rights they received was defective because they were addressed to Brian and Holly, not Kevin and Force Media. Tex. R. Civ. P. 663a.

Therefore, because of Appellee's failure to properly challenge title to the funds, Kevin and Force Media did not receive the documents to which they were entitled as alleged debtors. Appellees failed to strictly comply with the statute and serve Kevin and Force Media with a copy of the writ, the application, the accompanying affidavits, and notice of their debtor rights.

**C.    In the alternative, as garnishees, the writs were not delivered to Kevin and Force Media by a sheriff or constable.**

Even if this Court finds that Appellees appropriately named Kevin and Force Media as garnishees, the writs were still improperly delivered. Rule 663 of the Texas Rules of Civil Procedure requires a sheriff or constable to deliver the writ of garnishment to the garnishee—private process servers are prohibited from executing writs of garnishment. *See* Tex. R. Civ. P. 663; *see also Moody Nat'l Bank v.*

13

*Riebschlager*, 946 S.W.2d 521, 523 n.1 (Tex. App.—Houston [14th Dist.] 1997, writ denied). Here, the writs were allegedly delivered to Kevin and Force Media, not by a constable or sheriff, but by a Californian private process server. C.R. at 137, 143. Therefore, the record shows defective service of required documents, even if Kevin and Force Media were properly named as garnishees.

**D.    The returns of service were not signed under penalty of perjury as required by Rule 17.030(c) of the Texas Civil Practice and Remedies Code.**

Regardless of how Kevin and Force Media should have been named, the service of the writs are also defective because the returns were verified and were not signed under penalty of perjury. While Rule 107 generally allows private process servers to either verify a return of service or sign it under penalty of perjury, Section 17.030(c) of the Texas Civil Practice and Remedies Code requires out-of-state process servers specifically "to sign the return under penalty of perjury." *Compare* TEX. R. CIV. P. 107 *with* TEX. CIV. PRAC. REM. CODE § 17.030(c).

Here, the California private processor only attempted to verify the returns. C.R. at 138, 144. The return of service is not a trivial document, but prima facie evidence of the facts recited within. *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). It is the responsibility of the one requesting service to ensure that service is properly done. *Id.* The face of the record shows that Moss failed to strictly comply with the statute.

14

### E.    In the alternative, the returns were not properly verified because the jurats do not sufficiently verify facts relating to the act of service.

Even if verification of the returns were permitted, the jurats do not verify the truth of the contents served. To the extent this Court finds that verification of the returns for service on nonresidents is permitted, the attached jurats only verify the identity of the process server, not the truth of the contents that were allegedly served on Kevin or Force Media. C.R. at 138, 144. As this Court has held, "[a] verification on a return of service must verify the facts relating to the act of service." *Dolly*, 10 S.W.3d at 389. Here, the California jurats explicitly state that they only verify the identity of the affiant, not the truth, accuracy, or validity of any document to which they are purportedly attached. C.R. at 138, 144.

The fact that the jurats are on completely separate pages from the returns is also problematic because they make no reference to the returns specifically addressing service on Kevin or Force Media. *See* C.R. at 138, 144. In *Dolly*, this Court further held that a return was defective where a type-written note indicating that documents were posted to a front door could not be verified because it was located below the verification. *Dolly*, 10 S.W.3d at 389.

Here, the fact that the verifications are on separate pages makes them wholly insufficient when they only reference some general return of service described as dated March 22, 2024. C.R. at 138–44. The specific returns on Kevin and Force Media contain blank notary signature lines on their face and are not dated March 22,

15

2024, as the jurats describe. C.R. at 137–143. Therefore, even if verification was permitted, Appellees still failed to properly verify the returns using these jurats.

**IV.  There is legally insufficient evidence to sustain a judgment for garnishment because the claim was unliquidated and required a hearing.**

### A.  Standard of review.

The legal and factual sufficiency of evidentiary support for the amount of unliquidated damages may be challenged on restricted appeal. *See Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 180–81 (Tex.1993).

When a party not bearing the burden of proof on an issue challenges the legal sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the verdict giving "credit [to] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827–28 (Tex. 2005). Evidence is legally insufficient when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

"If a no evidence point is sustained as to unliquidated damages resulting from an uncontested, no-answer default judgment, the appropriate disposition is remand on the issue." *Arenivar v. Providian Nat'l Bank*, 23 S.W.3d 496, 498 (Tex. App.—

16

Amarillo 2000, no pet.).

**B.     Appellees' claim of garnishment against Kevin and Force Media is
unliquidated and unsupported by any written instrument.**

To determine whether there is evidence to support the damage award, courts
first determine whether the damages are liquidated or unliquidated. *Argyle Mech.,
Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 668 (Tex. App.—Dallas 2005, no pet.).
Liquidated claims can be calculated solely from the instrument sued upon and the
factual (not conclusory) allegations in the petition. *Tavarez v. Smith*, 2002 WL
31525282.

However, if liquidated claims are inadequately described in the plaintiff's
petition, they are considered unliquidated. *See id.*; *see also Arenivar*, 23 S.W.3d at
498. ("a seemingly liquidated claim may be unliquidated because of pleading
allegations that require proof for resolution.").

Here, Appellees' claims cannot be calculated solely from the application or
any attached document. At most, the affidavit states that Kevin confirmed that he
and/or Force Media "is holding money in his/its name at the request of Brian
Martin." Then, according to the affidavit, Kevin stated that "the amount of money
*on deposit* at [Chase Bank] . . . is in the *approximate amount* of [$300,000]." The
affidavit never alleges when Brian's request was made; how Kevin or Force Media
were to hold such money; or, importantly, how much of the $300,000 on deposit was
supposedly held at the request of Brian. Indeed, the application requested the Court

17

to "garnish all deposit accounts in the name of nominal owners Kevin Martin and Force Media, LLC," wholly failing to trace an accurate amount for garnishment. *See* C.R. at 42.

Likewise, the attached judgment against Brian and Holly is insufficient to sustain a claim of garnishment against Kevin and Force Media. Nothing in the judgment makes reference to Kevin, Force Media, the CraftTastic YouTube channel, or their accounts at Chase Bank. C.R. at 71–78. Beyond this judgment, Appellees never attached any additional written instruments that would accurately indicate the amounts Brian allegedly transferred to the accounts of Kevin and Force Media. *See generally*, C.R. at 64–83. Therefore, due to insufficient allegations in the application, as well as the complete absence of written instruments to support their garnishment action, the damages sought against Kevin and Force Media as alleged nominal owners is unliquidated. Writs of garnishment cannot be executed for unliquidated claims. *See In re Tex. Am. Exp., Inc.*, 190 S.W.3d at 725.

C.   **Appellees failed to provide evidence for their unliquidated damages unsupported by a written instrument.**

The record indicates that the court never held a hearing on unliquidated damages and that Appellees offered no evidence to this end. Generally, a court must hear evidence on unliquidated damages before a default judgment may be granted. *See Aavid Thermal Techs. of Tex. v. Irving Indep. Sch. Dist.*, 68 S.W.3d 707, 711 (Tex. App.—Dallas 2001, no pet.) (discussing Tex. R. Civ. P. 243); *see also*

18

*Arenivar*, 23 S.W.3d at 498.

Though Appellees attached documents to their pleadings, they never presented evidence at a hearing to substantiate their allegations. *See generally* 1 R.R.; 2 R.R. Exhibits attached to pleadings do not constitute evidence. *Longhorn Creed Ltd. v. Gardens of Connemara Ltd.*, 686 S.W.3d 418 (Tex. App.—Dallas 2024, pet. filed). The same is true for Chase Bank's pleaded request for attorney's fees, which was an inherently unliquidated claim that required an evidentiary hearing. *See Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 836 (Tex. App.—Dallas 2009, no pet.).

## CONCLUSION

For the foregoing reasons, Appellants request that this Court set aside the default judgment and dismiss the cause for lack of personal jurisdiction. In the alternative, Appellants request that this Court reverse the default judgment and remand for further proceedings. Appellants also request all relief, whether by law or equity, to which they are entitled.

November 14, 2024

Respectfully submitted,

**CLOUTHIER LAW, PLLC**

By: ___*/s/Susan J. Clouthier*___
Susan J. Clouthier
Tex. Bar No. 24062673
Tyler A. To
Tex. Bar No. 24140423

19

9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 77380
Tel: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorneys for Appellants**
**Nominal Owners Force Media, LLC and**
**Kevin Martin**

CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2024, a true and correct copy of Appellants' Brief was e-served to Appellees' counsel via e-file.

*/s/ Susan J. Clouthier*
Susan J. Clouthier

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i)(2) because this brief contains 4,116 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1). This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a conventional typeface using Microsoft Word 365 in Times New Roman font size 14.

*/s/ Susan J. Clouthier*
Susan J. Clouthier

20

**APPENDIX**

Modified Order Concerning Garnished Funds ......................................................22

Tex. Civ. Prac. & Rem. Code § 17.030 ...................................................... 25

Tex. Civ. Prac. & Rem. Code § 17.042 ...................................................... 27

Tex. R. App. P. 26.1 .................................................................................... 28

Tex. R. App. P. 30 ....................................................................................... 29

Tex. R. Civ. P. 21a ...................................................................................... 30

Tex. R. Civ. P. 107 ...................................................................................... 32

Tex. R. Civ. P. 243 ...................................................................................... 34

Tex. R. Civ. P. 501.4 ................................................................................... 35

Tex. R. Civ. P. 663 ...................................................................................... 37

NO. DC-22-03943

| | | |
|---|---|---|
| DAVID TYLER MOSS, et al. | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| vs. | § | |
| | § | 68th JUDICIAL DISTRICT |
| HOLLY BONE-MARTIN, et al., | § | |
| Defendants, | § | |
| | § | |
| JPMORGAN CHASE BANK, N.A. | § | |
| Garnishee | § | DALLAS COUNTY, TEXAS |

## MODIFIED ORDER CONCERNING GARNISHED FUNDS

THIS CAUSE is before the Court upon the Writ of Garnishment issued herein and served upon Garnishee JPMorgan Chase Bank, N.A.("Chase"), the First Amended Original Answer of Chase filed March 11, 2024 indicating that funds of the Nominal Owners Force Media, LLC and Kevin Martin (collectively "Nominal Owners") have been frozen and held in out-of-state accounts, and the Court's May 24, 2024 Judgment of Garnishment (the "Garnishment Order") directing that such funds be paid via check made payable to "West & Associates L.L.P. IOLTA" for the benefit of Plaintiffs/Judgment Creditors David Tyler Moss and Fidelissimus, LLC ("Judgment Creditors"), and Chase's Request for Clarification regarding whether Chase should comply with the Court's Garnishment Order in light of the Superior Court of the State of California for the County of Riverside entitled *Kevin Martin, et al. v. JP Morgan Chase Bank, N.A.*, Case No. CVRI2402841, and the CA Superior Court's June 3, 2024 order granting a Temporary Restraining Order, and the potential Preliminary Injunction to be decided by the CA Superior Court on June 24, 2024, enjoining Chase from disposing of the assets/funds in the Accounts, it is hereby:

**ORDERED** that Chase shall deposit into the registry of the Court $287,823.59 from Nominal Owner Force Media, LLC's account ending in 5271 and $419.60 from Nominal Owner

MODIFIED ORDER CONCERNING GARNISHED FUNDS – Page 1

22

366

Kevin Martin's account ending in 7768, for a total of $288,243.19 (collectively "Garnishment Funds") by close of business on June 25, 2024; it is further

**ORDERED** that Chase shall be held harmless with regard to the Garnishment Funds or any actions taken pursuant to or otherwise following this Order or the Garnishment Order; it is further

**ORDERED** that Chase is hereby discharged and released of all liability to Plaintiffs/Garnishors/Judgment Creditors David Tyler Moss and Fidelissimus, LLC ("Judgment Creditors"), Defendant/Judgment Debtors Holly Bone-Martin and Brian Martin, and Nominal Owners Force Media, LLC and Kevin Martin (collectively "Nominal Owners"), or any other claimants, regarding such actions, the Garnishment Funds or the bank accounts at issue; it is further

**ORDERED** that Chase is hereby discharged and released of any contempt of court in relation to the Superior Court of the State of California for the County of Riverside action entitled *Kevin Martin, et al. v. JP Morgan Chase Bank, N.A.*, Case No. CVRI2402841, and the CA Superior Court's June 3, 2024 order granting a Temporary Restraining Order, and the potential Preliminary Injunction to be decided by the CA Superior Court on June 24, 2024, enjoining Chase from disposing of the assets/funds in the Accounts; and it is further

**ORDERED** that Chase is dismissed from this action, with prejudice, with the Court retaining jurisdiction over Chase and the parties solely to enforce this Order.

MODIFIED ORDER CONCERNING GARNISHED FUNDS – Page 2

23

367

**THIS IS A FINAL ORDER.**

Date: 6-25-2024

_____
JUDGE PRESIDING
68TH DISTRICT COURT


Submitted by:

*/s/ Allison M. Stewart*
Allison Stewart

MODIFIED ORDER CONCERNING GARNISHED FUNDS – Page 3

24

368

# EXHIBIT 4

Electronically RECEIVED by Superior Court of California, County of Riverside on 05/31/2024 09:29 AM - Jason B. Galkin, Executive Officer/Clerk of the Court By Dallas Vitito, Clerk

KNEZ LAW GROUP, LLP
FRED J. KNEZ, ESQ. SBN 94038
ANDREW J. KNEZ, ESQ. SBN 296894
MATTHEW J. KNEZ, ESQ. SBN 303070
3890 10th Street
Riverside, CA 92501
Telephone: (951) 742-7681
Facsimile: (951) 742-7685
E-mail: matthewknez@knezlaw.com

Attorneys for Plaintiffs, KEVIN MARTIN and
FORCE MEDIA LLC

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 03 2024

C. Marias

JUN 04 2024

# SUPERIOR COURT OF THE STATE CALIFORNIA

# FOR THE COUNTY OF RIVERSIDE

| | |
|---|---|
| KEVIN MARTIN, an individual; and FORCE MEDIA LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> JP MORGAN CHASE BANK, N.A., dba CHASE, a National Association; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE No.: CVRI2402841 <br><br> [Proposed] ORDER <br><br><br><br> Date: June 3, 2024 <br> Time: 8:30 a.m. <br> Dept: 2 <br> Reservation ID: 849486340657 <br><br> Complaint filed: May 17, 2024 |

## [PROPOSED] ORDER

On June 3, 2024 at 8:30 a.m. in Department 2, this matter came upon hearing on Plaintiffs KEVIN MARTIN's and FORCE MEDIA LLC's *ex parte* application for temporary restraining order and order to show cause why preliminary injunction should not issue.

Having considered the application and supporting documents thereto, and good cause appearing, this Court orders as follows:

[Proposed] ORDER

1

1. Defendant JP MORGAN CHASE BANK, N.A., dba CHASE (hereinafter "CHASE) and all their respective agents, employees, and attorneys, are hereby enjoined from transferring, encumbering, cashing, borrowing against, charging against, or in any way disposing of the property held by CHASE from Plaintiffs' accounts with CHASE, until the preliminary injunction hearing and this Court issues a ruling on its Order to Show Cause Why a Preliminary Injunction Should Not Issue.

2. The Court schedules a hearing on the Application on _June 24, 2024_, at _8:30_ a.m. in Department _2_.

3. Defendants to file their respective oppositions to the Application by _June 10, 2024_

4. Plaintiff may reply by June 18, 2024

IT IS SO ORDERED.

DATED: _6/3/2024_                              _____
                                               Honorable Carol A. Greene

[Proposed] ORDER

2

NO. DC-22-03943

| | | |
|---|---|---|
| DAVID TYLER MOSS, et al. | § | IN THE DISTRICT COURT |
|     Plaintiffs, | § | |
| vs. | § | |
| | § | 68ᵗʰ JUDICIAL DISTRICT |
| HOLLY BONE-MARTIN, et al., | § | |
|     Defendants, | § | |
| | § | |
| JPMORGAN CHASE BANK, N.A. | § | |
|     Garnishee | § | DALLAS COUNTY, TEXAS |

**FINAL ORDER CONERNING GARNISHED FUNDS**

THIS CAUSE is before the Court upon the Writ of Garnishment issued herein and served

upon Garnishee JPMorgan Chase Bank, N.A.("Chase"), the First Amended Original Answer of

Chase filed March 11, 2024 indicating that funds of the Nominal Owners Force Media, LLC and

Kevin Martin (collectively "Nominal Owners") have been frozen and held in out-of-state

accounts, and the Court's May 24, 2024 Judgment of Garnishment (the "Garnishment Order")

directing that such funds be paid via check made payable to "West & Associates L.L.P. IOLTA"

for the benefit of Plaintiffs/Judgment Creditors David Tyler Moss and Fidelissimus, LLC

("Judgment Creditors"), and Chase's Request for Clarification regarding whether Chase should

comply with the Court's Garnishment Order in light of the Superior Court of the State of

California for the County of Riverside entitled *Kevin Martin, et al. v. JP Morgan Chase Bank,*

*N.A.*, Case No. CVRI2402841, and the CA Superior Court's June 3, 2024 order granting a

Temporary Restraining Order, and the potential Preliminary Injunction to be decided by the CA

Superior Court on June 24, 2024, enjoining Chase from disposing of the assets/funds in the

Accounts, it is hereby:

**ORDERED** that Chase shall pay via check made payable to "West & Associates L.L.P.

IOLTA" for the benefit of Plaintiffs/Judgment Creditors David Tyler Moss and Fidelissimus,

FINAL ORDER – Page 1

LLC ("Judgment Creditors") $287,823.59 from Nominal Owner Force Media, LLC's account ending in 5271 and $419.60 from Nominal Owner Kevin Martin's account ending in 7768, for a total of $288,243.19 (collectively "Garnishment Funds"), within the next ~~fourteen (14) days~~ **14 days** which shall be deemed compliance with the Garnishment Order; it is further

**ORDERED** that Chase shall be held harmless with regard to the Garnishment Funds or any actions taken pursuant to or otherwise following this Order or the Garnishment Order; it is further

**ORDERED** that Chase is hereby discharged and released of all liability to Plaintiffs/Garnishors/Judgment Creditors David Tyler Moss and Fidelissimus, LLC ("Judgment Creditors"), Defendant/Judgment Debtors Holly Bone-Martin and Brian Martin, and Nominal Owners Force Media, LLC and Kevin Martin (collectively "Nominal Owners"), or any other claimants, regarding such actions, the Garnishment Funds or the bank accounts at issue; it is further

**ORDERED** that Chase is hereby discharged and released of any contempt of court in relation to the Superior Court of the State of California for the County of Riverside action entitled *Kevin Martin, et al. v. JP Morgan Chase Bank, N.A.*, Case No. CVRI2402841, and the CA Superior Court's June 3, 2024 order granting a Temporary Restraining Order, and the potential Preliminary Injunction to be decided by the CA Superior Court on June 24, 2024, enjoining Chase from disposing of the assets/funds in the Accounts; and it is further

**ORDERED** that Chase is dismissed from this action, with prejudice, with the Court retaining jurisdiction over Chase and the parties solely to enforce this Order.

FINAL ORDER – Page 2

6/10/2024 3:38:23 PM

**THIS IS A FINAL ORDER.**

Date: __6/10/2024__

_____
JUDGE PRESIDING
68TH DISTRICT COURT

Submitted by:


_/s/ Truman E. Spring_____
Truman E. Spring
Attorney for Garnishee

FINAL ORDER – Page 3

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Truman Spring
Bar No. 18966550
tspring@springlawfirm.com
Envelope ID: 88600922
Filing Code Description: Non-Signed Proposed Order/Judgment
Filing Description: PROPOSED FINAL ORDER CONERNING
GARNISHED FUNDS
Status as of 6/10/2024 10:16 AM CST

Associated Case Party: DAVIDTYLERMOSS

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Craig Alan Capua | 3783950 | craig.c@westllp.com | 6/10/2024 8:36:09 AM | SENT |
| Dan Wyde | | wydelaw@gmail.com | 6/10/2024 8:36:09 AM | SENT |

Associated Case Party: FIDELLISIMUS, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Dan L.Wyde | | wydelaw@gmail.com | 6/10/2024 8:36:09 AM | SENT |

Associated Case Party: HOLLYSUSANBONE-MARTIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| HOLLY SUSANBONE-MARTIN | | contactfuturistichub@gmail.com | 6/10/2024 8:36:09 AM | SENT |

Associated Case Party: GOOGLE LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michael K.Hurst | | mhurst@lynnllp.com | 6/10/2024 8:36:09 AM | SENT |

Associated Case Party: BRIANDENNISMARTIN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| BRIAN DENNISMARTIN | | xbrianmartinx@gmail.com | 6/10/2024 8:36:09 AM | SENT |

# EXHIBIT 5

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiffs David Tyler Moss and Fidelissimus, LLC ("Plaintiffs"), by and through undersigned counsel, respectfully move this Court for an order compelling compliance with a subpoena issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016 to non-party Bitcoin Depot Operating, LLC.

## I. BACKGROUND

Plaintiffs are actively tracing concealed assets belonging to the bankruptcy estate of Debtor Brian Dennis Martin. Evidence has emerged confirming that the Debtor utilized third-party cryptocurrency kiosks to convert substantial amounts of cash into Bitcoin to evade creditors.

Specifically, documentary evidence reveals that on March 23, 2022, a Bitcoin Depot kiosk was used to purchase 0.27669341 Bitcoin using $14,100 in cash (transaction number: c34bb121cd). The very next day, on March 24, 2022, an additional 0.16822251 Bitcoin was purchased using $8,900 in cash (transaction number: 6182421d36). These transactions correspond to the cryptocurrency wallet addresses:

"bc1q6uxkjmgf8wcnvsf0q23aguwe27vsBmhhquupzd" and

"bc1q4l8vuzs3y8vnwarinpomejfjc5cmr89m8lyr92," respectively.

Communications linked to the Debtor explicitly reference these receipts and indicate that his mother facilitated the transaction, noting, "I got them from my mom I'm sending them now." *See* Ex. 3.

To trace the destination of this $23,000 in concealed cash, Plaintiffs caused a subpoena to be issued to Bitcoin Depot Operating, LLC on August 12, 2025. The subpoena was duly served via personal service upon Cogency Global Inc., Registered Agent for Bitcoin Depot, on August 13, 2025. *See* Ex. 1, Ex. 2.

The subpoena required the production of documents relating to the Debtor and specific transaction IDs, including Know Your Customer (KYC) identity records, camera/video logs from the

-2-

☰ 🏪 👥 🗔 🗉     Brandon ▦ ● ▼

**Brian Martin II**     📞 🎥 ⓘ

March 27, 2022 at 12:55 PM     Going to download now

Swell. Enjoy

Thank you sir! You can shoot those receipts to here probably easier than email

You bet. Alright I got them from my mom I'm sending them now. Poor her. She's been crying and running out of tears.

Thanks man that's nice of you to go out of your way to help the situation.

No worries, the owners of the m̲a̲r̲k̲e̲t should have protections in place. Your mom might be able to sue them

This person is unavailable on Messenger.

**Brian Martin II**

Customize chat

🔍 Search in conversation

Media & files

Privacy & support



**BITCOIN DEPOT**   Bitcoin Purchase

Date: 2022-03-23 10:06

Transaction ID: c34bb12ica

Address:
bc1q6uxkjmgf8wcnvsf0q23agu...e27vs8mnnaoup33

Exchange rate: 550945.92÷0.00007066 BTC fee

Cash tendered: 514100

Bitcoin purchased: 0.27669341

Kiosk operated by Bitcoin Depot

Phone support: 678-435-9604

Email support: support@BitcoinDepot.com

Website: BitcoinDepot.com

# Thank you



**BITCOIN DEPOT**  Bitcoin Purchase

Date 2022 03 24 16 32

Transaction ID 6182 42b6b6

Address
bc1q4l8vurs3y8vnwartnpomeljc5crrr89m8lyr9z

Exchange rate $52884 72 +0 0006807 |btc fee

Cash tendered $89 00

Bitcoin purchased 0 16822251

Kiosk operated by Bitcoin Depot

Phone support 678 435 9604

Email support support@BitcoinDepot com

Website BitcoinDepot com

## Thank you

# EXHIBIT 6

**Reversed and Rendered in part; Remanded in part and Opinion Filed
February 13, 2025**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00439-CV**

**HOLLY BONE-MARTIN AND BRIAN MARTIN, Appellants**
**V.**
**DAVID TYLER MOSS, ET AL., Appellees**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-09893**

## MEMORANDUM OPINION

Before Justices Goldstein and Breedlove[1]
Opinion by Justice Goldstein

Holly Bone-Martin and Brian Martin appeal the trial court's judgment

awarding David Tyler Moss and Fidelissimus, Inc. monetary awards, permanent

injunctive relief, and legal and equitable ownership of certain YouTube channels

and the videos contained on those channels.  In four issues, Holly and Brian argue

the trial court's judgment and permanent injunction must be vacated because

appellees' claims are barred by the statute of repose, the trial court lacked

---

[1] The Honorable Justice Carlyle was originally a member of this panel but did not participate in this
opinion because his term expired on December 31, 2024.

jurisdiction to divest Holly and Brian of their federal copyrights, the trial court lacked jurisdiction to assign ownership of the YouTube channels, and the evidence is legally insufficient to support the damages awarded to appellees. We conclude appellees' claims are not barred by the statute of repose, the trial court was preempted to the extent it transferred ownership of the copyrighted videos, and there was no evidence of damages on appellees' claims for civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction. We reverse and render judgment that appellees take nothing on those claims and remand for further proceedings consistent with this opinion.

### BACKGROUND[2]

On April 15, 2016, the United States District Court for the Northern District of Texas entered judgment against Brian and awarded appellees $18,600,000. On June 4, 2019, Holly and Brian were married in Collin County, Texas.

The record indicates that appellees filed the underlying case in July 2020, in what we discern is essentially a debt collection case.[3] On October 15, 2020, the trial

---

[2] The following facts are drawn from the second amended petition.

[3] This is not the first proceeding emanating from the underlying dispute. The Original Petition filed July 21, 2020, is the domesticated federal final judgment, and the docket sheet reflects consolidation of Judgment Creditors' filing of their Original Petition for Fraudulent Transfer, Application for Temporary Restraining Order, and Temporary and Permanent Injunction and Motion to Consolidate Cases on September 15, 2020. *See Bone v. Moss*, No. 05-21-00436-CV, 2022 WL 484312 *1 (Tex. App.—Dallas, February 17, 2022) (appeal and mandamus related to interlocutory orders in collection action of domesticated federal judgment).

court entered a temporary injunction restraining Holly and Brian from "withdrawing, receiving, disbursing, transferring, or otherwise disposing of any funds generated by the following YouTube Channels and their associated Google AdSense accounts:" FuturisticHub, CreamWorks Animations, Top Trends, and Blocktastic.  Brian had previously created approximately eighty Minecraft videos and uploaded them to the FuturisticHub YouTube channel between June 2018 and December 2020.

Holly and Brian were also enjoined from selling certain real property in Frisco, Texas, but Holly conveyed the property to JMC Property Group in November 2020.  In December 2020, Holly and/or Brian redirected the approximately eighty videos on the FuturisticHub YouTube channel to the WildCraft channel, which "'looks and feels' identical to the FuturisticHub channel."  Holly "appear[ed] to be the alleged owner of the WildCraft channel," but Holly and/or Brian "took the content which was on the FuturisticHub channel and redirected it to the WildCraft channel."

Also in December 2020, appellees served Google, the owner of YouTube, with a writ of garnishment seeking to "execute on all the monetization revenue from the videos which were on the FuturisticHub channel."  The garnishment, "to aid in the collection of the Judgment," resulted in Google depositing $290,947.46 into the registry of the court during February and March 2021.

In March 2022, appellees filed their second amended petition for fraudulent transfer and application for temporary restraining order and temporary and

–3–

permanent injunctions.  Appellees' petition alleged Brian "developed a scheme by placing his videos on the WildCraft channel which was not contained in the first Temporary Injunction Order."  The petition described the "scheme" as follows:

> on or about September 23, 2020, Holly Bone-Martin created Wild MC Limited, which is an United Kingdom company. Ms. Bone-Martin is the sole officer, director, and shareholder of this company.  The purpose of this new company is to transfer the videos/WildCraft channel from Holly Bone-Martin's name to Wild MC Limited.  Allegedly, all the monetization revenue of the videos on the WildCraft channel is received by Google and then paid to Elite Alliance, which is a multichannel network for Wild MC Limited. Then, the revenue is paid to Wild MC Limited.  This is another attempt by Brian D. Martin and Holly Bone-Martin to transfer the videos and the revenue therefrom to another entity in the event a judgment is awarded against her.

The petition alleged multiple fraudulent transfers: (1) transfers of videos from FuturisticHub to Wild MC Limited, (2) $710,863.80 transferred to Brian and FuturisticHub from Paypal and then "fraudulently diverted" from appellees in an unspecified manner, (3) the purchase of a home in Frisco by Holly using $339,984.98 transferred to Holly by Brian's mother and the subsequent sale of the home by Holly for $250,000, and (4) the creation of an August 2021 post-marital agreement between Holly and Brian that provided no community estate would arise during the remainder of their marriage.

In addition to the fraudulent transfer claims, the petition alleged claims of civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction.  The petition also sought declaratory judgment that:

all the property standing in the name of, claimed or possessed by Holly Bone-Martin as her separate property, or property acquired with community credit, including all the property described herein, is either the separate property of Brian D. Martin or the joint management, disposition, and control community property of Brian D. Martin and is subject to execution, turnover, and other remedies in aid of execution of the Judgment held by Judgment Creditors.

Following a three-day bench trial in April 2022, the trial court signed a judgment providing that appellee "shall recover and have a judgment entered against" Brian and Holly on appellees' claims for fraudulent transfers, civil conspiracy, aiding and abetting, conversion, common law fraud, and statutory fraud in a real estate transaction. The judgment awarded appellees each $4,563,980.04 from Brian and $2,808,662.87 from Holly. The judgment also ordered that the FuturisticHub, WildCraft Animations, CreamWorks Animations, Top Trends, and Blocktastic YouTube channels, the videos they contained, the content management system, content id, and Google AdSense accounts for all of the videos were immediately transferred to appellees, and appellees were given "legal and equitable ownership and title to" these channels, videos, systems, and accounts. The judgment further ordered that Holly's purported transfer of videos and assets to Wild MC Ltd. was void because it was a fraudulent transfer. Holly and Brian were also ordered to refrain from removing any videos from the named YouTube channels and to refrain from filing any copyright strikes, "BOT attacks," or "artificial BOT views" in an attempt to remove videos from the named YouTube accounts. This appeal followed.

**ANALYSIS**

–5–

## A.  Issue 1:  Statute of Repose:  TUFTA

In their first issue, Holly and Brian argue the trial court's judgment and permanent injunction must be vacated because appellees' claim is barred by the statute of repose.

The trial court entered judgment in favor of appellees on all their claims.[4]  The damages awarded on appellees claims for fraudulent transfers, civil conspiracy, aiding and abetting, conversion. common law fraud, and statutory fraud in a real estate transaction consisted of more than $14 million[5] and legal and equitable title to, and control of, the YouTube channels controlled by Holly and Brian, along with all the videos contained on those channels.

The purpose of the Texas Uniform Fraudulent Transfer Act (TUFTA) is to prevent debtors from prejudicing creditors by improperly moving assets beyond their reach. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015).  Under TUFTA,

---

[4] With the exception of the claimed fraudulent transfer of the Frisco home, appellees' claims were primarily based on the alleged fraudulent transfers surrounding the YouTube channels and video content. Appellees' civil conspiracy claim was based on an alleged conspiracy involving the YouTube channels and the revenue they generated.  The aiding and abetting claim alleged Holly assisted Brian in making unspecified "fraudulent transfers described herein."  The money had and received claim alleged it was "unjust and inequitable" for Holly and Brian to profit from their YouTube channels and to purchase and hold a property worth more than $300,000 when the underlying judgment remained unsatisfied.  The conversion claim alleged appellees had the right to possession of the funds earned from the YouTube channels at issue.  The common law fraud claim alleged fraud associated with the transfers of the YouTube channels.  Finally, appellees' claim of fraud in a real estate transaction related to the purchase and sale of the Frisco home, resulting in unspecified "injuries and damages" to appellees.

[5] It appears from the record that the 14 million awarded is over and above, separate and apart from, the original federal judgment debt of 18 million.

a transfer made with actual or constructive intent to defraud any creditor may be avoided to the extent necessary to satisfy the creditor's claims:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE § 24.005(a); *accord id.* § 24.006(a) (transfer is fraudulent as to present creditor if debtor is insolvent or made insolvent by a transfer and debtor did not receive reasonably equivalent value); *see also id.* § 24.008 (creditor remedies for fraudulent transfer).

TUFTA provides that an asset transferred with "actual intent to hinder, delay, or defraud" a creditor may be reclaimed for the benefit of the transferor's creditors unless the transferee "took [the asset] in good faith and for a reasonably equivalent value." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562 (Tex. 2016) (quoting TEX. BUS. & COM. CODE §§ 24.005(a)(1), .009(a)).

In TUFTA section 24.010, entitled "Extinguishment Of Cause Of Action," the Legislature has provided that:

> a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought . . . within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

*Id.* § 24.010(a)(1); *Nathan v. Whittington*, 408 S.W.3d 870, 872–73 (Tex. 2013).

Section 24.010 is a statute of repose, rather than a statute of limitations. *Nathan*, 408 S.W.3d at 874. "[W]hile statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time." *Id.* (citing *Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 287 (Tex. 2010) (quoting *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009)). Statutes of repose are of an "absolute nature," and their "key purpose . . . is to eliminate uncertainties under the related statute of limitations and to create a final deadline for filing suit that is not subject to any exceptions, except perhaps those clear exceptions in the statute itself." *Id.* (quoting *Rankin*, 307 S.W.3d at 286–87). Unlike statutes of limitations, which are intended primarily to encourage diligence on the part of plaintiffs, statutes of repose may serve other purposes and may run from some event other than when the cause of action accrued. *Id.*; *see Nelson v. Krusen*, 678 S.W.2d 918, 926 (Tex. 1984) (Robertson, J., concurring).

Holly and Brian had the burden to prove all elements of their affirmative defense of the statute of repose. *Walker v. Anderson*, 232 S.W.3d 899, 910 (Tex. App.—Dallas 2007, no pet.). Whether a fraudulent-transfer claim is extinguished

–8–

by the statute of repose ordinarily presents a question of fact for the fact-finder to resolve. *Id.* at 909. The issue can be resolved as a matter of law, however, if reasonable minds could not differ on the conclusion to be drawn from the facts in the record. *Id.*

Here, under the heading "Fraudulent Transfer 1," appellees' second amended petition alleged that Brian formed an entity called FuturisticHub, L.L.C. with the Texas Secretary of State on June 7, 2016. The petition also averred that the formation of this entity occurred "two months after" the $18 million federal court judgment and that Brian had already created a FuturisticHub YouTube channel in 2012. The petition alleged that, after Brian created the FuturisticHub, L.L.C. entity, he "continued posting videos, gained a significant following, and began earning significant revenue." In opening argument at trial, appellees' counsel stated that the June 7, 2016 date was "important" because it was "the beginning of Brian Martin attempting to protect his assets through videos." Significantly, the petition did not allege that a first fraudulent transfer occurred on June 7, 2016 when Brian formed the new legal entity, FuturisticHub, L.L.C. Instead, the petition alleged that the "animation style, voice acting, and subject matter of the videos posted on the FuturisticHub YouTube channel were the same or substantially similar to the videos which were later fraudulently redirected to the WildCraft channel on or about December, 2020." Although Holly and Brian argue that appellees' petition constituted a judicial admission that June 7, 2016 was the date of the "first transfer"

–9–

from which we calculate the four-year statute of repose, we conclude the record does not support this characterization.  Moreover, to the extent Holly and Brian suggest a first fraudulent transfer was the creation of FuturisticHub LLC, we know of no authority, and the parties have cited us to none, that supports the conclusion that the statute of repose as to Holly ran from that date.  Under these circumstances, we conclude the record does not reflect that Holly and Brian met their burden to prove all elements of their affirmative defense of the statute of repose.  *See id.*  We overrule Holly and Brian's first issue.

## B.  Issue 2:  Federal Copyright

In their second issue, Holly and Brian argue the trial court lacked jurisdiction to divest them of their federal copyrights.  Specifically, they complain of the trial court's award "divesting [Holly and Brian] of their federal copyrights of the Minecraft Videos [because they] fall within the scope of the exclusive rights set out in the Federal Copyright Act, thereby voiding the transfer in the final judgment."  Holly and Brian seek to void transfer of the copyright ownership as a matter of preemption but do not otherwise challenge the asserted causes of action as claims under copyright law.[6]  Appellees argue, and the trial court concluded, that the asserted state law claims do not arise under the Copyright Act.  There is no dispute, and we assume without deciding, that the videos are material subject to copyright

---

[6] In fact, Holly and Brian concede that the "Copyright Act does not preempt state law tort claims"; rather, they aver that the rights granted "fall within the exclusive rights of the scope of the Copyright Act."

–10–

protections.  We discern that the crux of the argument is whether the trial court had jurisdiction to determine the ownership of, and thereafter transfer exclusive rights to, the copyrighted material.  We conclude that the trial court lacked jurisdiction to divest Holly and Brian of ownership of the copyrighted material and transfer ownership to appellees.  We note that this is distinct from the trial court's ability to address monetization of the copyrighted asset for purposes of satisfying a judgment.

**Applicability of Federal Copyright Act to Ownership and Transfer Rights**

The Copyright Act provides in pertinent part that:

> (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.

28 U.S.C.A. § 1338.  The United States Constitution vests Congress with the exclusive authority to regulate copyrights and patents.  U.S. CONST. Art. I, § 8, cl. 8. Congress amended the Copyright Act in 1976 to clarify the relationship between the Act and state law:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

–11–

17 U.S.C. § 301(a). "Thus, § 301(a) preempts state law claims if the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Advance Mag. Publishers, Inc. v. Leach,* 466 F. Supp. 2d 628, 635 (D. Md. 2006) (quoting *Rosciszewski v. Arete Assocs.,* Inc., 1 F.3d 225, 229 (4th Cir.1993)).

The purpose of this statute is to prevent piecemeal litigation. *Rockwell Mfg. Co. v. Evans Enters.,* 95 F. Supp. 431, 433 (W.D.N.Y. 1950), *adhered to on reconsideration sub nom. Rockwell Mfg. Co. v. Evans Enters., Inc.,* No. 4592, 1951 WL 81537 (W.D.N.Y. Jan. 9, 1951)   The Fifth Circuit Court of Appeals has established a two-part test to determine if a state law claim is preempted: (1) whether the claim falls within the subject matter of copyright; and (2) whether the claim protects rights equivalent to any of the exclusive rights of a federal copyright. *Daboub v. Gibbons,* 42 F.3d 285, 288–89 (5th Cir. 1995). This inquiry requires a comparison of the nature of the rights protected under the Copyright Act with the nature of the state law rights being asserted. *Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772, 787 (5th Cir. 1999). A state law cause of action is equivalent to the rights granted by the Copyright Act if "the mere act of reproduction, distribution, or display infringes it." *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir. 1990). In other words, a state law claim is equivalent to federal copyright law rights if the elements of the state law cause of action would not establish

–12–

qualitatively different conduct by the defendant than the elements for an action under the Copyright Act. *Alcatel*, 166 F.3d at 787; *Daboub*, 42 F.3d at 290.

The core of almost all of appellees' claims against Holly and Brian were not equivalent to the enumerated rights set out in section 106 of the Copyright Act.[7] Specifically, the nature of appellees' state law claims,[8] without detailing the specific elements of each claim, do not involve the wrongful copying, distribution, or performance of Holly and Brian's videos. *See generally Butler v. Continental Airlines, Inc.*, 31 S.W.3d 642, 651 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (preemption of claims for conversion and misappropriation of macro computer programs). Section 301(a)'s express preemption of any state law granting equivalent rights to those set forth in section 106 does not apply to appellees' state law claims. *Daboub*, 42 F.3d at 289–90 (preempting state law claims for conversion and misappropriation of trade secrets); *see also Data Gen. Corp. v. Grumman Sys. Support Corp.*, 795 F. Supp. 501, 505 (D. Mass. 1992), *aff'd*, 36 F.3d 1147 (1st Cir. 1994) (conversion claim was preempted); *Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 295 (E.D. Tex. 1988) (claims for conversion and tortious interference with contract are preempted).

---

[7] Section 106 grants the holder of a copyright the exclusive right to reproduce, distribute, perform, and display the copyrighted work. 17 U.S.C. § 106 (1994 & Supp. IV 1998).

[8] Appellees' state law claims, aside from fraudulent transfer, include claims of civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction. We note without further discussion that, although a state law claim of conversion may implicate the Copyright Act, on the record before us the conversion claim relates to the real estate transaction and not the videos and, therefore, the conversion claim is not preempted.

–13–

This does not exhaust our inquiry.  As previously stated, section 301(a) preempts state-law claims if "the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Rosciszewsk*i, 1 F.3d at 229 (emphasis added) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985), cert. denied, 479 U.S. 820 (1986).  Here, the ownership rights transferred as a remedy under state law, the termination of Holly and Brian's interests in the videos, and the award of the videos to appellees were "exclusive rights within the scope of federal copyright" and were therefore preempted.  *See id.*

Section 201(e) of the federal copyright act, "which prohibits involuntary transfer of copyrights," provides:

> When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11.

17 U.S.C. § 201(e).  The legislative history of section 201(e) explains that "[t]he purpose of this subsection is to reaffirm the basic principle that the United States copyright of an individual author shall be secured to that author, and cannot be taken away by any involuntary transfer."  H.R. Rep. 94–1476, at 123 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5739.

The trial court in this case found that Holly and Brian had previously transferred the copyrighted videos to YouTube and/or Google:

The Court has heard evidence that the "individual author" of these videos transferred the videos in violation of the underlying judgment and to others who are not Brian D. Martin. Accordingly, §201(e) does not apply where the videos have previously been transferred voluntarily by Brian D. Martin. The Court ordering that Google take certain actions pertaining to "videos" on a YouTube channel solely pertain to property that is presently vested in Google and not the "individual author." Defendants Brian D. Martin and Holly Bone have already voluntarily transferred such exclusive rights to YouTube and have transferred related rights to other entities. Because some of these exclusive rights have been transferred by agreement, this Court may order the transfer of these rights.

The trial court determined section 201(e) was inapplicable to protect the copyrighted materials based upon the voluntary transfer. In their brief, appellees reassert that Brian and Holly previously transferred their "rights to the copyrighted material to YouTube." We conclude that the trial court lacked subject matter jurisdiction, as do we, to determine whether a voluntary transfer occurred in this case. To the extent the parties invite us to determine what might constitute a transfer in the context of uploading of videos to a virtual platform for purposes of copyright protection, we decline to do so based upon the exclusive jurisdiction of the federal courts. As this issue is not raised on appeal, we do not address the trial court's right to redirect monies generated from the channels pursuant to court order (garnishment) and to freeze or unfreeze the channels for purposes of restricting the exercise of control by Holly or the other defendants.

Based upon applicable authority, we conclude the trial court had no jurisdiction to determine the ownership of the videos and whether the purported transfer of videos to Google or another virtual platform was a "voluntary transfer"

–15–

under the Copyright Act.  Such determinations belong to the exclusive jurisdiction of federal courts.

Moreover, we find no authority to support the trial court's jurisdiction to permanently transfer legal and equitable title and ownership of the copyrighted videos from Holly and Brian to appellees.  We sustain Holly and Brian's second issue to the extent they argue that the trial court's award transferring legal and equitable title and ownership of the videos at issue was preempted by federal copyright law.[9]

## C. **Issue Three: Ownership of the YouTube Channels**

In their third issue, Holly and Brian assert that the trial court lacked subject matter jurisdiction to assign ownership of the YouTube channels because Holly and Brian never had ownership of the channels.   Holly and Brian do not assert copyright pre-emption for the channels; therefore, we conclude this is not a matter of subject matter jurisdiction.  Rather we discern from the argument that Holly and Brian challenge the trial court's ability to assign "ownership" of the identified channels. Holly and Brian argue that, under the YouTube terms of service, using the YouTube platform does not grant ownership rights to the channels themselves.  Specifically,

---

[9] To the extent the judgment and permanent injunction order that Brian and Holly desist and refrain from removing any videos from the channels, filing copyright strikes against any videos on the channels, filing any BOT attacks in an attempt to remove videos, filing any artificial BOT views in an attempt to remove videos, and filing any content id claims against the videos, we conclude that these actions may be consistent  with state law collection proceedings not subject to determination by the Copyright Act and therefore may not be pre-empted.

–16–

the YouTube terms of service provide that users retain ownership rights to content posted on YouTube, but YouTube retains exclusive rights to remove videos, indicating that users do not own the channels themselves.

YouTube's Terms of Service outlines the parameters of the relationship. The "Service" is defined collectively as "the YouTube platform and the products, services and features we make available to you as part of the platform." Google LLC is identified as the "entity providing the Service." Additional pertinent provisions are as follows:

> Content is the responsibility of the person or entity that provides it to the Service. YouTube is under no obligation to host or serve Content.

> With a Google account, you may be able to like videos, subscribe to channels, create your own YouTube channel, and more.

> Creating a YouTube channel will give you access to additional features and functions, such as uploading videos, making comments or creating playlists (where available).

> If you have a YouTube channel, you may be able to upload Content to the Service. You may use your Content to promote your business or artistic enterprise.

> You retain ownership rights in your Content. However, we do require you to grant certain rights to YouTube and other users of the Service, as described below [license to YouTube, License to Others, Right to Monetize].

> You grant to YouTube the right to monetize your Content on the Service (and such monetization may include displaying ads on or within Content or charging users a fee for access). This Agreement does not entitle you to any payments. Starting November 18, 2020, any payments you may be entitled to receive from YouTube under any other

–17–

agreement between you and YouTube (including for example payments under the YouTube Partner Program, Channel memberships or Super Chat) will be treated as royalties. If required by law, Google will withhold taxes from such payments.

Finally, YouTube provides "information to help copyright holders manage their intellectual property."

Holly's February 2022 response to appellees' application for a TRO and temporary injunction is consistent with the YouTube Terms of Service:

> To clarify the distinction between the ownership of the channels and the ownership of the videos, one might think of the channels as little TV stations, where the owner of the TV station can broadcast what the owner chooses to show. The fact that a show is on a television station, does not mean that the owner of the station owns the programs shown. The ability of the TV station to broadcast is governed by regulations and contractual arrangement. The ownership of the programs it shows is determined by copyright law.

> Similarly, the ability of a YouTube channel owner to show videos or other things is a matter governed by YouTube's Terms and Conditions. The ownership of the intellectual property shown on the channels is a matter of copyright law.

Based upon the record, there is no evidence that Holly or Brian owned the channels for purposes of transferring ownership as opposed to utilizing standard debt collection tools to reach nonexempt property in the hands of a non-party. It is clear from the record that the trial court and all parties understood the distinction between ownership of the videos, actual or constructive possession of the videos due to uploading, and the varying degrees of control over the uploaded videos as reflected

–18–

in prior orders and hearings involving nonparty Google and related entities.[10]

Regardless of Holly's and Brian's purported "ownership" interests in the YouTube

channels, it is clear that they are able to exercise control over the content, including

removing and transferring the videos, with the concomitant revenue stream, a

specific remedy sought by the injunction for fraudulent transfer.  However, the final

judgment inextricably intertwines the transfer of the content management system,

content id and Google AdSense Accounts with the legal and equitable ownership

and title to the videos.[11]  We sustain Holly and Brian's third issue to the extent they

argue the trial court erred in transferring their ownership interests in the subject

YouTube channels to appellees as the same are specifically tied to the transfer of

legal and equitable ownership and title to the videos.[12]

    D. **Issue Four: Damages**

---

[10] Google specifically sought clarification for the purpose of complying with the trial court's order granting the temporary injunction relative to freezing control of the channels pursuant to the order which enjoined Holly and Brian from "requesting transfer, effecting transfer, assisting in transfer or taking any action whatsoever to transfer ownership *or control"* of these channels." (emphasis in record).  Google explained "freezing" the channels "has prevented anyone from uploading or deleting content" on the channels, which subsequently caused a significant decrease in revenue "likely due to the lack of new content."  Further, while Google may be able to unfreeze the channels, the "systems were not designed for these types of modifications"; therefore, "technical issues could arise."  Google specifically advised that "[u]pon unfreezing the channels, Google might not be able to prevent [Holly or Brian] from receiving, disbursing, transferring, or otherwise disposing of any revenues generated by the [channels] and will not be able to prevent [Holly or Brian] from requesting transfer, effecting transfer, assisting in transfer, or taking any action whatsoever to transfer ownership or control of the [channels]."

[11] We do not address the issue of control over those channels for the purpose of receiving monies generated from the platforms.  As further addressed below, the trial court awarded purported tangible assets in the form of videos and video platforms without consideration of the limitation attributed to satisfaction of the judgment, monetary value of the asset, or monetization of the use of the asset.

[12] We do not, by sustaining issue number three, prevent the trial court from determining what constitutes monetization of the assets as opposed to the pre-empted divestment and transfer of ownership.

In their fourth issue, Holly and Brian argue the evidence is legally insufficient to support the damages awarded to appellees.  Specifically, they complain that appellees "failed to produce any evidence regarding the value of the disputed videos as required under TUFTA" and "failed to produce any evidence showing that they are entitled to monetary damages and ownership of the videos, and the district court improperly allowed a double recovery."[13]

When reviewing a case tried to the bench where findings of fact and conclusions of law have been entered, findings of fact have the same force and effect as jury findings.  *Buckeye Ret. Co., LLC v. Bank of Am., N.A.*, 239 S.W.3d 394, 399 (Tex. App.—Dallas 2007, no pet.).  The applicable standard of review is the same as that applied in the review of jury findings.  *Id.*  When an appellant attacks the legal sufficiency of an adverse finding for which it did not have the burden of proof, it must demonstrate there is no evidence to support the adverse finding.  *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 453 (Tex. App.—Dallas 2012, pet. denied).  Such a challenge fails if there is more than a scintilla of evidence to support the finding.  *Doyle*, 370 S.W.3d at 453.  Evidence does not exceed a scintilla if it is so weak as to do no more than

---

[13] In their fourth issue, Holly and Brian also argue that appellees "failed to produce any evidence showing they are entitled to 'lost profits' from the video revenue."  However, as the trial court's judgment, findings of fact, and conclusions of law do not address the issue of lost profits, we conclude we need not further address this issue.

create a mere surmise or suspicion that the fact exists. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006).

A creditor affected by a fraudulent transfer can seek equitable remedies under section 24.008 of the business and commerce code or money damages under section 24.009(b). TEX. BUS. & COM. CODE §§ 24.008, 24, 24.009(b); *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008) ("[T]he Act provides for equitable remedies to rescind the fraudulent transfer, or a damage assessment limited to the amount of the property transferred."). The equitable remedies allowed under section 24.008 are "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" (TEX. BUS. & COM. CODE § 24.008(a)(1)); "an attachment or other provisional remedy against the asset transferred or other property of the transferee" (§ 24.008(a)(2)); "an injunction against further disposition . . . of the asset transferred or of other property" (§ 24.008(a)(3)(A)); "appointment of a receiver" (§ 24.008(a)(3)(B)); "any other relief the circumstances may require" (§ 24.008(a)(3)(C)); or, if the creditor has obtained a judgment against the debtor, permission to "levy execution on the asset transferred or its proceeds" (§ 24.008(b)).

A creditor affected by a fraudulent transfer may seek money damages from the person for whose benefit the transfer was made, the first transferee, or any subsequent transferee who did not take it in good faith and for value. *Id.* § 24.009(b). The measure of damages is the lesser of "the amount necessary to satisfy the

–21–

creditor's claim" or "the value of the asset transferred . . . at the time of the transfer, subject to adjustment as the equities may require." *Id.* § 24.009(b), (c)(1).

The amount necessary to satisfy the creditor's claim is measured as of the time judgment is rendered under section 24.009(b), even if this amount is greater than or less than the amount that would have satisfied the creditor's claim at the time of the fraudulent transfer. *Citizens Nat'l Bank of Tex. v. NXS Construction, Inc.*, 387 S.W.3d 74, 90–91 (Tex. App.—Houston [14th Dist.] 2012, no pet). But the amount necessary to satisfy the creditor's claim includes only amounts necessary to satisfy the claim itself, not reimbursement for costs incurred in the course of pursuing the claim, such as court costs. *Id.*

Here, Holly was not a party to the federal litigation that resulted in appellees' $18 million judgment against Brian; she is not a judgment debtor. Liability against Holly is sought under appellees' numerous state law claims, including TUFTA. The record is unclear as to whether the damages assessed are for independent liability under the various state law claims or as a clawback of fraudulent transfers under TUFTA.

In their brief, Holly and Brian argue that appellees "wholly failed to present any evidence of the value of the videos" contained on the various YouTube channels and that such evidence was required under TUFTA regardless of the remedy elected by appellees. Holly and Brian cite the testimony of Brandon Keating, a manager of Fidelissimus who assigned to Fidelissimus his interest in the judgment against Brian,

–22–

that the FuturisticHub channel alone earned "approximately $1,080,000" each year. Keating testified that this calculation was based on Holly's testimony that "since April 15, 2016 to the present, that that channel was earning approximately $80- to $100,000 per month." Holly and Brian complain that this testimony constituted no evidence of the videos' fair market value, and the trial court's award of the videos "in addition to $14,745,285.80 in monetary damages" constituted a double recovery.[14] We agree.

There is no distinction made by the trial court between the monetary value of the videos and the monetization of the videos through income generation. It is clear from the record that the value was the monetization of the videos in that the trial court issued a writ of garnishment, an ex parte turnover order, and a temporary injunction under which Google deposited over $290,000 into the registry of the court. There is no evidence of the monetary value of the videos themselves; while the evidence relative to income generation is a scintilla, the procedurally correct tools for debt collection were not utilized. Keating's testimony regarding the approximate income produced by the FuturisticHub channel from April 2016 until the time of trial and for WildCraft for fifteen months was based solely on Holly's

---

[14] With regard to the monetization of the WildCraft channel, based upon Holly's trial testimony the channel earns "approximately $30,000 to $40,000 per month." Using an average of $35,000 per month to calculate economic damages concerning the WildCraft channel commencing January 2021, multiplied by 15 months, Keating confirmed he was asking the court to award "economic damages in the amount of "$525,000 concerning the WildCraft channel." Keating testified he was asking the court to award $6,480,000 from the FuturisticHub channel, in addition to damages for the sale of the house in the amount of $340,000, for an aggregate total of $7,345,000. Keating further requested that the email addresses and passwords be turned over and that Brian be enjoined from operating the five channels.

–23–

testimony and no other evidence. Assuming that Keating's testimony was some evidence of the income produced by the FuturisticHub and WildCraft channels during that relevant time, we conclude his testimony was no evidence of the fair market value of the videos themselves. At most, Keating's testimony is evidence that the videos on the FuturisticHub and WildCraft channels generated an income stream that appellees might have attempted to garnish in order to satisfy the judgment against Brian as they successfully garnished revenue from the videos on the FuturisticHub channel in February and March 2021. Without evidence of the videos' value, the trial court erred in permanently vesting ownership of the videos with appellees.[15] *See Hong*, 249 S.W.3d at 446 ("[T]he Act provides for equitable remedies to rescind the fraudulent transfer, or a damage assessment limited to the amount of the property transferred."). We agree with Holly and Brian that the award of the videos "in addition to $14,745,285.80 in monetary damages" constituted a double recovery, as the testimony was in the amount of $7,345,000 and the evidence was legally insufficient to support the damages awarded. *See id.*; *Doyle*, 370 S.W.3d at 453. Further, there is no evidence of the basis of the apportionment of damages between Holly and Brian, no evidence of the measure of damages as between the various legal theories asserted and combined in the damages awarded, and no distinction between the damages attributed to the equity clawback provisions under

---

[15] This holding does not negate the lack of subject jurisdiction over the determination of the ownership or transfer of the videos; rather, the damages analysis is purely to address legal insufficiency and double recovery.

TUFTA and the independent claims asserted.  In reaching this conclusion, we note that the absence of evidence of the independent damages herein awarded does not mean appellees are not entitled to collect on the underlying judgment. We sustain Holly and Brian's fourth issue.

## CONCLUSION

We overrule appellants' first issue, sustain the second issue to the extent we determine that the trial court lacked subject matter jurisdiction to award legal and equitable title of the videos, sustain the third issue to the extent that the trial court erred in transferring ownership interest in the YouTube channels to appellees, and sustain appellant's fourth issue that there was no evidence of damages to support an award based upon the state law claims.

We reverse the trial court's judgment, render judgment that appellees take nothing on their claims for civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction, and remand for further proceedings under the Texas Uniform Fraudulent Transfer Act consistent with this opinion.

/Bonnie Lee Goldstein//
BONNIE LEE GOLDSTEIN
JUSTICE

–25–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

| | |
|---|---|
| HOLLY BONE-MARTIN AND BRIAN MARTIN, Appellants | On Appeal from the 68th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-20-09893. |
| No. 05-22-00439-CV        V. | Opinion delivered by Justice Goldstein. Justice Breedlove participating. |
| DAVID TYLER MOSS, ET AL., Appellees | |

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED**, judgment is **RENDERED** that David Tyler Moss and Fidelissimus, Inc. take nothing on their claims for civil conspiracy, aiding and abetting, money had and received, conversion, common law fraud, and statutory fraud in a real estate transaction, and this cause is **REMANDED** for further proceedings under the Texas Uniform Fraudulent Transfer Act consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 13th day of February, 2025.

# EXHIBIT 7

Case No. 24-10848

# In the United States Court of Appeals
# for the Fifth Circuit

◆

DAVID TYLER MOSS; BRANDON KEATING,
PLAINTIFFS — APPELLEES

V.

BRIAN MARTIN,
DEFENDANT — APPELLANT

◆

On Appeal from the United States District Court
Northern District of Texas, Dallas Division
No. 3:14-cv-03088, the Honorable Barbara M. G. Lynn, Presiding

◆

**OPENING BRIEF OF APPELLANT**

◆

Clouthier Law, PLLC
Susan J. Clouthier
Tex. Bar No. 24062673
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 77380
Telephone: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Attorney for Appellant**
**Brian Martin**

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

District Judge:                    Barbara M. G. Lynn

Magistrate Judge:                  Rebecca Rutherford

Appellant:                         Brian Martin

Co-Defendant in trial court:       Marko Princip

Counsel for Appellant:             Susan J. Clouthier
                                   Clouthier Law, PLLC
                                   9950 Woodloch Forest Dr, Ste 1300
                                   The Woodlands, Texas 77380

Trial Counsel for Appellant:       Mazin A. Sbaiti
                                   Sbaiti & Company PLLC
                                   5307 E. Mockingbird Lane
                                   Fifth Floor
                                   Dallas, Texas 75206

                                   Adrian Edward Bower
                                   Bower PLLC
                                   1910 Pacific Ave, Suite 10700
                                   Dallas, TX 75201

                                   Robert D Wilson
                                   Law Office of Robert D Wilson PC

ii

1900 Preston Rd, Suite 267-72
Plano, TX 75093

Counsel for Appellee:  Daniel L Wyde
Wyde & Associates
10100 N Central Expressway
Suite 230
Dallas, TX 75231

Hunter A Nunn
The Law Office of Hunter A Nunn
PO Box 191385
Dallas, TX 75219

Ryan Rouz
Rouz & Associates PLLC
1111 South Akard Street #405
Dallas, TX 75215

Victor D. Vital
Haynes and Boone LLP
2801 N Harwood St
Suite 2300
Dallas, TX 75201

Read Hopkins Reily
Macdonald Devin PC
12270 Coit Road
Suite 1100
Dallas, TX 75251

*/s/ Susan J. Clouthier*
Susan J. Clouthier

iii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Brian Martin, respectfully requests oral argument. Although Appellant represents the facts and legal arguments are thoroughly presented in this brief and in the record, Appellant suggests that the decisional process of this Court would be significantly aided by oral argument. This case concerns a matter of first impression for this Court, namely, whether an attorney's wholly unauthorized representation of a client in a district court proceeding represents a fraud on the court as contemplated under Federal Rule of Civil Procedure 60(d). Appellant contends that discussing the facts and relevant precedent may shed further light upon the application of authority in this case. Accordingly, Appellant requests oral argument.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS......................................................ii

STATEMENT REGARDING ORAL ARGUMENT ...............................................iv

TABLE OF AUTHORITIES ...........................................................................vii

SUBJECT MATTER AND APPELLATE JURISDICTION ......................................1

STATEMENT OF THE ISSUES .......................................................................2

STATEMENT OF THE CASE...........................................................................2

    I.      Relevant facts and procedural history. ...............................2

    II.     Martin's Fed. R. Civ. P. 60(d) motion....................................8

    III.   United States Magistrate Judge's Findings, Conclusions,
         and Recommendation, and the District Court's Order
         Accepting Findings, Conclusions, and Recommendation. ..11

SUMMARY OF THE ARGUMENT ...............................................................14

ARGUMENT AND AUTHORITIES ..............................................................17

    I.      Standard of review.............................................................17

    II.     Wilson set into motion an unconscionable plan or scheme
         which was designed to improperly influence the district
         court in its decision, perpetrating a fraud on the court under
         Fed. R. Civ. P. 60(d). ........................................................18

    III.   Wilson's unauthorized actions demonstrate an injustice
         sufficiently gross to demand a departure from rigid
         adherence to the finality of the judgment. ..........................23

         A.    As a result of Wilson's actions, Martin was denied due

process of law. ...........................................................24

B.   Wilson never had the authority to represent Martin
and thus perpetrated a fraud on the court.................25

C.   Wilson's unauthorized representation of Martin
violated the Disciplinary Rules of Professional
Conduct. ...................................................................26

CONCLUSION....................................................................28

CERTIFICATE OF SERVICE....................................................30

CERTIFICATE OF COMPLIANCE ..............................................31

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apotex Corp. v. Merck & Co., Inc.*,
  507 F.3d 1357 (Fed. Cir. 2007) ...................................................................18

*Buck v. Thaler*,
  452 Fed. App'x 423 (5th Cir. 2011) .............................................................18

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) .........................................................................................20

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) .......................................................................................25

*Disabilities Advocacy Ctr. v. Melton*,
  521 F. Supp. 365 (D.N.H. 1981) ..................................................................27

*Doraleh Container Terminal SA v. Republic of Djibouti*,
  109 F.4th 608 (D.C. Cir. 2024) ....................................................................26

*Fierro v. Johnson*,
  197 F.3d 147 (5th Cir. 1999) ........................................................................19

*First Nat'l Bank of Louisville v. Lustig*,
  96 F.3d 1554 (5th Cir. 1996) ........................................................................19

*Fuentes v. Shevin*,
  407 U.S. 67 (1972) .........................................................................................25

*Gamble v. Webb*,
  806 F.2d 1258 (5th Cir. 1986) ......................................................................25

*Haskett v. W. Land Servs., Inc.*,
  761 Fed. App'x 293 (5th Cir. 2019) ........................................................18, 19

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,*
  322 U.S. 238 (1944) ................................................................20

*In re Rosenthal & Watson, P.C.,*
  612 B.R. 507 (Bankr. W.D. Tex. 2020) ..............................................26

*Jackson v. Thaler,*
  348 Fed. Appx. 29 (5th Cir. 2009)..............................................18, 19

*Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,*
  441 F.2d 631 (5th Cir. 1971) ......................................................19

*Maiz v. Virani,*
  311 F.3d 334,fn.5 (5th Cir. 2002)..................................................26

*Mercury Air Group, Inc. v. Mansour,*
  237 F.3d 542 (5th Cir. 2001)......................................................17

*Osborn v. Bank of the U.S.,*
  (1824) .............................................................................26

*Preyor v. Davis,*
  704 Fed. App'x 331 (5th Cir. 2017)............................................Passim

*Pueblo of Santa Rosa v. Fall,*
  273 U.S. 315 (1927).................................................................27

*Riley v. Wells Fargo Bank, N.A.,*
  815 Fed. App'x 808 (5th Cir. 2020).................................................17

*Rodriguez v. Bank of Am., N.A.,*
  693 Fed. App'x 376 (5th Cir. 2017).................................................17

*Rozier v. Ford Motor Co.,*
  573 F.2d 1332 (5th Cir. 1978)......................................................18

*Tollett v. City of Kemah,*
  285 F.3d 357 (5th Cir. 2002).......................................................17

*United States v. Throckmorton*,
  98 U.S. 61 (1878)................................................................15

*Wilson v. Johns-Manville Sales Corp.*,
  873 F.2d 869 (5th Cir.1989)..........................................19

**Statutes**

28 U.S.C. § 636(b)(1)........................................................12

28 U.S.C. § 1291 ................................................................1

28 U.S.C. § 1332(a) ............................................................1

**Rules**

Fed. R. App. P. 4.................................................................1

Fed. R. App. P. 32(a)(5) ...................................................32

Fed. R. App. P. 32(a)(6) ...................................................32

Fed. R. App. P. 32(a)(7)(B)(i).........................................32

Fed. R. Civ. P. 60(d)...................................................Passim

Fed. R. Civ. P. 60(d) (1) and (3).......................................8

Fed. R. Civ. P. 60(d)(3) ..............................................Passim

Tex. Discip. R. Prof. Cond. Rule 1.06(a)........................27

Tex. Discip. R. Prof. Cond. Rule 1.06(b)...................27, 28

## SUBJECT MATTER AND APPELLATE JURISDICTION

**Subject Matter Jurisdiction in the District Court**. The district court from which this appeal is taken had jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), commonly referred to as diversity jurisdiction.

**Jurisdiction in the Court of Appeals**. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Jurisdiction under this statute is proper because this appeal is from a final decision rendered and entered in the United States District Court for the Northern District of Texas on August 29, 2024. ROA.1830, 1845.

This appeal is timely under the provisions of Rule 4 of the Federal Rules of Appellate Procedure because the Final Order was entered on July 3, 2024, and the order denying Martin's Motion for Reconsideration of the Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge was entered on August 29, 2024, and the Notice of Appeal was filed on September 11, 2024. ROA.1830, 1845, 1883.

STATEMENT OF THE ISSUES

1. As a matter of first impression for this Court, the district court abused its discretion when it denied Appellant Brian Martin's Motion for Post-Judgment Relief Pursuant to Federal Rule of Civil Procedure 60(d), because Martin showed by clear and convincing evidence that a fraud had been perpetrated on the court when an attorney, unbeknownst to Martin, appeared without authorization on his behalf in district court and kept Martin in the dark as to the existence and nature of the lawsuit.

STATEMENT OF THE CASE

**I.    Relevant facts and procedural history.**

On August 27, 2014, Appellees David Tyler Moss and Brandon Keating filed their First Amended Petition and Application for Temporary Restraining Order in the District Court of the 191st Judicial District of Dallas County, Texas. ROA.33. In said Petition, Appellant Brian Martin was added as a defendant. ROA.34. The Petition alleged that Keating entered into a membership agreement with Marko Princip and other individuals and entities that entitled Keating to 30% of the ownership interest in a certain Game Guide, LLC. ROA.35-36. Further,

2

the Petition alleged that Moss and Princip entered into a partnership agreement; the partnership agreement allegedly provided that Moss would invest $1,500 in a VideoGames YouTube channel in return for 30% of the company. ROA.36-37. The Petition alleges that Moss later participated in a Skype conversation with Princip and Martin where Martin allegedly stated "[y]our contract is void." ROA.38.

Moss and Keating alleged various causes of action under the Petition, including common-law fraud, breach of fiduciary duty, breach of contract, conversion, and money had and received; however, the Petition does not make clear how Martin would be liable under any cause of action. *See generally* ROA.39-46.

At the time that Martin was brought in as a party under the First Amended Petition, Princip instructed Attorney Robert Wilson to "file a response" on behalf of Martin; further, Princip confirmed that "he would pay all of the fees." ROA.1751. On August 28, 2014, a Notice of Removal to Federal Court was filed by Wilson on behalf of Princip and Martin, removing the case to the United States District Court for the Northern District of Texas – Dallas Division. ROA.25-27.

However, at the time these actions were taken by Wilson on

3

Martin's behalf, Martin had not been served the Petition, had not received notice of the claim, and was wholly unaware of the litigation. ROA.1798. Martin never hired Wilson to represent him in any civil proceedings or any other matter. ROA.1798. Martin never sought or consented to Wilson's representation of him in this matter. ROA.1798. Martin did not sign and did not see any engagement agreement with Wilson or his firm. ROA.1798. Martin did not pay, or consent for any other party to pay, Wilson any consideration for Wilson or his firm to represent Martin. ROA.1798. Indeed, Wilson later admitted his "instruction in relation to the claim brought by Mr. Keating and others was from Marko Princip only" and that he "did not take instructions from Mr. Martin." ROA.1750-51. Further, Wilson admitted that he "did not, at any time, receive instruction(s) directly from Mr. Martin." ROA.1751.

Further, Wilson's unauthorized representation of Martin obscured a conflict between Martin and his putative co-defendant; namely, that Princip sold Martin 50% of the Videogames YouTube channel *after* allegedly already selling 60% of it to Moss and Keating. ROA.1823. Only after the conclusion of litigation did Martin discover that Wilson had been representing both Martin and Princip despite the conflict created

4

by the allegation that Princip had assigned away 60% of the Videogames Channel prior to his selling Martin 50% of it. ROA.1800. According to Martin, "[h]ad [he] known these facts, or that [he] was a named defendant, [he] would have retained [his] own counsel." ROA.1800. Further, Martin's obliviousness to Wilson's representation or the status of litigation prevented Martin from asserting his own claims in the case, whether in the form of counterclaims or crossclaims. *See* ROA.1802.

On October 10, 2014, Wilson filed a Status Report on behalf of Martin, in which Wilson indicated that Martin consented to a trial before a United States Magistrate Judge. ROA.167-69. However, Martin never gave such consent, and he never consented to waiving his right to a trial before the district judge. ROA.1798. On November 26, 2014, Wilson purported to sign a Joint Status Report, consenting to a trial before a Magistrate Judge "conditioned on Magistrate Stickney or Kaplan only." ROA.176-80. Again, at the time Wilson made this representation to the district court, Martin was unaware of the existence of the lawsuit and had "never heard of Judge Stickney, Judge Kaplan, or Robert Wilson." ROA.1798.

Wilson filed an Answer to Plaintiffs' Fist Amended Complaint on

5

September 11, 2015. ROA.567. Throughout the answer, Wilson made admissions and denials on behalf of Martin. ROA.567-602. However, Wilson admits that he did so without first speaking with Martin and receiving instructions from him. ROA.1751. These admissions were made without Martin's knowledge and included admissions that in fact were either false or beyond Martin's knowledge. ROA.1800. The admissions made by Wilson were not based on information conveyed by Martin to Wilson, either directly or indirectly. ROA.1802.

A Joint Settlement Status Report was filed with the district court on July 27, 2015. It was reported that the "[p]arties are in favor of attempting to settle this case through mediation and are in the process of scheduling with a private mediator." ROA.559-60. The district court entered an order requiring the parties to choose a mediator; the parties subsequently chose a mediator and filed their selection with the district court. ROA.562-63. The district court entered an Order of Referral For Mediation. ROA.565. The parties later attended mediation and were unable to reach settlement. ROA.603. However, throughout the entirety of the proceedings, Martin was unaware that Wilson was participating in settlement negotiations on his behalf. ROA.1799. Wilson did not inform

6

Martin of the court-ordered mediation, and Martin was not invited to participate. ROA.1799.

The case proceeded to a trial by jury on March 28, 2016. ROA.1888. At a pretrial conference, Wilson announced that he was present "on behalf of Marko Princip, Brian Martin, and other named Defendants." ROA.1891. However, up to the day the trial began, Martin was still unaware that he was a named defendant in the lawsuit. ROA.1799. Martin appeared at trial initially believing only that he would be called as a witness. ROA.1799. Prior to the commencement of trial, during the only communication that Martin had with Wilson, Wilson told Martin that Wilson would appreciate it if Martin appeared at trial as a witness. ROA.1799. Once Martin entered the courtroom, Wilson told him to "sit down and shut up." ROA.1799.

Wilson then proceeded to state to the jury that he represents Martin. ROA.1905. But during Martin's testimony, the following exchange took place:

Question: And yet Mr. Keating has sued you. Is that correct?

Martin: No; not at all.

Question: So you don't understand – Mr. Wilson hasn't explained to you that Mr. Keating has sued you and Mr.

7

Princip –

ROA.2295-96. Next, the following exchange took place:

> Question: Okay. Are you aware, as you sit here testifying today, that if the jury finds that Mr. Moss had a contract with Mr. Princip and you interfered with that contract, that you can be held liable? Are you aware of that?
>
> Martin: No.
>
> Question: That has never been explained to you.
>
> Martin: Never…

On April 15, 2016, the district court entered a Final Judgment against Martin and Princip jointly and severally in the amount of $18,600,000. ROA.1035-38.

## II.    Martin's Fed. R. Civ. P. 60(d) motion.

On September 20, 2023, Martin filed his Motion for Post-Judgment Relief Pursuant to Federal Rule of Civil Procedure 60(d). ROA.1725. Under the Motion, Martin requested relief from the April 15, 2016 judgment predicated on Federal Rule of Civil Procedure 60(d) (1) and (3). ROA.1729. Specifically, Martin argued that Attorney Robert Wilson perpetrated fraud on the court by falsely representing that he was Martin's attorney, and by taking unauthorized action on Martin's behalf. ROA.1729.

8

Martin argued that he did not receive service in either the original state court action or the removed federal litigation, and that instead Wilson agreed to accept service on Martin's behalf without Martin's knowledge or authorization. *See* ROA.1729-30. Further, Wilson removed the state court action to federal court without first engaging Martin and receiving his consent to take these actions. ROA.1730-31. Wilson additionally filed an answer and other pleadings on Martin's behalf, making case-determinative admissions and denials, all without Martin's knowledge or authorization. *See* ROA.1730-31. Martin also argued that Wilson waived Martin's right to a trial before a federal district court judge and consented to trial before a federal magistrate without first establishing communication with Martin or otherwise informing Martin of Wilson's representation. *See* ROA.1737.

Martin further argued that Wilson engaged in settlement negotiations on his behalf while Martin was still wholly ignorant of the ongoing litigation; indeed, Wilson attended a court-ordered mediation on Martin's behalf without informing Martin of the mediation and without making known the fact of his representation. ROA.1741-42. Wilson never presented Martin with any pleadings or discovery in the case. ROA.1743.

9

When finally informed of the impending jury trial, Wilson merely asked Martin to attend as a witness, obscuring the reality that Martin was a named defendant in the lawsuit. ROA.1743. At the commencement of trial, Wilson instructed Martin to "to sit down and shut up," and the trial proceeded to a multimillion-dollar verdict. *See* ROA.1743.

Based on the foregoing, Martin argued that Wilson willfully, intentionally, deliberately, and purposely set in motion an unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate the matter. ROA.1746. Further, Martin argued that Wilson's false and fraudulent statements and filings to the district court were directed to the presiding judge, and that the false and fraudulent statements and filings did, in fact, deceive the district court which resulted in, amongst other things, the district court issuing Martin's summons with Wilson's address on it, the district court asserting jurisdiction over Martin via improper service on Wilson, and a trial being conducted before a magistrate judge without the consent of all parties. ROA.1746. Martin urged the district court, under Rule 60(d)(3) of the Federal Rules of Civil Procedure, to set aside and vacate the April 15, 2016 judgment, and all such other orders and instruments as were

10

executed pursuant to the judgment in this case. ROA.1747.

Martin additionally requested the following relief: (1) an investigation, by a special master or otherwise, into the frauds asserted and/or established by Martin; (2) a hearing on the frauds asserted and/or established by Martin and/or the district court's investigation; (3) an order staying all collection proceedings and companion litigation relating to the April 15, 2016 judgment; (4) an order requiring all judgment creditors and successors who have collected amounts based in whole or in part on the existence of the April 15, 2016 judgment to deposit all such sums collected into the registry of the district court; (5) for such other relief as the district court deemed just. ROA.1747-48.

## III. United States Magistrate Judge's Findings, Conclusions, and Recommendation, and the District Court's Order Accepting Findings, Conclusions, and Recommendation.

On June 4, 2024, the Findings, Conclusions, and Recommendation of the United States Magistrate Judge was entered. ROA.1808. Because Judge Stickney had since retired from service as a United States Magistrate Judge, and no party consented to proceed before Judge Rutherford, Judge Rutherford accordingly issued Findings, Conclusions, and a Recommendation to the District Judge for the disposition of

11

Martin's Rule 60(d) motion under 28 U.S.C. § 636(b)(1). ROA.1811.

Judge Rutheford observed that to prevail on his Rule 60(d)(3) Motion, Martin had the burden to establish that there was fraud on the court by clear and convincing evidence; further, Judge Rutherford noted that fraud on the court is a "narrow concept" and "should embrace only the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner." ROA.1812-13 (citation omitted). Judge Rutherford ultimately found that Martin did not meet his burden to establish this class of fraud by clear and convincing evidence. ROA.1813. Specifically, Judge Rutherford found that Martin's evidence and accompanying argument did not establish that Wilson acted without Martin's authority and with an intent to defraud the district court. ROA.1814-15. Further, Judge Rutherford noted that Martin appeared and participated at trial and never objected that the court lacked jurisdiction over him or that Wilson lacked authority to represent him. ROA.1815. Lastly, Judge Rutherford observed that Martin did not cite any binding authority holding that an attorney taking actions on behalf of a party without direct instruction fits within the species of fraud which

12

would justify vacating a judgment under Rule 60(d)(3). ROA.1816.

Martin filed his Objections to Finding, Conclusion, and Recommendation of Magistrate on June 18, 2024. ROA.1818. Martin objected to the Recommendation as being erroneous and contrary to law and asked for review under a *de novo* standard. ROA.1822.

In his Objections, Martin argued that, because no response was filed, his own affidavit testimony was uncontroverted by anything outside the record; according to Martin, the Recommendation's silence as to Martin's affidavit testimony, coupled with the Recommendation's suggestion of no evidence, indicated that Martin's testimonial evidence was improperly given either no or inadequate weight. ROA.1822. Further, contrary to Judge Rutherford's claim that "there simply is no evidence of an unconscionable plan or scheme to purposefully misrepresent the nature of his attorney-client relationship to the court," Martin again argued that "Wilson's fraud kept the potential claims of a third plaintiff, Martin, out of the suit, and it allowed [Wilson's] real client, Princip, to have someone with whom to split the adverse judgment." ROA.1823. In response to Judge Rutherford's observation that "Martin voluntarily appeared and participated at trial," Martin

13

argued that the uncontroverted evidence shows that Martin appeared at trial only after being falsely convinced by Wilson that he would be appearing only as a witness and not as a defendant. ROA.1827.

On July 3, 2024, the district court entered its Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge. ROA.1830. The district court found that Martin did not establish a fraud on the Court by clear and convincing evidence. ROA.1831. Martin filed his Motion for Reconsideration of Order Accepting Findings, Conclusions, and Recommendation of United States Magistrate Judge on July 30, 2024. ROA.1834. The district court entered an order denying Martin's Motion for Reconsideration of the Order Accepting Findings, Conclusions, and Recommendation of the United States Magistrate Judge on August 29, 2024. ROA.1845.

### SUMMARY OF THE ARGUMENT

Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real

14

contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.

*United States v. Throckmorton*, 98 U.S. 61, 65–66 (1878).

Brian Martin's case is an extraordinary one. It also represents a matter of first impression for this Court concerning the breadth and reach of Federal Rule of Civil Procedure 60(d).

Here, an attorney, purporting to act on his behalf, kept Martin in the dark that he was a named defendant in a lawsuit up to the commencement of trial. While Martin was oblivious to the legal proceedings against him, the attorney accepted service on Martin's behalf (without informing Martin that he had been sued); made binding admissions to the district court on behalf of Martin (without first contacting or speaking with Martin); entered into settlement negotiations on Martin's behalf (without informing Martin that negotiations were underway); and ultimately represented Martin at trial (after asking Martin to appear at trial only as a witness). And, perhaps most gravely, the attorney took all these actions while simultaneously representing a co-defendant who appeared to have perpetuated the same alleged fraud on Martin that the co-defendant had allegedly perpetrated

15

on the plaintiffs.

Under Rule 60(d), a court may set aside a judgment for fraud on the court. Fraud on the court includes a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. It requires a showing of an unconscionable plan or scheme which is designed to improperly influence the court in its decision. Though no case yet directly holds so, it is nevertheless clear that an attorney's wholesale misrepresentation to a court that he has the authority to act on behalf of a litigant is the kind of fraud that is contemplated under the statute.

This is made all the clearer by the impact of the Attorney Rober Wilson's fraudulent representation of Martin. As a result of the Wilson's actions, Martin was denied due process of law; the fraud denied Martin due process because Martin received neither notice of the lawsuit nor a meaningful opportunity to be heard at trial. Further, it is axiomatic that no person has the right to appear as attorney for another without first receiving authority from the purported client; here, Wilson never had the authority to represent Martin and thus perpetrated a fraud on the court. Finally, by representing Martin alongside a co-defendant to whom

16

Martin was materially adverse, Wilson's unauthorized representation of Martin violated the Disciplinary Rules of Professional Conduct.

Because a fraud was perpetuated on the court as contemplated under Fed. R. Civ. P. 60(d)(3), Martin asks this Court to set aside and vacate the April 15, 2016 judgment, and all such other orders and instruments as were executed pursuant to the judgment in this case.

**ARGUMENT AND AUTHORITIES**

## I.      Standard of review.

This court reviews the denial of a Rule 60(d)(3) motion for abuse of discretion. *Riley v. Wells Fargo Bank, N.A.*, 815 Fed. App'x 808, 809 (5th Cir. 2020) (*citing Rodriguez v. Bank of Am., N.A.*, 693 Fed. App'x 376, 377 (5th Cir. 2017)). An abuse of discretion occurs where the "ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002) (*quoting Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001)). Whether relief should be granted based on fraud on the court under Rule 60(d) is committed to the sound discretion of the district court, and district courts are given wide discretion in denying such motions. *Buck v. Thaler*, 452 Fed. App'x 423, 431 (5th Cir. 2011) (*citing*

17

*Apotex Corp. v. Merck & Co., Inc.,* 507 F.3d 1357, 1361 (Fed. Cir. 2007);

*see also Jackson v. Thaler,* 348 Fed. Appx. 29, 34 n.6 (5th Cir. 2009)).

## II.    Wilson set into motion an unconscionable plan or scheme which was designed to improperly influence the district court in its decision, perpetrating a fraud on the court under Fed. R. Civ. P. 60(d).

Under Rule 60(d), a court may "set aside a judgment for fraud on

the court." *Haskett v. W. Land Servs., Inc.,* 761 Fed. App'x 293, 296–97

(5th Cir. 2019) (*quoting* Fed. R. Civ. P. 60(d)(3)). Rule 60(d)(3) functions

as a saving clause: it allows courts to "set aside a judgment for fraud on

the court" without a strict time bar. *Jackson,* 348 Fed. App'x at 34. A

fraud-on-the-court claim is "not subject to any time limitation." *Haskett,*

761 Fed. App'x at 297 (*citing Rozier v. Ford Motor Co.,* 573 F.2d 1332,

1337–38 (5th Cir. 1978)). Movants have the burden to establish that

there was fraud on the court by clear and convincing evidence. *Id.* (*citing*

*Kinnear-Weed Corp. v. Humble Oil & Ref. Co.,* 441 F.2d 631, 636 (5th Cir.

1971)).

Fraud under Rule 60(d)(3) "embraces the species of fraud which

does or attempts to defile the court itself." *Jackson,* 348 Fed. App'x at 34

(*quoting Wilson v. Johns-Manville Sales Corp.,* 873 F.2d 869, 872 (5th

Cir.1989) (cleaned up). To establish fraud on the court, it is necessary to

show an unconscionable plan or scheme which is designed to improperly influence the court in its discretion. *Fierro v. Johnson*, 197 F.3d 147, 154 (5th Cir. 1999) (*citing First Nat'l Bank of Louisville v. Lustig,* 96 F.3d 1554, 1573 (5th Cir. 1996)).

Fraud on the court includes "a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Preyor v. Davis*, 704 Fed. App'x 331, 340 (5th Cir. 2017) (*quoting Wilson*, 873 F.2d at 872). It "requires a showing of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id.* (*quoting Wilson*, 873 F.2d at 872). Courts should grant relief for fraud on the court to protect "the integrity of the courts," and to "fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence" to the finality of a judgment. *Id.* at 341 *(quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *also quoting  Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944)).

Here, it is clear that a fraud was perpetrated by Wilson, an officer of the court, so that the judicial machinery could not perform in the usual

19

manner in the underlying proceeding. As a result of Wilson's actions, an unconscionable plan or scheme was launched which was designed to improperly influence the court in its decision. Wilson acted as Martin's attorney for the entirety of the proceedings without informing Martin of the existence of the litigation or the nature of Wilson's activities. *See generally* ROA.1797-1805. As a result of Wilson's actions, Martin was never served the Petition, never received notice of the claim, and was denied a meaningful opportunity to defend himself and to be heard. *See* ROA.1798. Further, Wilson's unauthorized representation of Martin obfuscated a conflict between Martin and his co-defendant based on Princip selling to Martin 50% of the Videogames YouTube channel *after* already selling 60% of it to Moss and Keating. ROA.1823. Martin was therefore deprived of the opportunity to hire his own counsel to zealously defend his interests, and he lost the opportunity to assert both counterclaims and crossclaims in the litigation. *See* ROA.1880, 1802.

Additionally, Wilson consented to a trial before a United States Magistrate Judge without consulting Martin and receiving authorization to makes such a concession. ROA.167-69, 1798. Indeed, at the time Wilson waived Martin's right to a trial before a district court judge,

20

Martin was unaware of the existence of the lawsuit and had "never heard" of either the magistrate judges involved or Attorney Robert Wilson. ROA.1798. Wilson also filed an answer on Martin's behalf, making outcome-determinative admissions and denials on behalf of Martin. ROA.567-602. However, Wilson made these important representations without ever having spoken to Martin or receiving his authorization; indeed, many of the admissions were in fact false or beyond Martin's knowledge. ROA.1751, 1800, 1802.

Up to the very day the trial began, Martin was still unaware that he was a named defendant in the lawsuit. ROA.1799. Martin went to the trial only after being coaxed by Wilson that he would merely be appearing as a witness. ROA.1799. Once Martin entered the courtroom, Wilson told him to "sit down and shut up." ROA.1799. At trial, it is clear from Martin's sworn trial testimony that he was wholly unaware that he was a defendant in the suit.

A diligent search of this Court's caselaw found no cases that holds whether an attorney's unauthorized practice before a district court is the type of fraud contemplated under Fed. R. Civ. P. 60(d); thus, this a matter of first impression for this Court. However, it is clear that Wilson's

21

unauthorized activities fit within the general definition of "fraud on the court." Fraud on the court includes "a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Preyor*, 704 Fed. App'x at 340. Here, an officer of the court wholly mispresented his authority to act before the district court on behalf of his purported client; that officer filed papers with the court, moved the court for the appointment of a magistrate to hear the case, and made representations to the court about the status of settlement negotiations. The "judicial machinery" of the district court relied on its belief that Wilson had the authority to move the case forward on behalf of Martin during a time when Wilson did not in fact have such authority. Further, fraud on the court "requires a showing of an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Id*. And Wilson certainly embarked on such an unconscionable scheme when he appeared before the Court as an attorney for Martin when Wilson had been invested with no authority whatsoever to appear in that capacity.

Because Wilson perpetrated a fraud on the court as contemplated

22

under Fed. R. Civ. P. 60(d)(3), Martin asks this Court to set aside and vacate the April 15, 2016, judgment, and all such other orders and instruments as were executed pursuant to the judgment in this case.

### III. Wilson's unauthorized actions demonstrate an injustice sufficiently gross to demand a departure from rigid adherence to the finality of the judgment.

A review of Wilson's unauthorized activities shows that his conduct fits neatly into the definition of fraud on the court, entitling Martin to relief under Fed. R. Civ. P. 60(d). Further, though it is true that Fed. R. Civ. P. 60(d) covers fraud that is directed at the court, it is also true that courts should grant relief for fraud on the court to "fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence" to the finality of a judgment. *Preyor*, 704 Fed. App'x at 341.

Here, the effects and implications of Wilson's fraud on the court are far reaching. Though the issues discussed below do not in isolation represent fraud on the court, taken together they demonstrate an injustice sufficiently gross to demand a departure from rigid adherence to the finality of the April 15, 2016, judgment.

23

A.    **As a result of Wilson's actions, Martin was denied due process of law.**

"Procedural due process consists of notice and the opportunity to be heard." *Gamble v. Webb*, 806 F.2d 1258, 1261 (5th Cir. 1986) (*citing Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)). In 1972, the Supreme Court stated that "[f]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (cleaned up) (citations omitted). Further, the Supreme Court stated that it "is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Id.* (cleaned up) (citations omitted). "Procedural due process consists of notice and the opportunity to be heard." *Gamble*, 806 F.2d at 1261 (*citing Cleveland Bd. of Educ.,* 470 U.S. at 542).

Here, Wilson's fraud denied Martin due process because Martin received neither notice nor a meaningful opportunity to be heard. Wilson accepted service on Martin's behalf, but never notified Martin that he had done so or that a claim was pending against him. ROA.1729-30, 1798-99. Martin thus was denied proper notice in the underlying proceedings.

24

Further, Martin had "no email, letter, text, or phone communication with" Wilson prior to the case going to trial; indeed, Martin was still unaware that he was a defendant in the litigation when the trial commenced, believing he was only there to serve as a witness. ROA.1799. Martin had no opportunity to prepare for trial or successfully mount a defense; he thus was denied a meaningful opportunity to be heard.

### B.   Wilson never had the authority to represent Martin and thus perpetrated a fraud on the court.

An attorney's authority to represent his client "must indeed exist." *Doraleh Container Terminal SA v. Republic of Djibouti*, 109 F.4th 608, 613 (D.C. Cir. 2024) (*quoting Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 830 (1824)). "[A]n attorney does not have the authority to act on behalf of the purported client if the purported client did not hire the attorney to represent him." *Maiz v. Virani*, 311 F.3d 334, 341 fn.5 (5th Cir. 2002). It is "hornbook law that no person has the right to appear as attorney for another without first receiving authority from the purported client." *In re Rosenthal & Watson, P.C.*, 612 B.R. 507, 544 (Bankr. W.D. Tex. 2020) (citing *Maiz*, 311 F.3d at 341 fn.5; *Dev. Disabilities Advocacy Ctr. v. Melton*, 521 F. Supp. 365, 372 (D.N.H. 1981); *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315 (1927)).

25

Here, at all times throughout the entirety of the proceedings, Wilson acted as Martin's attorney without the authority to do so. *See* ROA.1797-1805. Wilson accepted service of process, filed responsive pleadings, made binding admissions with the district court, and entered into settlement negotiations, all without ever having been hired (or even contacted) by Martin. *See* ROA.1797-1805. The entirety of Wilson's unauthorized representation on behalf of Martin functioned as a fraud on the court, setting into motion an unconscionable plan or scheme designed to improperly influence the court in its decision. Martin is thus entitled to relief from the underlying judgment under Fed. R. Civ. P. 60(d).

**C.    Wilson's unauthorized representation of Martin violated the Disciplinary Rules of Professional Conduct.**

Under Rule 1.06(a) of the Texas Disciplinary Rules of Professional Conduct, "[a] lawyer shall not represent opposing parties to the same litigation." Further, under Rule 1.06(b), a lawyer shall not represent a person if the representation of that person "involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm," or "reasonably appears to be or become adversely limited

26

by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests." A lawyer may only represent a client in the circumstances contemplated under Rule 1.06(b) if "the lawyer reasonably believes the representation of each client will not be materially affected," and "each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any." Tex. Discip. R. of Prof. Cond. 1.06(c).

Here, Wilson represented both Martin and Princip when the two were essentially opposing parties in the litigation. Under the facts of the case, it appears that Princip sold Martin 50% of the Videogames YouTube channel *after* already selling 60% of it to Moss and Keating. ROA.1823. In essence, Martin was a victim of the same fraud allegedly perpetrated by Princip on Moss and Keating. According to Martin, "[h]ad [he] known these facts, or that [he] was a named defendant, [he] would have retained [his] own counsel." ROA.1800. Despite this obvious conflict, Wilson took it upon himself to represent both Martin and Princip. Further, as a result of Wilson's unauthorized representation, Martin lost the ability to both

27

defend his interests against Princip and to assert claims against Princip in the litigation.

Wilson never made "full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation" to Martin; indeed, Martin confirms that he "had no email, letter, text, or phone communication with Robert Wilson prior to the Federal Case going to trial." ROA.1799. Wilson himself admits that he "did not, at any time, receive instruction(s) directly from Mr. Martin." ROA.1759. Martin thus never consented to the adverse representation.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court' denial of Appellant's Motion for Post-Judgment Relief Pursuant to Federal Rule of Civil Procedure 60(d) and render an order: (1) setting aside and vacating the April 15, 2016, judgment, and all such other orders and instruments as were executed pursuant to the judgment in this case; (2) staying all collection proceedings and companion litigation relating to the April 15, 2016  judgment; (3) requiring all judgment creditors and successors who have collected amounts based in whole or in part on the existence of the April 15, 2016 judgment to deposit all such

28

sums collected into the registry of the district court; (4) for such other

relief as this Court deems just.

January 20, 2025

Respectfully submitted,

**CLOUTHIER LAW, PLLC**

/s/ Susan J. Clouthier
Susan J. Clouthier
Tex. Bar No. 24062673
9950 Woodloch Forest Dr, Ste 1300
The Woodlands, Texas 77380
Tel: (346) 443-4300
Fax: (346) 443-4343
susan@clouthierlaw.com

**Counsel for Appellant
Brian Martin**

## CERTIFICATE OF SERVICE

I certify that on January 20, 2025, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice of the filing to counsel for the Appellee.

I further certify that (1) the required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of paper copies of the foregoing document to the Clerk of Court when requested.

/s/ *Susan J. Clouthier*
Susan J. Clouthier

30

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 5,715 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook font size 14.

/s/ *Susan J. Clouthier*_____
Susan J. Clouthier

# EXHIBIT 8

 **Gmail**

M <xbrianmartinx@gmail.com>

## Request for Admissions to David Moss and Fidelissimus, LLC

1 message

**M** <xbrianmartinx@gmail.com>                                      Wed, Nov 26, 2025 at 10:13 PM
To: Mark Rosen <marksrosen@aol.com>, markrosen@markrosenlaw.com
Cc: Pattie Limon <pattielegalasst@aol.com>

Mr Rosen, and who it may concern,

Please see the attached documents I serve to you via email my Request for Admissions to your clients on this matter.

If your clients agree to answer these questions fully without delay - I will forego the protective order and I will fill out the documentation you sent to me.

Please let me know when you receive this email service, your clients have 30 days from the date you receive to bring me back all answered admissions. Every single admission has everything to do with the core issues of these cases and the debt that follows. any objections will be met with a severe response.

I will file a proof of service accordingly.

Thank you,

Kind regards
Brian Martin



**2 attachments**

📄 **Request Admissions First set FID Brandon Keating Signed.pdf**
277K

📄 **Request Admissions First set DTM Signed.pdf**
242K

IN THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF

CALIFORNIA RIVERSIDE DIVISION

**In Re BRIAN DENNIS MARTIN**

    **Debtor,**


**DAVID TYLER MOSS and FIDELISSIMUS, LLC,**

    **Plaintiffs,**

    **vs.**

**BRIAN DENNIS MARTIN,**

    **Defendant.**

Chapter 7 Case No. 6:25-bk-10944-MH
Adversary No.6:25-ap-0 I 055-RB

NOTICE FIRST SET REQUEST FOR ADMISSIONS TO DAVID TYLER MOSS

Date: November 26, 2025


# First Set of Request for Admissions to David Tyler Moss


NOW COMES Defendant, BRIAN DENNIS MARTIN ("Defendant") pro se, and hereby serve upon Plaintiff, DAVID TYLER MOSS ("Plaintiff" or "You"), the following Requests for Admission, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, as incorporated by Federal Rule of Bankruptcy Procedure 7036.

You are required to serve written responses to these Requests for Admission within thirty (30) days after service.

Failure to timely respond will result in each matter being deemed admitted under Rule 36(a)(3). Any matter deemed admitted shall be conclusively established against You for all purposes in this adversary proceeding, including but not limited to the claims for relief under 11 U.S.C. 523 and 723, allegations of fraudulent intent, concealment of assets, false oaths, and alter-ego liability as set

1

forth in the complaint.

**I. DEFINITIONS**

The following definitions apply to all Requests for admission:

**1. "You," "Your," or "Plaintiff"**

Means DAVID TYLER MOSS, a named Plaintiff in this adversary proceeding, including his attorneys on record (Mark S. Rosen and Van T. Tran), agents, and representatives.

**2. "Defendant"**

Means BRIAN DENNIS MARTIN, the named defendant in this adversary proceeding.

**3. "Complaint"**

Means the operative Adversary Complaint filed in this action, including any amendments, asserting claims under 11 U.S.C. 523 and 727 for concealment of assets, false oaths, fraudulent transfers, alter-ego liability, and related misconduct.

**4. "Subject Account"**

Means the Videogames YouTube channel. https://www.youtube.com/user/videogames

**5. "Dallas Lawsuit"**

Means the lawsuit in the 68th Judicial District Court, Dallas Texas, Case No. DC-20-09893

**6. "Collin County Lawsuit"**

Means the lawsuit in the 429th Judicial District Court, Collin County, Texas, Case No. 429-05678-2020 which resulted in a default judgment pertaining to a real estate claim made on property 12452 Cajun Drive, Frisco, Texas 75035.

**7. "Videogames Lawsuit"**

Means the lawsuit that was conducted in the Northern District of Texas, Dallas Division, Case No. 3:14-CV-03088-BF, which resulted in a judgment for $18,600,000 on April 15, 2016, following a federal jury trial on claims including fraud, breach of fiduciary duty, and conspiracy. The initial judgment that initiated the Collin County lawsuit and the Dallas Lawsuit for collection purposes.

## II. INSTRUCTIONS

The Following Instructions apply to every Request for admission:

1. Duty to Admit or Deny Under Rule 36

You are required to admit or deny each matter set forth below, in writing, within thirty (30) days of service, as required by rule 36 of the Federal Rules of Civil Procedure, made applicable through Bankruptcy Rule 7036.

Your response must be signed as required by Rule 26(g).

2. Failure to Respond = Admissions

Under Rule 36(a)(3), failure to timely respond will result in each matter being deemed

3

admitted and conclusively established for all purposes in this adversary proceeding, including but not limited to:

- concealment of assets under 727(a)(2),
- false oaths under 727(a)(4),
- fraud and willful injury under 523,
- alter-ego liability and fraudulent transfer allegations.

3. Requirements for any Denial (Rule 36(a)(4))

Your responses must comply with Rule 36(a)(4):

1. If you Deny a request, you must specifically deny the matter or set forth in detail why you cannot truthfully admit or deny it.
2. Any denial must fairly respond to the substance of the request.
3. If good faith requires a qualification or partial denial, you must specify the portion admitted and qualify or deny the remainder
4. You may assert lack of knowledge or information only if You state that You have made a reasonable inquiry and that the information known or readily obtainable is insufficient to admit or deny.

**4. No Evasion Through Lack of Information**

You may not claim lack of knowledge or information unless You affirmatively state that:

- You conducted a reasonable inquiry,
- You sought information from third parties with knowledge.
- And the information known or obtainable is still insufficient

**5. No Objection Based on "Issue for Trial"**

You may not object to any Request on the basis that it addresses a matter in dispute or presents an issue for trial. Rule 36 expressly prohibits such objections.

4

**6. Continuing Duty to Supplement**

These Requests are continuing in nature.

Under Rule 26(e), You must supplement your responses if You learned that an answer is incomplete, incorrect, misleading, or affected by newly discovered information, including:

- bank statements,
- foreign account activity,
- MCN payout records,
- YouTube/Adsense monetization data,
- or any asset transfers relating to this proceeding,

## III. REQUESTS FOR ADMISSION
### SECTION 1 – VIDEOGAMES YOUTUBE CHANNEL AND VIDEOGAMES LAWSUIT

1. Admit that Marko Princip and You entered into a partnership agreement for the Videogames YouTube channel.

2. Admit that You signed a contract/agreement with Marko Princip.

3. Admit that You did not sign any contract or agreement with Brian Martin.

4. Admit that You and Brian Martin never made any verbal agreements of any kind.

5

4B. Admit that Brian Martin contacted You as a manager for Videogames Channel in 2012 and not an owner or partner.

5. Admit that Marko Princip breached the Videogames agreement you made with him.

6. Admit that Brian Martin didn't breach any contract with you should one never have existed.

7. Admit that Brian Martin had no fiduciary duty toward you in any capacity.

8. Admit that you understood that Brian Martin was never your business partner or a partner in the Videogames channel.

9. Admit that you understood that Marko Princip was your business partner or a Partner in the videogames channel.

10. Admit that you know that there was never a four-way partnership between You, Brandon Keating, Marko Princip, and Brian Martin.

11. Admit that you never contacted Brian Martin between the year 2013 and up to the trial of the 2016 Videogames Lawsuit.

12. Admit that You gave Marko Princip $1500 to invest in the Videogames YouTube channel.

13. Admit that You never gave Brian Martin any investment or money when invested in the Videogames YouTube channel.

6

14. Admit that Marko Princip committed Fraud on You in the videogames channel

15. Admit that Brian Martin did not fraud You in the videogames YouTube channel

16. Admit that Brian Martin was being paid by Marko Princip, the owner of the Videogames YouTube channel.

17. Admit that Brian Martin never made an appearance from 2014 up until the trial of the 2016 lawsuit in any of the hearings for the Videogames Lawsuit.

18. Admit that the Videogames YouTube channel is and was not worth $18,600,000

19. Admit that the Videogames lawsuit jury charge of $18,600,000 was excessive.

20. Admit that from 2014-2016, the videogames channel has not made over $1,000,000

21. Admit that from 2014-2016, the videogames channel has not made over $2,000,000

22. Admit that Marko Princip paid Brian Martin for working on the Videogames channel knowing that Marko Princip was defrauding you.

23. Admit that you originally asked for a maximum of $1,000,000 in damages in the Videogames lawsuit

24. Admit that Marko Princip intentionally defrauded you knowingly causing you damages.

**SECTION 2 – DALLAS LAWSUIT**

25. Admit that you had no actual evidence who created the Futuristichub YouTube channel

26. Admit that YouTube stated that YouTube owns all YouTube channels on their platform

27. Admit that You had no actual evidence as to the value of the YouTube channels subject to the judgment of the Dallas Lawsuit.

28. Admit that you never have witnessed Brian Martin, Holly Bone Martin, or anyone creating videos for any YouTube channel subject to all these matters.

29. Admit that you can not determine the actual damage value of the Dallas Lawsuit.

30. Admit that the appeal from the Dallas Lawsuit gave you a take nothing judgment

31. Admit that a take nothing judgment means that the damage amounts are zero for the Dallas Lawsuit.

32. Admit that in the Dallas Lawsuit you made the same identical claims as you did in the Collin County Lawsuit.

33. Admit that the original judgment of the Dallas Lawsuit awarded you no money award for the same claim you made in the Collin County Lawsuit.

34. Admit that the appeal of the Dallas Lawsuit reversed and rendered the same real estate claim you made in the Collin County Lawsuit.

**SECTION 3 – COLLIN COUNTY LAWSUIT**

35. Admit that you filed the Collin County Lawsuit after you filed the Dallas Lawsuit.

36. Admit that the same claims you made in the Dallas Lawsuit are identical claims you made in the Collin County Lawsuit

37. Admit that you purposely obtained a default judgment in the Collin County Lawsuit knowing that you received nothing a month prior in the judgment for the Dallas Lawsuit for the same claim

38. Admit that you defrauded the court by receiving a favorable outcome in the Collin County default judgment knowing you received an unfavorable one in the Dallas Lawsuit one month before the default judgment of the Collin County Lawsuit

**SECTION 4 – FALSE OATHS AND BANKRUPTCY MISREPRESENTATIONS**

39. Admit that at the meeting of creditors you made a false allegation to the trustee of finding a cryptocurrency wallet in an English home.

40. Admit that your allegations of finding a cryptocurrency wallet in an English home lead to the trustee not receiving the property.

**SECTION 5 – YOUTUBE BUSINESS**

41. Admit that You have worked on YouTube as a job

42. Admit that You understand YouTube owns every channel on the Platform.

43. Admit that You know that YouTube has roles such as manager, editor, moderator, owner, primary owner.

44. Admit that a person can be hired to help run a YouTube channel but not have any ownership or interest

45. Admit that a person can create videos for any YouTube channel and still not own any part of the YouTube business.

46. Admit that You have no actual evidence that Kevin Martin or his business Force Media did not create the CraftTastic YouTube channel in 2023

47. Admit that Kevin Martin and Force Media, LLC sent you a cease and desist letter to stay away from their YouTube channel business.

48. Admit that You are not a witness to how Brian Martin works on YouTube

49. Admit that anyone is allowed to be hired to work for anyone when it comes to YouTube content.

50. Admit that at the meeting of Creditors, Brian Martin explained perfectly how YouTube jobs work to the Trustee.

51. Admit that You are aware that Brian Martin is capable of teaching anyone how to be successful on YouTube.

52. Admit that Kevin Martin has a right to open his own YouTube channel about anything he wants.

53. Admit that Kevin Martin has a right to hire anyone he wants to do anything for his YouTube channels.

54. Admit that Kevin Martin has a right to do what ever he desires with his YouTube channels

10

Dated: November 26, 2025

Respectfully Submitted,

/s/ Brian Dennis Martin

BRIAN DENNIS MARTIN

## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the foregoing motion for Clarification was served upon the following parties by the method indicated below on [11/26/2025]:

**MARK S. ROSEN**
Attorney at Law
27281 Las Ramblas, Ste. 200
Mission Viejo, California 92691
Tel:  (714) 285-9838
email: MarkSRosen@aol.com; markrosen@markrosenlaw.com

☐ By hand delivery

☐ By United States mail, postage prepaid

☐ By overnight delivery service

☐ By facsimile transmission

☒ By electronic mail

☐ By electronic filing through the Court's CM/ECF system

**Dated:**  November 26  , [2025]
**BRIAN DENNIS MARTIN**

Defendant in Pro Per

By: _____

                    BRIAN DENNIS MARTIN

11

IN THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF

CALIFORNIA RIVERSIDE DIVISION

**In Re BRIAN DENNIS MARTIN**

    **Debtor,**


**DAVID TYLER MOSS and FIDELISSIMUS, LLC,**

    **Plaintiffs,**

    **vs.**

**BRIAN DENNIS MARTIN,**

    **Defendant.**

Chapter 7 Case No. 6:25-bk-10944-MH
Adversary No.6:25-ap-0 I 055-RB

NOTICE FIRST SET REQUEST FOR ADMISSIONS TO FIDELISSIMUS, LLC

Date: November 26, 2025

# First Set of Request for Admissions to FIDELISSIUMUS, LLC

NOW COMES Defendant, BRIAN DENNIS MARTIN ("Defendant") pro se, and hereby serve upon Plaintiff, FIDELISSIMUS, LLC ("Plaintiff" or "You"), the following Requests for Admission, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, as incorporated by Federal Rule of Bankruptcy Procedure 7036.

You are required to serve written responses to these Requests for Admission within thirty (30) days after service.

Failure to timely respond will result in each matter being deemed admitted under Rule 36(a)(3). Any matter deemed admitted shall be conclusively established against You for all purposes in this adversary proceeding, including but not limited to the claims for relief under 11 U.S.C. 523 and 723, allegations of fraudulent intent, concealment of assets, false oaths, and alter-ego liability as set

1

forth in the complaint.

## I. DEFINITIONS

The following definitions apply to all Requests for admission:

**1. "You," "Your," or "Plaintiff"**

Means FIDELISSIMUS, LLC, including BRANDON KEATING, a named Plaintiff in this adversary proceeding, including his attorneys on record (Mark S. Rosen and Van T. Tran), agents, and representatives.

**2. "Defendant"**

Means BRIAN DENNIS MARTIN, the named defendant in this adversary proceeding.

**3. "Complaint"**

Means the operative Adversary Complaint filed in this action, including any amendments, asserting claims under 11 U.S.C. 523 and 727 for concealment of assets, false oaths, fraudulent transfers, alter-ego liability, and related misconduct.

**4. "Subject Account"**

Means the Videogames YouTube channel. https://www.youtube.com/user/videogames

**5. "Dallas Lawsuit"**

Means the lawsuit in the 68th Judicial District Court, Dallas Texas, Case No. DC-20-09893

2

**6. "Collin County Lawsuit"**

Means the lawsuit in the 429th Judicial District Court, Collin County, Texas, Case No. 429-05678-2020 which resulted in a default judgment pertaining to a real estate claim made on property 12452 Cajun Drive, Frisco, Texas 75035.

**7. "Videogames Lawsuit"**

Means the lawsuit that was conducted in the Northern District of Texas, Dallas Division, Case No. 3:14-CV-03088-BF, which resulted in a judgment for $18,600,000 on April 15, 2016, following a federal jury trial on claims including fraud, breach of fiduciary duty, and conspiracy. The initial judgment that initiated the Collin County lawsuit and the Dallas Lawsuit for collection purposes.

## II. INSTRUCTIONS

The Following Instructions apply to every Request for admission:

1. Duty to Admit or Deny Under Rule 36

You are required to admit or deny each matter set forth below, in writing, within thirty (30) days of service, as required by rule 36 of the Federal Rules of Civil Procedure, made applicable through Bankruptcy Rule 7036.

Your response must be signed as required by Rule 26(g).

2. Failure to Respond = Admissions

3

Under Rule 36(a)(3), failure to timely respond will result in each matter being deemed admitted and conclusively established for all purposes in this adversary proceeding, including but not limited to:

- concealment of assets under 727(a)(2),
- false oaths under 727(a)(4),
- fraud and willful injury under 523,
- alter-ego liability and fraudulent transfer allegations.

3. Requirements for any Denial (Rule 36(a)(4))

Your responses must comply with Rule 36(a)(4):

1. If you Deny a request, you must specifically deny the matter or set forth in detail why you cannot truthfully admit or deny it.
2. Any denial must fairly respond to the substance of the request.
3. If good faith requires a qualification or partial denial, you must specify the portion admitted and qualify or deny the remainder
4. You may assert lack of knowledge or information only if You state that You have made a reasonable inquiry and that the information known or readily obtainable is insufficient to admit or deny.

**4. No Evasion Through Lack of Information**

You may not claim lack of knowledge or information unless You affirmatively state that:

- You conducted a reasonable inquiry,
- You sought information from third parties with knowledge.
- And the information known or obtainable is still insufficient

**5. No Objection Based on "Issue for Trial"**

You may not object to any Request on the basis that it addresses a matter in dispute or presents an issue for trial. Rule 36 expressly prohibits such objections.

**6. Continuing Duty to Supplement**

These Requests are continuing in nature.

Under Rule 26(e), You must supplement your responses if You learned that an answer is incomplete, incorrect, misleading, or affected by newly discovered information, including:

- bank statements,
- foreign account activity,
- MCN payout records,
- YouTube/Adsense monetization data,
- or any asset transfers relating to this proceeding,

### III. REQUESTS FOR ADMISSION
#### SECTION 1 – VIDEOGAMES YOUTUBE CHANNEL AND VIDEOGAMES LAWSUIT

1. Admit that Marko Princip and You entered into a partnership agreement for the Videogames YouTube channel.

2. Admit that You signed a contract/agreement with Marko Princip.

3. Admit that You did not sign any contract or agreement with Brian Martin.

5

4. Admit that You and Brian Martin never made any verbal agreements of any kind regarding the Videogames YouTube Channel.

5. Admit that Brian Martin told you he was not interested in working with you in any business.

6. Admit that Marko Princip breached the Videogames agreement you made with him.

7. Admit that Brian Martin didn't breach any contract with you should one never have existed.

8. Admit that Brian Martin had no fiduciary duty toward you in any capacity.

9. Admit that you understood that Brian Martin was never your business partner or a partner in the Videogames channel.

10. Admit that you understood that Marko Princip was your business partner or a Partner in the videogames channel.

11. Admit that you know that there was never a four-way partnership between You, David Tyler Moss, Marko Princip, and Brian Martin.

12. Admit that you and Marko Princip made a partnership agreement in an email behind Brian Martin's back

13. Admit in a skype call with Brian Martin and Marko Princip that you were trying to obtain a three way partnership with Brian and Marko.

6

14. Admit that your proposal on a three-way partnership with Brian and Marko was behind David Tyler Moss' back.

15. Admit that You gave Marko Princip $1500 to invest in the Videogames YouTube channel.

16. Admit that You never gave Brian Martin any investment or money when invested in the Videogames YouTube channel.

17. Admit that Marko Princip committed Fraud on You in the videogames channel

18. Admit that Brian Martin did not fraud/scam You in the videogames YouTube channel

19. Admit that you said Brian Martin did not scam you in the videogames channel when you were on a live stream using the Videogames YouTube channel.

20. Admit that Brian Martin was being paid by Marko Princip, the owner of the Videogames YouTube channel.

21. Admit that in 2014, Brian asked to see your agreement with Marko Princip pertaining to the Videogames Channel

22. Admit that in 2014 when Brian asked to see your agreement with Marko Princip pertaining to the Videogames Channel that you refused to show Brian the contract.

23. Admit that Brian Martin never made an appearance from 2014 up until the trial of the 2016 lawsuit in any of the hearings for the Videogames Lawsuit.

7

24. Admit that you were aware that Marko Princip may be keeping important information about the videogames lawsuit from Brian Martin.

25. Admit that the Videogames YouTube channel is and was not worth $18,600,000

26. Admit that the Videogames lawsuit jury charge of $18,600,000 was excessive.

27. Admit that you created a video stating that you and David Tyler Moss originally asked for $1,000,000 in damages in the Videogames lawsuit but due to the contempt of Brian Martin's behavior at the trial the jury added excessive charges.

28. Admit that from 2014-2016, the videogames channel has not made over $1,000,000

29. Admit that from 2014-2016, the videogames channel has not made over $2,000,000

30. Admit that Marko Princip paid Brian Martin for working on the Videogames channel knowing that Marko Princip was defrauding you.

31. Admit that you originally asked for a maximum of $1,000,000 in damages in the Videogames lawsuit

32. Admit that Marko Princip intentionally defrauded you knowingly causing you damages.

**SECTION 2 – DALLAS LAWSUIT**

33. Admit that you had no actual evidence who created the Futuristichub YouTube channel

34. Admit that YouTube stated that YouTube owns all YouTube channels on their platform

35. Admit that You had no actual evidence as to the value of the YouTube channels subject to the judgment of the Dallas Lawsuit.

8

36. Admit that you never have witnessed Brian Martin, Holly Bone Martin, or anyone creating videos for any YouTube channel subject to all these matters.

37. Admit that you can not determine the actual damage value of the Dallas Lawsuit.

38. Admit that the appeal from the Dallas Lawsuit gave you a take nothing judgment

39. Admit that a take nothing judgment means that the damage amounts are zero for the Dallas Lawsuit.

40. Admit that in the Dallas Lawsuit you made the same identical claims as you did in the Collin County Lawsuit.

41. Admit that the original judgment of the Dallas Lawsuit awarded you no money award for the same claim you made in the Collin County Lawsuit.

42. Admit that the appeal of the Dallas Lawsuit reversed and rendered the same real estate claim you made in the Collin County Lawsuit.

**SECTION 3 – COLLIN COUNTY LAWSUIT**

43. Admit that you filed the Collin County Lawsuit after you filed the Dallas Lawsuit.

44. Admit that the same claims you made in the Dallas Lawsuit are identical claims you made in the Collin County Lawsuit

45. Admit that you purposely obtained a default judgment in the Collin County Lawsuit knowing that you received nothing a month prior in the judgment for the Dallas Lawsuit for the same claim

46. Admit that you defrauded the court by receiving a favorable outcome in the Collin

9

County default judgment knowing you received an unfavorable one in the Dallas Lawsuit one month before the default judgment of the Collin County Lawsuit

**SECTION 4 – FALSE OATHS AND BANKRUPTCY MISREPRESENTATIONS**

47. Admit that at the meeting of creditors you made a false allegation to the trustee of Brian Martin purchasing two mobile homes in the State of California

48. Admit that your allegations of Brian Martin purchasing two mobile homes were false.

**SECTION 5 – YOUTUBE BUSINESS**

49. Admit that You have worked on YouTube as a job

50. Admit that You understand YouTube owns every channel on the Platform.

51. Admit that You know that YouTube has roles such as manager, editor, moderator, owner, primary owner.

52. Admit that a person can be hired to help run a YouTube channel but not have any ownership or interest

53. Admit that a person can create videos for any YouTube channel and still not own any part of the YouTube business.

54. Admit that You have no actual evidence that Kevin Martin or his business Force Media did not create the CraftTastic YouTube channel in 2023

55. Admit that Kevin Martin and Force Media, LLC sent you a cease and desist letter to stay away from their YouTube channel business.

56. Admit that you were aware Kevin Martin was drunk when you were having discussions with him on a recorded call.

57. Admit that You are not a witness to how Brian Martin works on YouTube

58. Admit that anyone is allowed to be hired to work for anyone when it comes to YouTube content.

58. Admit that at the meeting of Creditors, Brian Martin explained perfectly how YouTube jobs work to the Trustee.

51. Admit that You are aware that Brian Martin is capable of teaching anyone how to be successful on YouTube.

52. Admit that Kevin Martin has a right to open his own YouTube channel about anything he wants.

53. Admit that Kevin Martin has a right to hire anyone he wants to do anything for his YouTube channels.

54. Admit that Kevin Martin has a right to do what ever he desires with his YouTube channels

55. Admit that You asked Brian Martin to teach you how to make money on YouTube because you know he is knowledgeable to teach anyone.

11

**SECTION 6 – LLC OPERATIONS**

56. Admit that you did not legally transfer interest in any judgment subject to this proceeding to Fidelissimus, LLC

57. Admit Fidelissimus, LLC is the Alter-ego of Brandon Keating alone.

Dated: November 26, 2025

Respectfully Submitted,


/s/ Brian Dennis Martin

BRIAN DENNIS MARTIN

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion for Clarification was served upon the following parties by the method indicated below on [11/26/2025]:

**MARK S. ROSEN**
Attorney at Law
27281 Las Ramblas, Ste. 200
Mission Viejo, California 92691
Tel:  (714) 285-9838
email: MarkSRosen@aol.com; markrosen@markrosenlaw.com

☐ By hand delivery

☐ By United States mail, postage prepaid

☐ By overnight delivery service

☐ By facsimile transmission

☒ By electronic mail

☐ By electronic filing through the Court's CM/ECF system

**Dated:**  November 26   , [2025]

**BRIAN DENNIS MARTIN**

Defendant in Pro Per

By: _____

BRIAN DENNIS MARTIN

13

# EXHIBIT 9

 **Gmail**

M <xbrianmartinx@gmail.com>

---

## Request for Admissions to David Moss and Fidelissimus, LLC

1 message

---

**M** <xbrianmartinx@gmail.com>                                       Wed, Nov 26, 2025 at 10:13 PM
To: Mark Rosen <marksrosen@aol.com>, markrosen@markrosenlaw.com
Cc: Pattie Limon <pattielegalasst@aol.com>

Mr Rosen, and who it may concern,

Please see the attached documents I serve to you via email my Request for Admissions to your clients on this matter.

If your clients agree to answer these questions fully without delay - I will forego the protective order and I will fill out the documentation you sent to me.

Please let me know when you receive this email service, your clients have 30 days from the date you receive to bring me back all answered admissions. Every single admission has everything to do with the core issues of these cases and the debt that follows. any objections will be met with a severe response.

I will file a proof of service accordingly.

Thank you,

Kind regards
Brian Martin

---

**2 attachments**

 **Request Admissions First set FID Brandon Keating Signed.pdf**
277K

 **Request Admissions First set DTM Signed.pdf**
242K

 M <xbrianmartinx@gmail.com>

## Re: Request for Admissions to David Moss and Fidelissimus, LLC

1 message

**M** <xbrianmartinx@gmail.com>                                     Mon, Jan 12, 2026 at 1:54 PM
To: Mark Rosen <marksrosen@aol.com>, markrosen@markrosenlaw.com, Pattie Limon <pattielegalasst@aol.com>

Dear Firm,

After repeated requests and your clients unwillingness to participate, I will be writing a declaration to the judge about everything and the non communication. This case is serious, and when you or your clients think its a thing to mock that is when I get angry. I will not allow this. I have asked repeatedly for communication and cooperation. Your clients admissions requests are past due as of December 26th, this is not acceptable. These failed communications will be stated to the judge. I will give your firm to the end of the day to respond with an update on these admissions or I will file a declaration to the court tonight.

Thank you

Regards
Brian Martin

On Tue, Jan 6, 2026 at 4:43 PM M <xbrianmartinx@gmail.com> wrote:

Mr Rosen,

I will writing a letter to the court explaining the lack of communication and you and your clients unwillingness to participate in the case to the fullest extent. I will give you a chance to respond to my requests. Your clients' admissions are past due. When will I be receiving them?

On Mon, Dec 29, 2025 at 12:27 PM M <xbrianmartinx@gmail.com> wrote:

Mr Rosen,

Due to the holidays do your clients and firm need more time to submit these back to me? I am currently looking to file a notice of deposition to Robert Wilson for January 26, 2026 at 10am PST. A subpoena will be filed as well and served to the Deponent.

Please respond back with your scheduling on when I can receive the finished admissions or I will need to compel your clients to return them or depose them fully.

Thank you,

Kind regards
Brian Martin

On Fri, Dec 26, 2025 at 3:45 PM M <xbrianmartinx@gmail.com> wrote:

Mr Rosen

Your clients admissions are due today. Failure to do them will result in motion to compel

On Wed, 26 Nov 2025 at 22:13, M <xbrianmartinx@gmail.com> wrote:

Mr Rosen, and who it may concern,

Please see the attached documents I serve to you via email my Request for Admissions to your clients on this matter.

If your clients agree to answer these questions fully without delay - I will forego the protective order and I will fill out the documentation you sent to me.

Please let me know when you receive this email service, your clients have 30 days from the date you receive to bring me back all answered admissions. Every single admission has everything to do with the core issues of these cases and the debt that follows. any objections will be met with a severe response.

I will file a proof of service accordingly.

Thank you,

Kind regards
Brian Martin

 Gmail

**M <xbrianmartinx@gmail.com>**

---

## Re: Request for ADMISSIONS
1 message

---

**M <xbrianmartinx@gmail.com>**      Fri, Jan 30, 2026 at 12:56 PM
To: Mark Rosen <marksrosen@aol.com>, markrosen@markrosenlaw.com

I am going to need your response or I will let the court know you are hiding evidence

Thank you

On Wed, Jan 28, 2026 at 10:39 AM M <xbrianmartinx@gmail.com> wrote:

> Mr. Rosen,
>
> Per our previous call you stated that your clients turned in their admissions request. I was happy to hear this. You stated they had to be converted. Has this been done and do you have an approximate date I am going to receive these in the format you are trying to achieve? I would think this should be in word format as they sent them to you so i'm unclear how these need to be converted. (I am a computer literate person)
>
> I enjoyed the hearings yesterday and look forward to fighting you in this case and moving forward. Though I would prefer your clients to offer a more reasonable settlement and we can all move on without further damages and potentially future damages upon your clients. They are free to submit any settlement ideas to you and you may send them to me for discussion. During the meet and Confer I will outline a little more in detail what I thought of your responses on the hearing yesterday and why the protective order must be issued.
>
> Thank you,
>
> Kind regards
> Brian Martin

 **Gmail**

M <xbrianmartinx@gmail.com>

## Inquiry from BRIAN MARTIN

1 message

**M** <xbrianmartinx@gmail.com>                                               Tue, Mar 17, 2026 at 10:05 AM
To: Pattie Limon <pattielegalasst@aol.com>

Pattie,

Court orders don't seem to matter to Mr Rosen it seems. I have tried to reach out countless times to get communication underway and a meet and confer. Rosen has failed to acknowledge this. Does he think my life and this bankruptcy case that he filed inappropriately is a joke?

I am not going to tolerate this. You or him must respond immediately before I inform the court that this firm is not following court orders that should be followed.

Also there is a matter to discuss about Carolyn Martin (Who I do not represent or have control over) those orders against her are improper and must be discussed.

Also, the request for information is long over due. I need the request for production and the admissions on my desk now.

Please respond, because Rosen is not and this is not how this case is going to be handled. If he can't handle it then he should step away and have someone else handle it.

Kind regards
Brian Martin

 Gmail

M <xbrianmartinx@gmail.com>

## Re: Admissions Request and Fidelissimus LLC judgment transfer

1 message

**M** <xbrianmartinx@gmail.com>                                     Tue, Apr 14, 2026 at 5:13 PM
To: Mark Rosen <marksrosen@aol.com>, markrosen@markrosenlaw.com

Please see attached second request for productions on Plaintiff Fidelissimus LLC. I will need these documents for discovery purposes on the legitimacy of the LLC as judgment creditor having a right to bring any suits. I am requiring the Admissions request I made and the production of these documents. If this is not completed I will need to file a motion to compel with the court on May 15, 2026

Thank you

Kind regards
Brian Martin

On Tue, Apr 14, 2026 at 4:49 PM M <xbrianmartinx@gmail.com> wrote:
> Mr Rosen,
>
> Would you please let me know when you will give me the admissions requests by your clients? I have been patient for months to receive this discovery. Also, I have strong evidence that your client Brandon Keating is fraudulently and has been fraudulently operating Fidelissimus LLC as a judgment creditor without legal authorization. Please send me a copy of the judgment transfer for this LLC or I will move the court to dismiss that party from this case.
>
> I look forward to working with you as we discuss how to air out the problems and complications and provide a factual case here with proper factual evidence. I stand by my words when I tell you that your clients are taking you for a fool or a ride but the evidence speaks for itself so I hope we can work together at this to ensure proper due process and justice of the law.
>
> I have filed my motion and notice for hearing and will serve you a copy via email. The hearing date I have requested is April 28th at 11am.
>
> Thank you,
>
> Kind regards
> Brian Martin

📄 **Request for productions second.pdf**
255K

 Gmail

M <xbrianmartinx@gmail.com>

## Re: WARNING SANCTIONS: Read attachment

1 message

**Mark Rosen** <marksrosen@aol.com>                              Tue, Apr 7, 2026 at 12:36 PM
To: M <xbrianmartinx@gmail.com>

Dear Mr. Martin,

I received your obscenity-laced phone message today. All of your so-called meet and confer proposals have been on the basis that we drop our lawsuit and let you off the hook for multi-million dollar final judgments.  That is not going to happen. When you are serious about you and your family complying with discovery orders and actually producing some documents, let me know.

MARK S. ROSEN
Attorney at Law
27281 Las Ramblas, Ste. 200
Mission Viejo, California 92691
Tel:  (714) 285-9838
email: MarkSRosen@aol.com; markrosen@markrosenlaw.com

Any tax advice contained in the body of this e-mail was not intended or written to be used, and cannot be used, by the recipient for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code or applicable state or local tax law provisions.

Privileged And Confidential Communication.
This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC Section 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited.

On Tuesday, April 7, 2026 at 12:25:52 PM PDT, M <xbrianmartinx@gmail.com> wrote:

Mark

I left a message on your phone for the thousandth time. Your emails are non-responsive. You do not do anything that you should be doing. You're breaking the law and I will be filing a motion for sanctions against you very soon.

You can consider this, my attempt to contact you in my intent to file that motion. Your continued failure to pay attention to this case or communicate and especially put out false narratives is all going to end with this motion.

Typically, you would oppose or unoppose those motion and let me know But your lack of communication for well over two months is most likely going to continue.

You will not mock this case and you will not mock my life and you will not use abusive discovery tactics against this family. That ends now.

Regards

Brian Martin

On Tue, Apr 7, 2026 at 4:11 AM M <xbrianmartinx@gmail.com> wrote:
> Mark,
>
> This has gone on long enough. I am actually getting fed up with this bullshit from you. You are blatantly making
> things up. See the attachment. EXHIBIT 3 is not evidence of anything you are making accusations of. If you read the
> actual context BRANDON KEATING was helping me and my mother solve issues when she got scammed at the
> Kiosk. Scammers are the ones who told her to send money for things and she got scammed. Why in the hell would
> my message say "Alright I GOT THEM" And then share the receipt screenshots my mother sent me for help. "THEM"
> as in "GETTING THEM" means "I GOT THE COPIES OF THE RECEIPTS" And then I follow with "She's been crying
> and running out of tears" AKA My mother is crying because she got scammed.
>
> I mean, who in the hell do you think you are, Mark? Tell me right now who the hell you think you are to lie to this
> court and misinterpret this to fit your narrative??? March 2022 I was living in ENGLAND why the hell would I actually
> use a Kiosk in California. That's literally one of the dumbest things I have ever seen a lawyer accuse someone of
> when the context is right there. You need to retire, Mark because what you are literally doing is against the court
> rules and frankly this accusation is going to get your and your clients sued.
>
> Retract your statement immediately, and understand that you have failed to know the context. If I was hiding
> anything why in the absolute HELL WOULD I TALK TO BRANDON KEATING ABOUT THAT? Are you actually
> insane right now?
>
> I close the chat by THANKING BRANDON for his help to my mom so she can get her money back. I mean seriously
> again who the hell do you think you are lying to this court like this? I am going to sanction you HARD FOR THIS if
> you do not retract this motion and file an amended stating that you got everything wrong. I can not believe what the
> hell i'm seeing from you but it better stop now.

17/04/2026, 20:26 — Case 6:25-ap-01055-RB    Doc 114-1    Filed 04/20/26    Entered 04/21/26 12:38:06    Desc
Declaration    Page 165 of 194

Gmail - JOINT STATUS REPORT

  **M <xbrianmartinx@gmail.com>**

## JOINT STATUS REPORT

1 message

**M <xbrianmartinx@gmail.com>**                                    Sun, Apr 5, 2026 at 10:44 PM
To: Mark Rosen <marksrosen@aol.com>

Mark Rosen

Are we communicating for the Joint Status report? I need communication about this as soon as possible. It is due April 7th. Do you have your portion to send to me? Please let me know ASAP and I will have mine completed by tomorrow night. It is due April 7th so we can finish it on April 7th. I also will be filing a notice of counterclaim (amending petition with counterclaim) in the report.

Please respond on April 6, 2026

Thank you,

Regards
Brian Martin



## CAROLYN MARTIN Financials request ATTACHED

1 message

| | |
|---|---|
| **M** <xbrianmartinx@gmail.com> | Thu, Mar 26, 2026 at 5:00 PM |
| To: Mark Rosen <marksrosen@aol.com> | |

Mr Rosen,

I haven't looked at these documents nor is it my concern. My mother asked to compile and send them to you and has made the objections. I am confident without reviewing them you will see that your requests are a fishing expedition and I will ask you to cease and desist. If this continues I will file sanctions against you and your firm. With that said, please see the attachment and this concludes Carolyn Martin's obligations in these matters.

Your failure to meet and confer has been noted. I trust if you have any issues you will not contact me about it. Also noted that Carolyn Martin was never properly served the order to compel, so Carolyn Martin's submission here is on her own accord for transparency and convenience. At law, she is not required to do so.

Kind regards
Brian Martin

---

📄 **CAROLYN MARTIN (Financials).pdf**
23073K

# EXHIBIT 10

 Gmail

**Force Media <contactforcemediallc@gmail.com>**

---

# Information requested about Brian Martin 6:25-ap-01055

5 messages

---

**Force Media** <contactforcemediallc@gmail.com>  Tue, Aug 19, 2025 at 2:50 PM
To: pattielegalasst@aol.com

Hello Pattie,

This is Kevin Martin with Force Media, LLC. I received a document from your office requesting certain information regarding my brother Brian Martin. I won't be sending anything by mail so my response here will have to do. In my personal capacity I do not have any documentation that connects to Brian Martin on your requests.

In regards to all requests. I have had no financial connections to Brian Martin. I have never had any financial connections to Brian Martin. What I do have is a business that I run and Brian Martin has been commissioned by my office to create art in which he has been compensated with cash and sense he does live in my home cash is the only option I approved of. That does not fall under the request. Everything I do I do for myself and my businesses. Even if I had employees, I would deny such requests in connection to them. Brian received his discharge so I dont see where it's any of your clients business what I do and I am not a debtor.

Your clients are very well aware of my rights and have a record of violating such rights. I am currently in appeal to take back money that they owe me including taking money from my personal bank account whereas I am not a debtor of theirs and I intend to fully execute upon them to undo what they did.

The only copies I can send would be the cease and desist letter that my last lawyer sent to your clients over two years ago. These letters clearly outline my position and that is not your concerns or anybodys how I run my businesses. Brian Martin is not in any capacity a part of my businesses other than someone who is paid to create art. We call those Work for hire contracts and I give those to any artist I wish to pay in commission. Force Media, LLC has no connection in your case. If I want to make my business and create youtube channels and pages that is my business and my right, nobody else can tell me otherwise. On that note I would appreciate your clients to stop harassing my family. Brian Martin is not the fraud here, your clients are. Thank you for reaching out to me and Force Media!

Kevin Martin

---

**3 attachments**

📄 **PRESERVATION_DEMAND___LETTER_OF_REPRESENTATION-__Force_Media_LLC.pdf**
165K

📄 **MossSDTforcemedia.pdf**
415K

📄 **MossSDTkevinmarti.pdf**
422K

---

**Force Media** <contactforcemediallc@gmail.com>  Thu, Aug 21, 2025 at 7:13 PM
To: pattielegalasst@aol.com

I didnt get a return receipt did you get my email and my answer
[Quoted text hidden]

---

**Force Media** <contactforcemediallc@gmail.com>  Thu, Aug 28, 2025 at 1:07 PM
To: marksrosen@aol.com

MARK S. ROSEN (S.B.N. 72431)
Attorney at Law
27281 Las Ramblas, Ste. 200
Mission Viejo, California 92691
Tel: (714) 285-9838
marksrosen@aol.com

VAN T. TRAN (S.B.N. 174264)
Attorney at Law
1502 N. Broadway
Santa Ana, California 92701
Tel: (949) 260-8404
Fax: (714) 998-4663
tranesq@aol.com

Attorneys for Plaintiff DAVID TYLER MOSS and FIDELISSIMUS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## RIVERSIDE DIVISION

In Re BRIAN DENNIS MARTIN

    Debtor,

_____

DAVID TYLER MOSS and FIDELISSIMUS, LLC,

    Plaintiffs,

    vs.

BRIAN DENNIS MARTIN,

    Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Chapter 7

Case No. 6:25-bk-10944-MH
Adversary No.6:25-ap-01055-RB

**NOTICE OF MOTION TO COMPEL
COMPLIANCE WITH SUBPOENA TO
KEVIN MARTIN AND FORCE MEDIA,
LLC.**

– 1 –

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiffs David Tyler Moss and Fidelissimus, LLC ("Plaintiffs"), by and through undersigned counsel, respectfully move this Court for an order compelling compliance with subpoenas issued pursuant to Fed. R. Civ. P. 45 and Fed. R. Bankr. P. 9016 to non-parties Kevin Martin and Force Media, LLC.

## I. BACKGROUND

Plaintiffs are actively tracing concealed assets belonging to the bankruptcy estate of Debtor Brian Dennis Martin. Documentary evidence and prior court rulings have conclusively established that the Debtor has utilized his brother, Kevin Martin, and Kevin Martin's company, Force Media, LLC, to receive, hold, and conceal hundreds of thousands of dollars to evade creditors.

The connection between the Debtor and these third parties is not speculative. Force Media, LLC previously served as the conduit to receive distributions from Google and YouTube for monetized videos created and controlled by the Debtor. Kevin Martin has previously admitted to holding approximately $297,000 belonging to Brian Martin.

Furthermore, in a related state court proceeding (*Moss v. Bone-Martin*, Cause No. DC-22-03943, 68th Judicial District, Dallas County, Texas), the court issued a Final Order Concerning Garnished Funds on June 10, 2024, followed by a Modified Order on June 25, 2024. *See* **Ex. 5, Ex. 6.** These Orders explicitly identified Force Media, LLC and Kevin Martin as "Nominal Owners" holding the Debtor's funds in JPMorgan Chase Bank accounts. The Texas court subsequently ordered the garnishment and deposit of $287,823.59 from Force Media, LLC's account and $419.60 from Kevin Martin's account directly into the court's registry to satisfy judgments against the Debtor.

To trace the remaining flow of these concealed assets and identify additional accounts used to shield the Debtor's income, Plaintiffs caused subpoenas to be issued to both Kevin Martin and Force

– 2 –

Media, LLC on August 6, 2025. The subpoenas were duly served at their registered address at 941 Cimarron Lane, Corona, CA 92879. *See* Ex. 1, Ex. 2.

The subpoenas required the production of documents relating to the Debtor, including records of financial transactions, shared business dealings, communications regarding asset concealment, and statements for accounts used by the Debtor. Despite valid service and the expiration of the August 29, 2025 compliance deadline, neither Kevin Martin nor Force Media, LLC has responded, produced documents, or served any written objections.

## II. ARGUMENT

Plaintiffs have satisfied all requirements for relief. The subpoenas were properly issued and served, yet the recipients have completely ignored their legal obligations. By failing to serve timely objections, Kevin Martin and Force Media, LLC have waived any objections to the subpoenas, including any claims of burden, privilege, or overbreadth.

Plaintiffs are severely prejudiced by this wholesale noncompliance. Kevin Martin and Force Media, LLC are the primary known alter egos and conduits used by the Debtor to hide massive sums of money from the bankruptcy estate. Obtaining the requested financial records and communications is strictly critical to Plaintiffs' claims under 11 U.S.C. §727 and the recovery of estate assets.

Accordingly, the Court should compel full compliance, set a firm deadline, and award Plaintiffs their reasonable expenses incurred in connection with serving the subpoenas and bringing this Motion.

## IV. RELIEF REQUESTED

Plaintiffs respectfully request that this Court enter an order:

1. Compelling Kevin Martin and Force Media, LLC to fully comply with their respective subpoenas within fourteen (14) days of the Court's order, or by a date certain set by the Court;

– 3 –

2. Ordering that Kevin Martin and Force Media, LLC produce all responsive Electronically Stored Information (ESI) in native format, unencrypted, unredacted, and accompanied by standard load files containing full metadata;

3. Awarding Plaintiffs their reasonable attorneys' fees and expenses incurred in connection with the issuance, service, and enforcement of the subpoenas, including this Motion;

4. Providing that failure to comply with the Court's order may result in contempt sanctions pursuant to Rule 45(g); and

5. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Mark S. Rosen

Mark S. Rosen

Dated: April 3, 2026

### CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, a true and correct copy of the foregoing Notice of Motion to Compel Compliance with Subpoenas was served upon all counsel of record and parties in this adversary proceeding by CM/ECF electronic filing.

/s/ Mark S. Rosen

MARK S. ROSEN

—4—

# EXHIBIT 11

BRIAN MARTIN, In Pro Per

941 Cimarron Lane

Corona CA 92879

(840)-207-1860

xbrianmartinx@gmail.com

IN THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF

CALIFORNIA RIVERSIDE DIVISION

| | |
|---|---|
| In re: \| **BRIAN DENNIS MARTIN** | Case No. 6:25-bk-10944-RB<br>Adversary No. 6:25-ap-01055-RB<br>Chapter 7 |
| **BRIAN DENNIS MARTIN,**<br><br>**Debtor** | **MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION 11 U.S.C. § 524**<br><br>Date: May 19, 2026<br><br>Time: 11:00 AM<br><br>Courtroom: 303<br><br>PLACE: 3420 12th Ave., Riverside CA |

**MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE**

**INJUNCTION 11 U.S.C. § 524**

**TO THE HONORABLE MAGDALENA BORDEAUX, JUDGE OF THE UNITED STATES**

**BANKRUPTCY COURT.**

1
MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE
INJUNCTION 11 U.S.C. § 524

## I. MOTION

Debtor Brian Dennis Martin ('Debtor') hereby moves this Court for an order imposing sanctions for contempt against **David Tyler Moss, Fidelissimus, LLC, Brandon Gabriel Keating, and Craig Capua of West and Associates** (collectively, 'Creditors'). These Creditors are the Plaintiffs in the pending Adversary Proceeding (Case No. 6:25-ap-01055) willful violation of the Discharge Injunction pursuant to **11 U.S.C. § 524** and the Court's inherent authority under **11 U.S.C. § 105(a)**.

## II. FACTUAL BACKGROUND

1. On **June 2, 2025**, this Court entered an Order of Discharge [Dkt. 13].

2. The Creditor was served with notice of the discharge and is currently a party to an active Adversary Proceeding (**Case No. 6:25-ap-01055**) pending before this Court.

3. On or about **April 9, 2026**, I discovered that the Creditor filed a motion an **Abstract of Judgment** in **Dallas County, Texas**, on **April 8, 2026**. which was recorded on April 13, 2026.

4. Plaintiffs proceeded to file the Abstract of Judgment into Texas Courts using Case No. DC-20-09893 and 429-05678-2020 to further their violations despite being asked to retract it.

5. Under **Texas Property Code § 52.001**, the recording of an abstract is not a mere ministerial renewal; it is the affirmative act of creating a lien on any real property the Debtor may hereafter acquire.

## III. LEGAL ARGUMENT

**A. Violation of the Permanent Injunction** Under 11 U.S.C. § 524, a discharge "operates

2

MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE
INJUNCTION 11 U.S.C. § 524

as an injunction against the commencement or continuation of an action... or an act, to collect, recover or offset any such debt as a personal liability of the debtor." Recording an abstract is a collection act intended to encumber the Debtor's "fresh start."

**B. The Violation is Willful** A violation is willful if the creditor (1) knew of the discharge and (2) intended the action that violated it. *In re Nash*, 464 B.R. 874 (9th Cir. BAP 2012). Creditor's active participation in Adversary Proceeding 6:25-ap-01055 confirms they had actual notice of the bankruptcy and discharge. This is further evidence of the Plaintiffs blatant disregard for this courts authority in this case and the adversary as this court will soon find out just how unclean the Plaintiffs hands truly are.

**C. The "Ministerial Renewal" Defense Does Not Apply in Texas** While some jurisdictions allow technical judgment renewals, Texas Property Code § 52.001 defines an abstract as a **lien-creating device**. By recording this abstract, the Creditor effectively sought to seize an interest in the Debtor's post-petition property, violating the core tenets of the Bankruptcy Code. Furthermore, **11 U.S.C. § 108(c)** provided the Creditor with a safe harbor to preserve their rights without violating the injunction; they chose to bypass this legal remedy. **Section 52.042** makes no exception for renewals of discharged debts. In Texas, if the debt is discharged, the judgment's ability to be a lien on new property is **extinguished**. Any attempt to record it anyway is an attempt to circumvent both state and federal law. The Creditor's recording of an abstract of judgment in Texas is a facial violation of **Texas Property Code § 52.042(b)**, which mandates that a discharged debt 'does not have force or validity' and 'may not be a lien' on property acquired after the bankruptcy petition. Because this act was taken post-discharge to encumber the Debtor's future assets, it constitutes a willful violation of the federal discharge injunction under **11 U.S.C. § 524(a)**

## IV. RELIEF REQUESTED

Debtor respectfully requests:

1. An order declaring the Texas Abstract of Judgment **void ab initio**;

2. An order requiring Creditor to file a release of the abstract in Texas within 48 hours;

3. Compensatory damages and attorney's fees for the cost of bringing this motion.

Dated: April 14, 2026

Respectfully Submitted,

_____

Brian D Martin

4

MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE
INJUNCTION 11 U.S.C. § 524

BRIAN MARTIN, In Pro Per

941 Cimarron Lane

Corona CA 92879

(840)-207-1860

xbrianmartinx@gmail.com

IN THE UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF

CALIFORNIA RIVERSIDE DIVISION

In re: | BRIAN DENNIS MARTIN

BRIAN DENNIS MARTIN,

   Debtor

Case No. 6:25-bk-10944-RB
Adversary No. 6:25-ap-01055-RB
Chapter 7

**DECLARATION OF BRIAN MARTIN IN SUPPORT OF MOTION FOR SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION**

Date: May 19, 2026

Time: 11:00AM

Courtroom: 303

PLACE: 3420 12th Ave., Riverside CA

**DECLARATION OF BRIAN MARTIN IN SUPPORT OF MOTION FOR SANCTIONS FOR**

**VIOLATION OF THE DISCHARGE INJUNCTION**

**TO THE HONORABLE MAGDALENA BORDEAUX, JUDGE OF THE UNITED STATES**

**BANKRUPTCY COURT.**

DECLARATION OF BRIAN MARTIN IN SUPPORT OF MOTION FOR
SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION

I, **Brian Martin**, declare as follows:

1. I am the Debtor in the above-captioned bankruptcy case. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently thereto.

2. On **June 2, 2025**, this Court entered an Order of Discharge in my favor. A true and correct copy of the Discharge Order is attached hereto as **Exhibit B**.

3. I am currently the Defendant in an active Adversary Proceeding brought by **David Tyler Moss, Fidelissimus LLC, and Brandon Gabriel Keating** (the "Creditor"), Case No. **6:25-ap-01055**, which is currently in the discovery phase.

4. On or about **April 9, 2026**, I discovered that the Creditor filed a motion an **Abstract of Judgment** in **Dallas County, Texas**, on **April 8, 2026**. which was recorded on April 13, 2026

5. A true and correct copy of the Abstract of Judgment is attached hereto as **Exhibit A**.

6. The recording of this Abstract occurred well after the entry of my bankruptcy discharge and while the Creditor was actively participating as a party in the pending Adversary Proceeding.

7. The Creditor has had actual notice of my bankruptcy filing and the subsequent discharge since the inception of the case, as evidenced by their filing of the Complaint in the related Adversary Proceeding.

8. I am informed and believe that under **Texas Property Code § 52.001**, the

2
DECLARATION OF BRIAN MARTIN IN SUPPORT OF MOTION FOR
SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION § 524

recording of this abstract creates a lien that attaches to any real property I may acquire in the future in that county. This act directly interferes with the "fresh start" guaranteed to me by the Bankruptcy Code and clouds the title of any potential post-petition acquisitions or business interests I may pursue. Although I am certain I will not be in Texas Jurisdiction, this motion and attempt to record is evidence the creditors intend to bypass California Protection laws and continue to use Texas courts to collect California assets and income they are not entitled to without using California courts. The creditors continue to show unclean hands throughout every aspect of these proceedings in Bankruptcy and in Texas courts.

9. On **April 8 and 11, 2026**, I contacted the Creditor's attorney Craig Capua of West and Associates via **email and phone** to request the immediate release of the Texas Abstract of Judgment. As of the date of this declaration, the Creditor has **failed to respond as always ignoring the rights and due process and most importantly this court's authority.**

10.        As a result of this willful violation, I have been forced to incur legal research costs and time to address this cloud on my post-petition financial standing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14 day of APRIL 2026, at Corona, California.

_____

**BRIAN MARTIN**, Debtor

3
DECLARATION OF BRIAN MARTIN IN SUPPORT OF MOTION FOR
SANCTIONS FOR VIOLATION OF THE DISCHARGE INJUNCTION § 524

## *CERTIFICATE OF SERVICE*

I hereby certify that a true and correct copy of the foregoing motion for **MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION 11 U.S.C. § 524** was served upon the following parties by the method indicated below on [4/14/2026]:

**MARK S. ROSEN**
Attorney at Law
27281 Las Ramblas, Ste. 200
Mission Viejo, California 92691
Tel:  (714) 285-9838
email: MarkSRosen@aol.com; markrosen@markrosenlaw.com

☐ By hand delivery

☐ By United States mail, postage prepaid

☐ By overnight delivery service

☐ By facsimile transmission

☒ By electronic mail

☒ By electronic filing through the Court's CM/ECF system

DATED: April 14, 2026

By: Brian Dennis Martin
Pro Se Defendant/debtor

MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE
INJUNCTION 11 U.S.C. § 524

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
941 Cimarron Lane, Corona CA 92879

A true and correct copy of the foregoing document entitled (*specify*): _____
MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION 11 U.S.C. § 524 _____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
04/14/2026_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:
trustee.bui@shulmanbastian.com, C115@ecfcbis.com
marksrosen@aol.com, pattielegalasst@aol.com, ustpregion16.rs.eft@usdoj.gov, xbrianmartinx@gmail.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __04/14/2026_____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.
Honorable Magdalena Reyes Bordeaux
United States Bankruptcy Court
Central District of California
3420 Twelfth Street, Suite 365 / Courtroom 303
Riverside, CA 92501-3819

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/14/2026 | Holly Bone | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

## ABSTRACT OF JUDGMENT

<span style="color:red">**EXHIBIT A**</span>

United States District Court
Northern District of Texas
Dallas Division

Civil Action No. 3:14-cv-03088-M

I, the Clerk of the United States District Court for the Northern District of Texas, Dallas Division, certify that in the case styled:

David Tyler Moss and Brandon Keating, Plaintiffs,
v.
Brian Martin and Marko Princip, Defendants,

Final Judgment was entered on April 15, 2016, in favor of Plaintiffs and against Defendants.

The judgment awards:
• $2,100,000.00 to David Tyler Moss, jointly and severally;
• $2,100,000.00 to Brandon Keating, jointly and severally;

Plus exemplary damages as set forth in the Final Judgment.

Post-judgment interest accrues at the rate of 0.55% per annum until paid.

There remains due and owing in excess of $4,200,000.00, plus interest and costs.

Issued this 13th day of April, 2026.


Clerk of Court
Clerk of Court
United States District Court
Northern District of Texas

By: s/Yolanda Pace
Deputy Clerk

**Information to identify the case:**

| | | |
|---|---|---|
| Debtor 1 | **Brian Dennis Martin** | Social Security number or ITIN   xxx-xx-3966 |
| | First Name   Middle Name   Last Name | EIN   __-_____ |
| Debtor 2 (Spouse, if filing) | First Name   Middle Name   Last Name | Social Security number or ITIN   ____ EIN   __-_____ |
| United States Bankruptcy Court | Central District of California | |
| Case number: | 6:25-bk-10944-RB | |

## Order of Discharge – Chapter 7

**EXHIBIT B**

12/15

**IT IS ORDERED:** A discharge under 11 U.S.C. § 727 is granted to:

Brian Dennis Martin

[include all names used by each debtor, including trade names, within
the 8 years prior to the filing of the petition]

Debtor 1 Discharge Date: 6/2/25

**Dated:** 6/2/25

**By the court:**   Magdalena Reyes Bordeaux
United States Bankruptcy Judge

---

### Explanation of Bankruptcy Discharge in a Chapter 7 Case

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

13/AUTU

**For more information, see page 2 >**

**Some debts are not discharged**

Examples of debts that are not discharged are:

- ◆ debts that are domestic support obligations;

- ◆ debts for most student loans;

- ◆ debts for most taxes;

- ◆ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

- ◆ debts for most fines, penalties, forfeitures, or criminal restitution obligations;

- ◆ some debts which the debtors did not properly list;

- ◆ debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

- ◆ debts for death or personal injury caused by operating a vehicle while intoxicated.

Also, debts covered by a valid reaffirmation agreement are not discharged.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

**This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

# EXHIBIT 12

**M** Gmail

M <xbrianmartinx@gmail.com>

## Abstract of judgment

1 message

**M** <xbrianmartinx@gmail.com>                                        Thu, Apr 9, 2026 at 10:34 AM
To: Craig Capua <craig.c@westllp.com>

Mr Capua

Please retract your abstract of judgment as it is an action for an act to collect. It is a violation of the discharge injunction, even during the adversary proceedings you may not file this at any time.

Your failure to do so and not acknowledge this email telling me that you will retract your filing Will result in filing for contempt of court

Please let me know by the end of the day that you will retract the abstract of judgment, or I will file and hold your clients you and your firm in contempt of bankruptcy court

The violation is injunction discharged USC 11 524

Thank you

Regards
Brian Martin

19/04/2026, 22:36 Case 6:25-ap-01055-RB MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION 11 U.S.C. § 524

Case 6:25-ap-01055-RB Doc 114-1 Filed 04/20/26 Entered 04/21/26 12:38:06 Desc
Declaration    Page 188 of 194



M <xbrianmartinx@gmail.com>

# MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION 11 U.S.C. § 524

1 message

**M** <xbrianmartinx@gmail.com>                                    Sat, Apr 11, 2026 at 9:57 PM
To: Mark Rosen <marksrosen@aol.com>, markrosen@markrosenlaw.com

Mr. Rosen,

I will be filing for a motion in the main bankruptcy case against your clients and their attorney Craig Capua. See attachment on the motion that Capua presented to the court. It is a direct violation of the Discharge injunction and it's even worse by law in Texas. The judge will see this motion next week. I will file the motion Monday and get a hearing for this. I'd like to confer with you if you will be representing your clients in the main bankruptcy case. You are not listed as an attorney on that case number but you are on the adversary which is not where I will be filing the motion. If you intend to appear on behalf of your clients, please let me know Monday by 5pm. I will add you to the certificate of service and serve you the motion and notice of hearing accordingly.

Thank you for your attention to this matter,

Kind regards
Brian Martin.

---

📄 **Mtn for Abstract of Judgment (1).pdf**
495K

# EXHIBIT 13

MARK S. ROSEN (S.B.N. 72431)
Attorney at Law
27281 Las Ramblas, Ste. 200
Mission Viejo, California 92691
Tel: (714) 285-9838
marksrosen@aol.com

VAN T. TRAN (S.B.N. 174264)
Attorney at Law
1502 N. Broadway
Santa Ana, California 92701
Tel: (949) 260-8404
Fax: (714) 998-4663
tranesq@aol.com

Attorneys for Plaintiff DAVID TYLER MOSS and FIDELISSIMUS, LLC

FILED & ENTERED

APR 17 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY hawkinso DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RIVERSIDE DIVISION**

| | |
|---|---|
| In Re BRIAN DENNIS MARTIN<br><br>        Debtor,<br><br>───────────────────────<br><br>DAVID TYLER MOSS and<br>FIDELISSIMUS, LLC<br><br>        Plaintiffs,<br><br>v.<br><br>BRIAN DENNIS MARTIN<br><br>        Defendant. | Case No. 6:25-bk-10944-RB<br><br>Chapter 7<br><br>Adv Proc No. 6:25-ap-01055-RB<br><br><br>**ORDER *DENYING* EMERGENCY MOTION FOR COMFORT ORDER OR, IN THE ALTERNATIVE, TO MODIFY THE DISCHARGE INJUNCTION FOR THE LIMITED PURPOSE OF JUDGMENT PRESERVATION** |

– 1 –

Upon consideration of the *Emergency Motion for Comfort Order or, in the Alternative, to Modify the Discharge Injunction for the Limited Purpose of Judgment Preservation* (the "Motion") (Dkt 103) filed by Plaintiffs David Tyler Moss and Fidelissimus, LLC (collectively, "Plaintiffs") and Defendant's Opposition to Emergency Motion ("Opposition") (Dkt. 107); the Court having reviewed the Motion, Opposition, and the record in this Adversary Proceeding; IT IS HEREBY ORDERED THAT the Motion is DENIED because 11 U.S.C. § 362(d) is not the proper means for seeking relief from the discharge injunction.

###

Date: April 17, 2026

_Magdalena Reyes Bordeaux_
Magdalena Reyes Bordeaux
United States Bankruptcy Judge

# EXHIBIT 14

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Brian Dennis Martin** | | Social Security number or ITIN    xxx-xx-3966 |
| | First Name    Middle Name    Last Name | | EIN   _ _ - _ _ _ _ _ _ _ |
| Debtor 2 (Spouse, if filing) | First Name    Middle Name    Last Name | | Social Security number or ITIN  _ _ _ _ |
| | | | EIN   _ _ - _ _ _ _ _ _ _ |

United States Bankruptcy Court    Central District of California

Case number:   6:25-bk-10944-RB

# Order of Discharge – Chapter 7                                                12/15

**IT IS ORDERED:** A discharge under 11 U.S.C. § 727 is granted to:

Brian Dennis Martin

[include all names used by each debtor, including trade names, within the 8 years prior to the filing of the petition]

Debtor 1 Discharge Date: 6/2/25

**Dated:** 6/2/25

**By the court:**  Magdalena Reyes Bordeaux
United States Bankruptcy Judge

## Explanation of Bankruptcy Discharge in a Chapter 7 Case

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

13/AUTU

For more information, see page 2 >

Official Form 318-CACBdodb/CACodsc          **Order of Chapter 7 Discharge**          page 1

**Some debts are not discharged**

Examples of debts that are not discharged are:

- ♦ debts that are domestic support obligations;

- ♦ debts for most student loans;

- ♦ debts for most taxes;

- ♦ debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;

- ♦ debts for most fines, penalties, forfeitures, or criminal restitution obligations;

- ♦ some debts which the debtors did not properly list;

- ♦ debts for certain types of loans owed to pension, profit sharing, stock bonus, or retirement plans; and

- ♦ debts for death or personal injury caused by operating a vehicle while intoxicated.

Also, debts covered by a valid reaffirmation agreement are not discharged.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

---

**This information is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

---